## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADREA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 10-600-ER |
| v. | ) | (Consolidated) |
| | ) | |
| AMAZON.COM, INC., | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| AMAZON.COM, INC. | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADREA, LLC, DISCOVERY | ) | |
| COMMUNICATIONS, INC., DISCOVERY | ) | |
| COMMUNICATIONS, LLC, and THE | ) | |
| DISCOVERY CHANNEL STORE, INC., | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

### AMAZON.COM, INC.'S BRIEF IN OPPOSITION TO DISCOVERY'S MOTION TO MODIFY THE SCHEDULING ORDER AND TO FILE AMENDED ANSWER

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt
Y. Ernest Hsin
Sarah E. Piepmeier
New York, NY 10166
Tel: (212) 351-4000

Mark Reiter
Dallas, TX 75201-6912
Tel: (214) 698-3100

Stuart M. Rosenberg
Palo Alto, CA 94304-1211
Tel: (650) 849-5300

January 6, 2011
995912 / 34137

POTTER ANDERSON & CORROON LLP

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Amazon.com, Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF RELEVANT FACTS ..............................................................2

    A. Prosecution of the Amazon Patents and Disclosure of Zimmerman/IBIC .............2

    B. Discovery's Initiation of This Dispute and Amazon's Defense/Counterclaims ..................................................................................5

    C. Discovery's Delay in Subpoenaing Zimmerman ................................................6

III. ARGUMENT .........................................................................................................8

    A. Legal Standard ....................................................................................................8

        1. Rule 16(b) Requires The Denial of Leave To Amend Where The Moving Party Cannot Demonstrate "Good Cause" For Its Failure To Meet The Deadline To Amend The Pleadings .....................................8

        2. Rule 15(a) Requires The Denial of Leave To Amend Where There Is Undue Delay And/Or Unfair Prejudice To The Non-Moving Party ...........................................................................................................9

    B. Discovery's Motion To Amend Should Be Denied Because It Fails To Meet The Standards Set Out In Both Rule 15(a) and Rule 16(b) ....................11

        1. Discovery Has Failed to Demonstrate "Good Cause" Under Rule 16(b) .........................................................................................................12

        2. Discovery Has "Unduly Delayed" Under Rule 15(a) ...............................13

        3. Discovery's Amendment Would Cause "Unfair Prejudice" Under Rule 15(a) .................................................................................................15

        4. The Cases Relied on by Discovery are Not Applicable Here ...................16

IV. CONCLUSION ....................................................................................................19

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Global Servs. v. Guideware Software Inc.*,
631 F. Supp. 2d 504 (D. Del. 2009) ........................................................................................11

*Adams v. Gould Inc.*,
739 F.2d 858 (3d Cir. 1984) ...................................................................................10, 13, 16

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) .....................................................................................10

*Avatar Exploration Inc. v. Chevron, U.S.A., Inc.*,
933 F.2d 314 (5th Cir. 1991).....................................................................................10, 15

*Bechtel v. Robinson*,
886 F.2d 644 (3d Cir. 1989) .......................................................................................10

*Buelna v. City of Phila*,
No. 01-5114, 2002 WL 531538 (E.D. Pa. Apr. 5, 2002) ....................................14, 16

*Chancellor v. Pottsgrove Sch. Dist.*,
501 F. Supp. 2d 695 (E.D. Pa. 2007).................................................................8, 9, 12

*Crest Hill Land Dev., LLC v. City of Joliet*,
396 F.3d 801 (7th Cir. 2005) ......................................................................................9

*Cureton v. NCAA*,
252 F.3d 267 (Fed. Cir. 2001) ..............................................................................10, 16

*E. Minerals & Chems. Co. v. Mahan*,
225 F.3d 330 (3d Cir. 2000) .......................................................................................13

*Enzo Life Scis., Inc. v. Digene Corp.*,
270 F. Supp. 2d 484 (D. Del. 2003) ...........................................................................17

*Hukic v. Aurora Loan Servs.*,
588 F.3d 420 (7th Cir. 2009) .......................................................................................9

*ICU Med., Inc. v. Rymed Techs., Inc.*,
674 F. Supp. 2d 574 (D. Del. 2009) ....................................................................8, 9, 17

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) .......................................................................................9

**Table of Authorities**
**(Continued)**

Page(s)

*Kolar v. Preferred Real Estate Invs., Inc.,*
    361 Fed. Appx. 354 (3d Cir. 2010) .................................................................................10

*Leader Techs., Inc. v. Facebook, Inc.,*
    No. 08-862-LPS, 2010 WL 2545959 (D. Del. June 24, 2010)........................................ 8-9, 17

*Optivus Tech., Inc. v. Ion Beam App. S.A.,*
    No. 03-2052-SJO, 2004 WL 5543277 (C.D. Cal. Dec. 29, 2004), *aff'd*, 469
    F.3d 978 (Fed. Cir. 2006) ................................................................................................15

*Parish v. Frazier,*
    195 F.3d 761 (5th Cir. 1999) ...................................................................................9, 10, 14

*Pressure Prods. Medical Supplies, Inc. v. Greatbatch LTD.,*
    599 F.3d 1308 (Fed. Cir. 2010) .............................................................................8, 11, 13, 14

*Price v. Trans Union, LLC,*
    No. 09-1332, 2010 WL 3310241 (E.D. Pa. Aug. 17. 2010)........................................8, 9, 10, 13

*Roquette Frères v. SPI Pharma, Inc.,*
    C.A. No. 06-540-GMS, 2009 WL 1444835 (D. Del. May 21, 2009) ............................9, 17, 18

*Rose Hall Ltd. v. Chase Manhattan Overseas Flanking Corp.,*
    93 F.R.D. 858 (D. Del. 1982) ..........................................................................................11

*Samick Music Corp. v. Delaware Music., Inc.,*
    C.A. No. 91-23-CMW, 1992 WL 39052 (D. Del. Feb. 12, 1992) ...........................................16

*SKF Condition Monitoring, Inc. v. Invensys Systems, Inc.,*
    No. 07-1116 BTM (BGS), 2010 WL 3463686 (S.D. Cal. Aug. 31, 2010) ..........................17, 18

*Slip Track Sys., Inc. v. Metal-Lite, Inc.*
    304 F.3d 1256 (Fed. Cir. 2002) ....................................................................................12, 13

*Star Scientific, Inc. v. RJ Reynolds Tobacco Co.,*
    537 F.3d 1357 (Fed. Cir. 2008) ....................................................................................15, 16

*USX Corp. v. Barnhart,*
    395 F.3d 161 (3d Cir. 2004) ............................................................................................11

*Webxchange Inc. v. Fedex Corp.,*
    C.A. No. 08-133-JJF, 2010 WL 299243 (D. Del. Jan. 20. 2010)..................................10, 17, 18

**Table of Authorities**
**(Continued)**

Page(s)

**Statutes and Rules**

35 U.S.C. § 102(b)..............................................................................................................2, 6

Fed. R. Civ. P. 15(a) ......................................................................................................*passim*

Fed. R. Civ. P. 16(b)......................................................................................................*passim*

Fed. R. Civ. P. 16(b)(4) Advisory Committee's Notes (1983 amendments) ..................................9

## I.  INTRODUCTION

Counterclaim Defendants Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc. (collectively "Discovery") seek to add—nearly a year after the January, 2010 deadline to amend pleadings has passed—an allegation that Counterclaim Plaintiff Amazon.com, Inc. ("Amazon") committed inequitable conduct during the prosecution of the two asserted Amazon patents.  Discovery bases this newly raised allegation exclusively on the testimony of one witness—W. Fred Zimmerman.  Discovery asserts that Mr. Zimmerman contributed to the inventions claimed in Amazon's patents, and that Amazon deceptively withheld Mr. Zimmerman's contributions from the patent examiner during prosecution.  Putting aside the absolute lack of merit to Discovery's allegation, Discovery cannot demonstrate good cause for its failure to comply with the Court's scheduling order, and, therefore, the motion to amend must be denied.

Unlike Discovery's newly disclosed allegation, Mr. Zimmerman's identity and relevance to the prosecution of the two asserted patents are not new.  Mr. Zimmerman, his company the Internet Book Information Center ("IBIC"), and the communications and contract that Mr. Zimmerman and IBIC had with Amazon are all well documented in the publicly available prosecution files—files Amazon produced in November of 2009—of the two Amazon patents. That Discovery was aware of Mr. Zimmerman long ago is beyond dispute; indeed, Discovery's original answer includes an invalidity defense that is based on Amazon's disclosures and activities prior to filing the patent application.  Despite the pervasive discussions of Mr. Zimmerman within the Amazon prosecution histories, Discovery waited eleven months to subpoena Mr. Zimmerman.  In its motion, Discovery provides no explanation—or even any mention—of why it waited so long to obtain documents and seek testimony from Mr.

Zimmerman. Discovery cannot excuse its delay, and that delay cannot satisfy the "good cause" standard that Discovery must meet before the Court can accept the proposed amendment.

As explained in detail below, courts routinely reject a party's untimely amendment when the party delayed in its investigation of the facts underlying the proposed amendment. The cases cited by Discovery, moreover, are not to the contrary. Indeed, Discovery's cited cases fail to address a situation, such as that here, where the movant, without any excuse, delayed taking discovery for nearly one year and then sought to amend nearly a year after the deadline for amendments had passed. This delay, and the resulting prejudice it inflicts upon Amazon, comport with neither Rule 15 nor Rule 16(a)'s standards, and, as such, Amazon respectfully requests that the Court deny Discovery's motion to amend its answer at this late date.

## II. STATEMENT OF RELEVANT FACTS

Discovery's motion seeks to add a new defense against Amazon's counterclaims for infringement of the Amazon patents-in-suit, U.S. Patent Nos. 6,029,141 ("the '141 patent" and 7,337,133 ("the '133 patent"). These patents describe inventive ways that an online merchant can use computer and Internet technology to partner with other Web site providers to increase sales—for example, as implemented by Amazon through the Amazon Associates Program. *See* Declaration of Stuart M. Rosenberg filed herewith ("Rosenberg Decl."), Ex. 1 ('141 patent) at col. 1:50-3:42; Ex. 2 (present-day Amazon Associates Web page). The histories of these patents and of the Amazon Associates Program are relevant to Discovery's motion, as they show that Discovery could easily have met the Court's deadline for amended pleadings had Discovery been diligent.

### A.     Prosecution of the Amazon Patents and Disclosure of Zimmerman/IBIC

Amazon launched its Associates Program in 1996, and filed the patent application leading to the '141 and '133 patents within the one-year statutory deadline set by 35 U.S.C. §

102(b).  Rosenberg Decl., Ex. 3 (May 10, 1999 IDS from prosecution history of '141 patent), at

2.  During prosecution of the patents, Amazon explained to the U.S. Patent and Trademark

Office ("USPTO") that before the launch of the Associates Program, Amazon had implemented a

separate, different program to pay other Web sites for advertising, and had also entered into a

contract—never actually implemented—with Fred Zimmerman of the Internet Book Information

Center ("IBIC").   For example, here is an excerpt from what Amazon told the USPTO in a May

10, 1999 Information Disclosure Statement:

> Prior to the critical date, and before Amazon.com completed or launched its
> Associates Program, Amazon.com implemented a program under which other
> companies advertised the Amazon.com Web site in exchange for compensation.
> Under this "advertisers" program, a company could place an Amazon.com
> advertisement on its Web site, and users could click on this advertisement to link
> to the Amazon.com home page. . . .

> As a proposed variation to this advertisers program, <u>Amazon.com entered into an
> agreement with a Fred Zimmerman of IBIC prior to the critical date</u>. Under this
> modified advertisers program agreement, IBIC could display an Amazon.com
> advertisement of the type described above, and would be paid a purchase-price
> based commission for resulting referrals to the Amazon.com home page that
> produced sales. Despite this agreement, IBIC never implemented this modified
> advertisers program. Rather, IBIC waited for the post-critical-date launch of the
> Associates Program and thereafter became an Amazon.com associate. <u>Several
> email documents that represent communications between Amazon.com and IBIC
> are attached in chronological order as Exhibits 1-7.</u>

Rosenberg Decl., Ex. 3 (May 10, 1999 IDS) at 3-4 (emphases added).  This Information

Disclosure Statement—including the above discussion of Fred Zimmerman and the Amazon-

IBIC contract, and including the emails between Amazon and Zimmerman attached thereto—has

been publicly available from the USPTO for almost ten years, ever since the '141 patent issued

in February of 2000.  Rosenberg Decl., Ex. 1 ('141 patent).

   During the prosecution of the '133 patent, Zimmerman and the Amazon-IBIC contract

came up again, when the USPTO examiner rejected Amazon's patent claims over activity

including the Amazon-IBIC relationship.  Rosenberg Decl., Ex. 4 (excerpt of '133 patent

prosecution history, paper #9 at 3-4). To help the USPTO understand the issues, Amazon

submitted a copy of the actual Amazon-IBIC contract and a declaration by Nicholas Lovejoy, an

early Amazon employee who had corresponded with Zimmerman. *See* Rosenberg Decl., Ex. 5

(paper #10 – response to April 17, 2002 Office Action); Ex. 6 (paper #11 – IDS including

Amazon-IBIC contract); Ex. 7 (papers #16-19 – RCE including February 4, 2003 Lovejoy

Declaration).

Contrary to Discovery's assertions that Amazon distinguished the pending claims from

the Amazon-IBIC contract on only one basis (*i.e.,* that the IBIC contract did not provide referrals

to product-specific pages on the Amazon website (Discovery's Brief at 6-7)), in fact Amazon

distinguished the claims from the IBIC contract in several ways. Indeed, Mr. Lovejoy explained

in his Declaration that "[t]he IBIC contract differed from the Associates Program in several

significant respects," for example in that the IBIC contract did not involve an "automated

enrollment process" as did the later-launched Associates Program. *See* Rosenberg Decl., Ex. 7

(paper # 19 at 2). The USPTO eventually allowed Amazon's claims.

This prosecution history, including the actual Amazon-IBIC contract from 1996 and

Nicholas Lovejoy's 2003 declaration, has been publicly available from the USPTO since at least

February 26, 2008, when the '133 patent issued. *See* Rosenberg Decl., Ex. 8 ('133 patent).

Moreover, the '133 patent itself explicitly lists both the Amazon-IBIC contract and emails

between Zimmerman and Amazon under a heading for references considered by the USPTO

during prosecution. *See id.* ('133 patent) at page 2 under "Other Publications" (listing

"Agreement dated Mar. 1, 1996 between Amazon.com and IBIC," "ibic@fddisunsite.oit.unc.edu,

Apr. 22, 1996, email communication provided by Amazon.com," and "nicholas@amazon.com,

Apr. 25, 1996, email communication provided by Amazon.com").

- 4 -

**B.    Discovery's Initiation of This Dispute and Amazon's Defense/Counterclaims**

In October of 2008, Discovery initiated this dispute by sending Amazon a demand letter regarding the Discovery/Adrea patents-in-suit.[1]  Rosenberg Decl., Ex. 9.  Amazon responded to Discovery regarding the Discovery/Adrea patents, and also sent a February 3, 2009 email to Discovery's in-house counsel regarding the Amazon '141 and '133 patents.  *See* Rosenberg Decl., Ex. 10.  Amazon attached copies of the patents—including page 2 of the '133 patent, which lists the Amazon-IBIC contract and emails as explained above—and told Discovery that the patents "should be of interest to Discovery with respect to its Affiliates Program."  *Id.*

Discovery then filed suit against Amazon on March 17, 2009.  *See* C.A. 09-cv-178 at D.I. 1.  Amazon answered on May 15, 2009, denying infringement of the Discovery/Adrea patents and asserting counterclaims for Discovery's infringement of the '141 and '133 patents.  *Id.* at D.I. 7.  Amazon attached copies of the '141 and '133 patents to its pleading, including the references to the Amazon-IBIC contract and Amazon-Zimmerman emails discussed above.  *Id.*  Thus, from the moment Amazon filed its counterclaims in this case, and indeed months beforehand from Amazon's February 3, 2009 email, Discovery was on notice of IBIC and its role in the prosecution history of the Amazon patents-in-suit.

On October 1, 2009, Discovery filed its answer to Amazon's counterclaims.  *See id.* at D.I. 45.  Discovery's answer did *not* include the defense of inequitable conduct.  The answer did, however, include a defense of invalidity, including the allegation that "[o]ne or more claims of

---

[1]  After filing suit against Amazon in C.A. 09-cv-178, Discovery assigned its patents-in-suit to a patent holding entity called Discovery Patent Holdings LLC, and filed a second suit, C.A. 10-cv-600.  After the two cases were consolidated, Discovery Patent Holdings LLC changed its name to Adrea LLC and revealed for the first time on the record that Adrea is not merely a holding company for Discovery, but is also owned in part by non-Discovery entities related to Sony, Philips, and Intertrust.  *See Id.* at D.I. 21-22.

the '141 and '133 patents are invalid under § 102(b) because, in light of Amazon's own

disclosures and activities with respect to its affiliates program prior to the critical date of June

27, 1996, the claimed invention was in public use or on sale in the United States prior to the

critical date." *Id.* at ¶134. Discovery's reference to "Amazon's own disclosures" regarding

activities "prior to the critical date" clearly refers to Amazon's disclosures during prosecution of

the '141 and '133 patents. Thus, it is clear that Discovery had actually reviewed the prosecution

history, with its discussion of Zimmerman and the Amazon-IBIC contract, by October 1, 2009.

Further, even though the prosecution histories of the '141 and '133 patents were already

publicly available, Amazon produced prosecution history documents to Discovery early in this

litigation. On November 25, 2009, Amazon produced documents, including the May 10, 1999

Information Disclosure Statement excerpted above (disclosing the Amazon-IBIC relationship)

and the 2003 Nicholas Lovejoy Declaration discussed above. *See* Rosenberg Decl., Ex. 11

(Production Letter for AMZN_DE_0000001 through AMZN_DE_0005801); Ex. 12

(AMZN_DE_0000148 et seq.); Ex. 13 (AMZN_DE_0000466 et seq.).[2] Thus, there is no doubt

that Discovery possessed documents discussing Zimmerman and the Amazon-IBIC relationship

well before the January 29, 2010 deadline for amended pleadings.

**C.     Discovery's Delay in Subpoenaing Zimmerman**

In January of 2010, the Court set a January 10, 2010 deadline to amend pleadings, and

the parties jointly asked the Court to push the deadline back by a few weeks, to January 29,

---

[2]  Discovery insinuates that Amazon has withheld production of an October 31, 1995 email
between Zimmerman and inventor Jeff Bezos, but this is baseless speculation.  In fact,
Amazon's document collection, review, and production in this litigation have been extensive,
and simply have not turned up any copies of this decade-old email.  Discovery has not
offered any evidence to the contrary.

2010. *See* C.A. 09-cv-178 at D.I. 73 (setting original deadline); D.I. 74 (joint stipulation to extend deadline; so ordered on January 25, 2010). At no point before that deadline did Discovery subpoena Zimmerman for documents or testimony. Nor does it appear that Discovery made any effort to contact Zimmerman informally, such as by the email address, physical address, or phone number listed on his easily locatable Web site.[3]

In April of 2010, the parties stipulated that fact discovery would close on September 30, 2010. C.A. 09-cv-178 at D.I. 98. But then Discovery assigned its patents-in-suit to a new entity (Adrea), filed a new suit, and sought to consolidate the suits. *See* note 1, *supra*. On August 17, 2010, the Court ordered the suits consolidated, and reset the end of fact discovery to January 31, 2011 per the parties' joint stipulation. *See* C.A. 09-cv-178 at D.I. 153; D.I. 157. At no point in this time period did Discovery subpoena Zimmerman.

It was not until October 19, 2010—almost nine months after the deadline to amend pleadings, and more than twenty months after Amazon raised the '141 and '133 patents in pre-suit correspondence—that Discovery finally subpoenaed Zimmerman, seeking documents and a deposition to occur on November 12, 2010. *See* C.A. 10-cv-600 at D.I. 42. Upon receiving Discovery's subpoena, Zimmerman promptly contacted Discovery's counsel and agreed to be deposed on the date chosen by Discovery. *See* Rosenberg Decl., Ex. 14 (email exchange between Zimmerman, counsel for Discovery, and counsel for Amazon).[4] Zimmerman then produced documents on November 11, 2010 in response to Discovery's subpoena duces tecum,

---

[3] *See* http://www.nimblebooks.com, which is the first result in a Google search for the query "IBIC Fred Zimmerman." *See* Rosenberg Decl., Exs. 15-16.

[4] Zimmerman's sole request was to change the location of the November 12 deposition from Troy, Michigan to Ann Arbor, Michigan, to which the parties readily agreed. *See* Rosenberg Decl., Ex. 14.

and was deposed on November 12, 2010, exactly as requested by Discovery.  *See* C.A. 10-cv-600 at D.I. 103-3 (Zimmerman Trans.).

After deposing Zimmerman, Discovery did not send Amazon its proposed amended pleading until more than a month later, on December 14, 2010—nearly eleven months after the deadline to amend the pleadings, and only seven weeks before the close of fact discovery.

## III. ARGUMENT

### A.  Legal Standard

Where, as here, a party seeks to amend its pleadings after the deadline set forth in the scheduling order, the motion to amend must be denied unless (1) the moving party can show "good cause" for its failure to comply with the scheduling order, and (2) there is no "undue delay" or "undue prejudice" to the non-moving party.  Fed. R. Civ. P. 15(a), 16(b); *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 700-701 (E.D. Pa. 2007); *see also ICU Med., Inc. v. Rymed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009).

### 1.  Rule 16(b) Requires The Denial of Leave To Amend Where The Moving Party Cannot Demonstrate "Good Cause" For Its Failure To Meet The Deadline To Amend The Pleadings

When a party moves for leave to amend the pleadings after the deadline set forth in the scheduling order, that "party must, under Rule 16(b), demonstrate 'good cause' for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading." *Price v. Trans Union, LLC*, No. 09-1332, 2010 WL 3310241, at *3 (E.D. Pa. Aug. 17, 2010) (quoting *Chancellor*, 501 F. Supp. 2d at 701); *see also Pressure Prods. Medical Supplies, Inc. v. Greatbatch LTD.*, 599 F.3d 1308, 1319 (Fed. Cir. 2010).  Good cause only exists when "the ordered schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Leader Techs., Inc. v. Facebook, Inc.*, C.A. No.

08-862-LPS, 2010 WL 2545959, at *3 (D. Del. June 24, 2010); *see also* Fed. R. Civ. P. 16(b)(4)

Advisory Committee's Notes (1983 amendments).

Accordingly, good cause under Rule 16(b) "hinges on the diligence of the movant."

*Leader Techs.*, 2010 WL 2545959, at *4 (citing *Roquette Frères v. SPI Pharma, Inc.*, C.A. No.

06-540-GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009)); *see also ICU Med.*, 674 F.

Supp. 2d at 578. Where a party is not diligent in discovering the facts supporting amendment,

"there is no 'good cause' for modifying the scheduling order and allowing the party to file a

motion to amend its pleadings." *Chancellor*, 501 F. Supp. 2d at 701 (citing *Johnson v.*

*Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the

inquiry should end.")); *accord Price*, 2010 WL 3310241, at *3. Moreover, where the moving

party knows or possesses information that forms the basis of the motion to amend from the start

of the litigation, yet waits until after the deadline to move to amend, that party is presumptively

not diligent, good cause is not shown, and leave to amend should not be granted. *Price*, 2010

WL 3310241, at *3 (citing *Chancellor*, 501 F. Supp. 2d at 702).

### 2.     Rule 15(a) Requires The Denial of Leave To Amend Where There Is Undue Delay And/Or Unfair Prejudice To The Non-Moving Party

Only if the moving party demonstrates "good cause" under Rule 16(b) may the Court

then consider whether to grant the motion to amend under Rule 15(a). *Chancellor*, 501 F. Supp.

2d at 701; *see also Price*, 2010 WL 3310241, at *3. Although leave to amend is typically

granted liberally under Rule 15, "that does not mean that it must always be given." *Hukic v.*

*Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009); *see also Crest Hill Land Dev., LLC v.*

*City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005) ("leave to amend is not automatically granted");

*Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) ("leave to amend is by no means

automatic"). Rather, "district courts have broad discretion to deny leave to amend where there is

- 9 -

undue delay" or "undue prejudice to the [non-moving party.]" *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008); *see also Kolar v. Preferred Real Estate Invs., Inc.*, 361 Fed. Appx. 354, 367 (3d Cir. 2010).

Assessing undue delay in filing to a motion to amend focuses on the moving party's "motives for not amending...earlier." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). While the mere passage of time does not require the denial of leave to amend, "at some point, the delay will become 'undue,' placing an unwarranted burden on the opposing party," and leave to amend must be denied. *Adams*, 739 F.2d at 868; *see also Avatar Exploration Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320-21 (5th Cir. 1991) (courts "often have affirmed denials of motions to amend" when the motion is filed after the deadline in the scheduling order). Furthermore, while the non-moving party must make an initial showing of undue delay, once delay is shown, the moving party "bears the burden of showing that delay was due to oversight, inadvertence or excusable neglect." *Parish*, 195 F.3d at 763; *see also Price*, 2010 WL 3310241, at *3.

By contrast, assessing unfair prejudice to the non-moving party "focus[es] on the effect on the [non-moving party]." *Adams.*, 739 F.2d at 868. Thus, to prove unfair prejudice, the non-moving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered...had the amendments been timely." *Webxchange Inc. v. Fedex Corp.*, C.A. No. 08-133-JJF, 2010 WL 299243, at *3 (D. Del. Jan. 20. 2010) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)). Moreover, in assessing prejudice, courts may also consider the "additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. NCAA*, 252 F.3d 267, 273 (Fed. Cir. 2001).

Under Rule 15(a) and Third Circuit law, a finding of *either* undue delay *or* unfair prejudice is sufficient to deny leave to amend the pleadings. *See Accenture Global Servs. v. Guideware Software Inc.*, 631 F. Supp. 2d 504, 509 (D. Del. 2009) (citing *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004) (even where no undue prejudice to the non-moving party is shown, "truly undue or unexplained delay" in moving to amend will warrant denial of leave to amend); *see also Pressure Prods.*, 599 F.3d at 1320 ("prejudice to the nonmoving party may be sufficient to deny leave to amend" even without undue delay).

Discovery's footnote citation (Discovery's Brief, pg. 11, fn. 3) to a 1985 District of Delaware case that states that a "party's delay in moving to amend a pleading generally is an insufficient ground to deny an amendment, unless that delay unduly prejudices an opposing party," does not overcome these more recent Third Circuit and District of Delaware cases. In any event, even in 1982, the Delaware courts refused to allow amendments *solely* because of the moving party's undue or unexplained delay. *Rose Hall Ltd. v. Chase Manhattan Overseas Flanking Corp.*, 93 F.R.D. 858, 865 (D. Del. 1982) ("An amendment should be denied, without requiring defendants to demonstrate prejudice, when the amendment is grounded on...truly undue or unexplained delay").

**B.     Discovery's Motion To Amend Should Be Denied Because It Fails To Meet The Standards Set Out In Both Rule 15(a) and Rule 16(b)**

Here, Discovery's motion to modify the scheduling order and for leave to file an amended answer must be denied under Rule 16(b) because Discovery has failed to demonstrate good cause for its lengthy delay. Additionally and alternatively, Discovery's motion for leave to file an amended answer must be denied under Rule 15(a) because there has been undue delay in the filing of the motion and there will be unfair prejudice to Amazon if leave to amend is granted.

### 1.    Discovery Has Failed to Demonstrate "Good Cause" Under Rule 16(b)

The crux of Discovery's argument is that it could not have moved to amend its pleadings to add the defense of inequitable conduct until after Zimmerman's deposition on November 12, 2010. *See, e.g.*, D.I. 103 (Discovery's Brief at 1) (arguing that inequitable conduct "could not have been pled until significant facts were recently uncovered through discovery in this case"). But even taking this as given, Discovery has utterly failed to demonstrate "good cause" under Rule 16(b), because Discovery provides *no reason* why it waited until nearly ten months after the deadline to amend the pleadings to *take* Zimmerman's deposition or obtain his documents.

As shown by the facts recited above, Discovery knew or had in its possession all of the facts necessary to motivate it to contact Zimmerman from the very moment Amazon filed its counterclaims, if not even before then. *See* section II, *supra*. There is simply no reason why Discovery could not have taken Zimmerman's deposition well before the deadline to amend its pleadings, and then easily have made the present motion to amend before the deadline passed. In short, Discovery was not diligent, and thus cannot meet its burden. *See, e.g., Chancellor*, 501 F. Supp. 2d at 701 ("If [a] party was not diligent, the inquiry should end.").

A particularly informative case for denying the present motion to amend under Rule 16(b) is *Slip Track Sys., Inc. v. Metal-Lite, Inc.* 304 F.3d 1256 (Fed. Cir. 2002). In that patent case, the District Court set March 1999 as the deadline to amend the pleadings and September 30, 1999 as the end of discovery. *Id.* at 1262. During the discovery period Metal-Lite "sought evidence to corroborate its potential claim of fraud on the PTO [akin to inequitable conduct], and claims to have found it when it deposed the inventor of the prior art" on September 22, 1999, after the deadline to amend pleadings and shortly before the fact discovery cutoff. *Id.* Metal-Lite then sought leave to amend its pleadings to include an inequitable conduct counterclaim. *Id.* However, the district court denied the motion because Metal-Lite knew "key facts relating to the

alleged inequitable conduct earlier in the process but did not investigate the issues until 2 years later." *Id.* at 1270. Metal-Lite appealed, and the Federal Circuit affirmed, holding that Metal-Lite's choice to wait so long before conducting the deposition was "not 'good cause' justifying an amendment of the scheduling order." *Id.*

Here, the Court should reach the same decision as did the courts in *Metal-Lite*. Indeed, here Discovery has been even less diligent, as Discovery knew "key facts" regarding its putative inequitable conduct claim—*e.g.,* Mr. Zimmerman's relationship with Amazon prior to the launch of the Associates Program, the contract executed between Mr. Zimmerman/IBIC and Amazon, and the extensive discussion of Mr. Zimmerman and IBIC in the prosecution histories of the Amazon patents—from the very patents-in-suit and their prosecution history, and yet waited nearly ten months after the deadline to amend to take Zimmerman's deposition, whereas Metal-Lite waited only six months to depose the inventor. *Id.* at 1262. Accordingly, the Court should hold that Discovery has not demonstrated "good cause" for its failure to meet the deadline to amend. *See also E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (denying motion to amend six months after the deadline where moving party "had not specified...why information from independent sources could not have been obtained earlier"); *Price*, 2010 WL 3310241, at *3 (denying motion to amend eight months after the deadline where the moving party possessed knowledge "relevant" to the additional claim and provided "no justification at all" for not acting on that knowledge sooner).

### 2.    Discovery Has "Unduly Delayed" Under Rule 15(a)

Additionally and alternatively, the Court should deny Discovery's motion to amend under Rule 15(a) because Discovery has "unduly delayed" in filing. *Adams*, 739 F.2d at 868. The recent Federal Circuit case of *Pressure Prods. v. Greatbatch (d/b/a Enpath Medical)*, in which the Court affirmed denial of leave to amend the pleadings to add an inequitable conduct

- 13 -

counterclaim under Rule 15(a), is exactly on point. 599 F. 3d 1308 (Fed. Cir. 2010). There, the

prosecution history of the patent-in-suit contained two 1995 declarations by biomedical engineer

Steven Kontos. *Id.* at 1319-20. Eleven years later, during litigation, infringement-defendant

Enpath acquired a new declaration from Kontos stating that he did not remember signing the

1995 declarations in support of the patent. *Id.* Enpath then moved to amend its pleading to assert

a new inequitable conduct claim based on this new Kontos Declaration. *Id.* However, even

though the deadline to amend had not yet passed, the District Court denied Enpath's motion to

amend under Rule 15(a), and the Federal Circuit affirmed. The Court explained that Enpath had

clearly had access to the 1995 declarations at least as early as ten months prior to Enpath's

motion, when they were produced in discovery, and the declarations were also a matter of public

record since 1996. *Id.* Thus, "[n]othing prevented Enpath from conducting discovery on the two

1995 Kontos declarations shortly following this date." *Id.* at 1320. In other words, Enpath had

*unduly delayed* in obtaining the discovery on which its motion to amend was premised.

Here, as did Enpath in the *Pressure Products* case, Discovery had access to all of the

information which would reasonably prompt it to investigate well before Discovery ever

bothered to *actually* investigate. *See id.* at 1319-20. Discovery's delay, like Enpath's, was

simply undue, as the documents and person prompting Discovery's putative inequitable conduct

defense have been a matter of public record since before this litigation began. *See also Parish,*

195 F.3d at 763 (denying motion to amend under Rule 15(a) due to "undue delay" where moving

party waited to amend until seven months after filing the complaint and the long delay "could

have been avoided by due diligence"); *Buelna v. City of Phila,* No. 01-5114, 2002 WL 531538,

at *1 (E.D. Pa. Apr. 5, 2002) (denying motion to amend under Rule 15 due to "undue delay"

where motion was filed on the eve of fact-discovery cutoff and moving party was aware of another's "involvement in this matter" from time case filed).

Discovery's delay is particularly egregious under Rule 15, given that the deadline to amend pleadings has long passed. *See Avatar*, 933 F.2d at 320-21 (courts "often have affirmed denials of motions to amend" under Rule 15(a) when the motion is filed after the deadline in the scheduling order). Further, Discovery has not adequately explained why it waited until December 14, 2010—more than a month after the Zimmerman deposition—to provide Amazon with a putative amended pleading. This additional and unwarranted delay also militates against Discovery's motion to amend. *See Optivus Tech., Inc. v. Ion Beam App. S.A.*, No. 03-2052-SJO, 2004 WL 5543277 (C.D. Cal. Dec. 29, 2004), *aff'd*, 469 F.3d 978 (Fed. Cir. 2006) (holding that the moving party "unduly delayed" for not filing the motion to amend in the month it took the deposition forming the basis of the putative inequitable conduct claim).

### 3.    Discovery's Amendment Would Cause "Unfair Prejudice" Under Rule 15(a)

Alternatively, and additionally, the Court should deny Discovery's motion to amend because granting it will result in substantial "unfair prejudice" to Amazon. Discovery's putative amendment would introduce substantial new issues into the case with only weeks remaining in the fact discovery period, prejudicing Amazon's ability to respond to the amendment.

For example, inequitable conduct requires proof that an individual involved in patent prosecution misrepresented or omitted material information when communicating with the USPTO, and also that the individual *intended to deceive the USPTO* in so doing. *See, e.g., Star Scientific, Inc. v. RJ Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). Here, Discovery seeks to make these allegations about the long-past mental states of third parties who have not been deposed or even subpoenaed for deposition in this case, including former Amazon employee Nicholas Lovejoy and Amazon's patent counsel Ronald Schoenbaum. *See D.I. 103-1*

- 15 -

at ¶¶ 55, 60, 70. These issues have not been part of the case to date, and adding them at this late stage would be prejudicial. *See, e.g., Samick Music Corp. v. Delaware Music., Inc.*, C.A. No. 91-23-CMW, 1992 WL 39052, at *7 (D. Del. Feb. 12, 1992) ("to interject issues…of a very different character at this stage would be prejudicial").

Indeed, while the burden would clearly be on Discovery to try to support these spurious allegations, and not on Amazon to disprove them, *see Star Scientific*, 537 F.3d at 1365, it would also clearly be in Amazon's interest to put the true facts on the record. But it would be unfair to expect Amazon to divert attention from the existing claims and defenses in this case to spend the last days of the fact discovery period rebutting a defense that Discovery unduly delayed in presenting. *See Samick*, 1992 WL 39052, at *7 (even if non-moving party knew of the information that formed the basis of the counterclaim "and they inquired during some depositions into these matters, one cannot make a leap then that they would not be prejudiced (even if discovery were reopened) by the need to defend a lawsuit they did not know would be forthcoming"). Furthermore, the "Third Circuit has embraced the notion that the addition of a claim requiring…additional extensive discovery presents prejudice" to the non-moving party. *Buelna*, 2002 WL 531538, at *1 (citing *Adams*, 739 F.2d at 869). Thus, given the "additional discovery, costs, and preparation to defend against" Discovery's "new theories," as well as the extremely limited time before discovery ends, Amazon would be unfairly prejudiced if the Court were to grant Discovery's motion to amend its answer; therefore, the motion should be denied. *Cureton*, 252 F.3d at 273.

### 4.    The Cases Relied on by Discovery are Not Applicable Here

Finally, while Discovery relies on some District Court decisions granting leave to amend under Rules 15 and 16, Discovery's cases are easily distinguishable from this case on a number of important grounds. First and foremost, in none of Discovery's cases did a court allow a party

to amend after the deadline despite having chosen to delay a key deposition that could easily have been taken before the deadline. Here, by contrast, Discovery did not even attempt to depose or seek documents from Zimmerman, whose relevance was known to Discovery even before this case was filed, until many months after the deadline to amend.

Second, in none of Discovery's cases, or indeed in any analogous case, did a court allow amendment after a delay as long as Discovery's delay in this case (almost *eleven months* between the pleading deadline and this motion). *See, e.g., Leader*, 2010 WL 2545959, at *1 (4 months); *Frères*, 2009 WL1444835, at *1 (6 months); *ICU Medical*, 674 F. Supp. 2d. at 576 (1.5 months); *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 486 (D. Del. 2003) (6 months); *see also SKF Condition Monitoring, Inc. v. Invensys Systems, Inc.*, No. 07-1116 BTM (BGS), 2010 WL 3463686, at *2 (S.D. Cal. Aug. 31, 2010) (5 months).

Third, unlike here, many of the cases granting leave to amend involved delays for which the moving party was not responsible. For example, in some cases, there was difficulty deposing the parties necessary to support the amendment before the deadline to amend. *See, e.g., Leader*, 2010 WL 2545959, at *2 (the inventor could not be deposed prior to the deadline to amend the pleadings); *Enzo Life Scis.*, 270 F. Supp. 2d at 486 (the inventors were not available to be deposed for an additional month and a half after they were served with deposition notices, and a Protective Order further delayed receipt of the transcripts). Here, Discovery has no such excuse. As soon as Discovery decided to subpoena Zimmerman, he appeared for deposition on the very day chosen by Discovery. The entire period of delay was entirely Discovery's own fault.

Fourth, in many of the cases granting leave to amend, there was significantly more time for the non-moving party to investigate and respond to the moving party's new pleading. *See, e.g., Webxchange*, 2010 WL 299243, at *4 (no end to fact discovery set because it was tied to the

- 17 -

issuance of the claim construction order, and the *Markman* hearing had not even occurred yet); *SKF*, 2010 WL 3463686, at *3 (8 months left until the end of discovery); *Frères*, 2009 WL 1444835, at *2, 5 (granting leave to amend where non-moving party knew the motion would be made four months before discovery closed).  Here, by contrast, there are only a few weeks remaining in the fact discovery period.

Lastly, in one case, leave to amend was granted because the moving party had *already pled* inequitable conduct and was merely moving to amend or augment that defense or counterclaim.  *See, e.g., Webxchange*, 2010 WL 299243, at *3 (finding no prejudice where moving party had already pled inequitable conduct and was merely adding another theory of it).  By contrast, here Discovery seeks to inject inequitable conduct and its attendant questions of intent to the case for the first time at this late stage.

In sum, the cases do not support Discovery's motion to amend.

## IV. CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court deny Discovery's

motion to modify the scheduling order, and deny leave for Discovery to file its proposed

Amended Answer to Amazon's counterclaims.


                                          Respectfully submitted,

                                          POTTER ANDERSON & CORROON LLP

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt                           By:   /s/ David E. Moore
Y. Ernest Hsin                                  Richard L. Horwitz (#2246)
Sarah E. Piepmeier                              David E. Moore (#3983)
200 Park Avenue                                 Hercules Plaza, 6th Floor
New York, NY 10166                              1313 N. Market Street
Tel: (212) 351-4000                             Wilmington, DE 19801
                                                Tel: (302) 984-6000
                                                rhorwitz@potteranderson.com
Mark Reiter                                     dmoore@potteranderson.com
2100 McKinney Avenue
Dallas, TX 75201-6912
Tel: (214) 698-3100                       Attorneys for Defendant Amazon.com, Inc.

Stuart M. Rosenberg
1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel: (650) 849-5300

Dated: January 6, 2011
995912 / 34137

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I,  David E. Moore, hereby certify that on January 6, 2011, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on January 6, 2011, the attached document was Electronically

Mailed to the following person(s):

Elena C. Norman
Jeffrey T. Castellano
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19899-2207
enorman@ycst.com
jcastellano@ycst.com

Michael A. Jacobs
Deok Keun Matthew Ahn
Patrick J. Zhang
Richard S.J. Hung
Brooks M. Beard
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482
mjacobs@mofo.com
dahn@mofo.com
rhung@mofo.com
pzhang@mofo.com
bbeard@mofo.com

Brent P. Lorimer
Sterling A. Brennan
L. Rex Sears
Seth W. Black
Workman Nydegger
1000 Eagle Gate Tower
60 E. South Temple
Salt Lake City, UT  84111
blorimer@wnlaw.com
sbrennan@wnlaw.com
rsears@wnlaw.com
sblack@wnlaw.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

916443 / 34137