IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADREA, LLC,<br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>AMAZON.COM, INC.,<br>　　　　　　Defendant(s).<br>──────────────────────<br><br>AMAZON.COM, INC.,<br>　　　　　　Counterclaim Plaintiff,<br><br>　　　v.<br><br>ADREA, LLC, DISCOVERY<br>COMMUNICATIONS, INC.,<br>DISCOVERY COMMUNICATIONS, LLC,<br>and THE DISCOVERY CHANNEL STORE,<br>INC.,<br>　　　　　　Counterclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>C.A. No. 10-600-ER |

**REPLY BRIEF IN FURTHER SUPPORT OF COUNTERCLAIM DEFENDANTS'
MOTION TO MODIFY SCHEDULING ORDER AND FOR LEAVE TO FILE
AMENDED ANSWER**

*Of Counsel*
Michael A. Jacobs
Richard S.J. Hung
Deok Keun Matthew Ahn
Patrick Zhang
MORRISON & FOERSTER, LLP
425 Market Street
San Francisco, California 94105-2482
(415) 268-7000

Brent P. Lorimer
Sterling A. Brennan
L. Rex Sears
WORKMAN NYDEGGER
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
(801) 533-9800

Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
YOUNG CONAWAY STARGATT
　& TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jcastellano@ycst.com

*Attorneys for Discovery Communications,
Inc., Discovery Communications, LLC, and
The Discovery Channel Store, Inc.*

DATED: January 18, 2011

## TABLE OF CONTENTS

**Page**

I.    ARGUMENT ........................................................................................................1

    A.    There Is "Good Cause" To Allow Discovery's Amendment And There Was No "Undue Delay" ..............................................................................1

    B.    There Is No "Unfair Prejudice" ....................................................................4

    C.    Amazon's Cases Are Not Applicable ............................................................5

II.   CONCLUSION ....................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*
796 F.2d 443 (Fed. Cir. 1986)...............................................................................2

*Eastern Minerals & Chemicals Co. v. Mahan,*
225 F.3d 330 (3d Cir. 2000)...............................................................................5, 6

*Pressure Products Medical Supplies, Inc. v. Enpath Medical, Inc.,*
Case No. 9:06-121 (E.D. Tex. Jan. 14, 2008)....................................................7

*Pressure Products Medical Supplies, Inc. v. Greatbatch Ltd.,*
599 F.3d 1308 (Fed. Cir. 2010).......................................................................6, 7

*Price v. Trans Union, LLC,*
2010 WL 3310241 (E.D. Pa. 2010) ...................................................................6

*Slip Track Systems, Inc. v. Metal-Lite, Inc.,*
304 F.3d 1256 (Fed. Cir. 2002).........................................................................5

## I.      ARGUMENT

### A.      There Is "Good Cause" To Allow Discovery's Amendment And There Was No "Undue Delay"

Amazon's opposition brief is most notable for what it does *not* say.  Amazon does not deny that Jeff Bezos, the founder of Amazon and a named inventor for the Amazon patents, received the "Top Ten email" from William Zimmerman on October 31, 1995.  Nor does Amazon deny that one of the concepts that Zimmerman communicated to Bezos in that email later became a centerpiece of the Amazon patents.  Amazon also does not deny that this information would have been highly material to the patent examiner, or that its agents (1) hid the "Top Ten email," (2) mischaracterized Amazon's relationship with Zimmerman, and (3) filed a false declaration in the patent office in order to gain issuance of its patents.[1]

Instead, Amazon argues that there has been "undue delay" and there is no "good cause" that would support allowance of an amendment.  (Opp. at 1-2, 11-15).  Amazon does not dispute that Discovery did not know about the inequitable conduct complained of and therefore could not have pleaded inequitable conduct with the required particularity until after the true facts were disclosed in the deposition of Zimmerman.  (Opp. at 12).  Instead, Amazon asserts that because the prosecution history discloses that Zimmerman had communications with Amazon representatives, Discovery should have known that Zimmerman was an individual with knowledge that might lead to facts establishing inequitable conduct, and that Zimmerman therefore should have been deposed earlier, on a priority basis.  (Opp. at 1-2, 2-7, 12-15, 16-17).  Amazon argues that Discovery failed to be "diligent" and "waited eleven months" after the

---

[1] At pages 3-4 of its opposition brief, Amazon concedes that the examiner rejected the claims based on the *incomplete* information Amazon disclosed about Zimmerman.  *A fortiori*, the examiner would have considered Zimmerman's disclosure to Bezos and the relationship between IBIC and Amazon highly material if the true and complete facts had been disclosed.

amended-pleading deadline to do so. (Opp. at 1-2, 11-15). Indeed, Amazon goes so far as to assert that "the entire period of delay was entirely Discovery's own fault." (Opp. at 17).

Amazon's argument comes with ill grace. It is undisputed that the critical facts that led to Discovery's assertion of inequitable conduct were *not* disclosed in the prosecution history. Indeed, it is because of the deception by Amazon's agents that the prosecution history contains no hint of Zimmerman's true contributions and the relevance of those contributions. If Amazon's agents had disclosed the "Top Ten" email and revealed Zimmerman's true role during the prosecution history, the patents likely would not have ever issued, and if they had, Discovery would have certainly deposed Zimmerman early on. Under Amazon's theory, it should be allowed to conceal the "Top Ten" email and deceive the examiner about Zimmerman's true role and relationship to the invention, and then rely on that very same deceptive disclosure to argue that Discovery should have known to take the deposition of Zimmerman earlier. That argument should be rejected.

If the prosecution history had given even the slightest hint that Zimmerman had conceived and disclosed core concepts of the invention to Bezos, and that Amazon's agents had not only failed to disclose highly material facts related thereto, but had in fact mischaracterized Zimmerman's role, Discovery would certainly have subpoenaed him earlier. Instead, Amazon and its agents filed papers and made arguments during prosecution suggesting that Zimmerman and his relationship with Amazon were irrelevant to patentability. Indeed, the record created by Amazon suggested that Zimmerman was, at most, someone that might have some information about prior art activities that had already been considered (and rejected) by the patent office. Such information is usually of limited value. *See Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 447 (Fed. Cir. 1986) ("[W]hen the prior art before the

court is the same as that before the PTO, the burden on the party asserting invalidity is more difficult to meet.").

There was nothing tardy about the timing of Discovery's subpoena to or deposition of Mr. Zimmerman. Both occurred well within the period set by the Court for discovery. And Discovery was not sitting on its hands. Exhibit 1 attached to this reply brief details the efforts of Discovery during the period leading up to the Zimmerman deposition, and demonstrates that Discovery was in fact diligently pursuing and providing information about its positions in the case and in moving the case forward. Amazon's argument implausibly asserts that all depositions of individuals having potentially relevant information must be completed before the deadline to amend pleadings, rather than the deadline for fact discovery. That argument finds no support in the law or common sense. Here, there was nothing to suggest to Discovery that Mr. Zimmerman's deposition should be prioritized above other discovery efforts. To the contrary, the inequitable conduct of Amazon's agents and Amazon's failure to produce the critical documents suggested exactly the opposite. It would be the ultimate irony if the inequitable conduct here complained of was so successful that it deceived the patent examiner *and* was then successfully asserted as the basis for a claim that a party, unaware of the deception, engaged in "undue delay" sufficient to bar amendment of the inequitable conduct defense.

In summary, there has been no "undue delay" because the delay to which Amazon points is in fact attributable to the inequitable conduct itself. And there is "good cause" to allow Discovery's amendment because Discovery has been diligent in (1) taking discovery and in moving this case forward during the entire period from the filing of Discovery's answer until

Zimmerman's deposition and then (2) preparing its motion and moving to amend its answer as soon as reasonably possible after it learned of the inequitable conduct.[2]

### B.      There Is No "Unfair Prejudice"

Amazon also argues that allowing Discovery to amend its answer would result in "unfair prejudice." (Opp. at 15-16). It argues that "Discovery seeks to make…allegations about the long-past mental states of third parties who have not been deposed or even subpoenaed for deposition in this case, including former Amazon employee Nicholas Lovejoy and Amazon's patent counsel Ronald Schoenbaum." (Opp. at 15). That argument is disingenuous. Before Amazon filed its opposition brief, subpoenas and notices of deposition had in fact already been issued for Mr. Lovejoy and Mr. Schoenbaum. (D.I. 121, 122). Amazon will therefore have an opportunity to depose and to obtain relevant documents from these third parties within the period set for fact discovery. Therefore, Amazon's argument that there is no "unfair prejudice" rings hollow.

Amazon also argues that it will be prejudiced because it will have to engage in "'additional discovery.'" (Opp. at 16). The relevant question is not whether there will be "additional discovery." The relevant question is whether this additional discovery is "unfair," and the answer to that question is clearly "no." Given the seriousness of the conduct that is at issue and the fact that there is time remaining in the fact discovery period, requiring Amazon to attend these two depositions is far from "unfair." The "additional discovery" about which

---

[2] Amazon also argues in passing that the month between Zimmerman's deposition on November 12, 2010 and the completion of Discovery's motion around December 14, 2010 constitutes "undue delay." (Opp. at 15). What Amazon elects to ignore is that Discovery did not receive the transcript of Zimmerman's deposition until December 1 (D.I. 103 at p. 10) and that during the time that Discovery was preparing its motion, it was also busy preparing supplemental responses to Amazon's interrogatories (D.I. 68, 73), noticing the deposition of Mr. Bezos (D.I. 76), reviewing and preparing objections to Amazon's subpoenas (D.I. 83, 84), and preparing requests for production of documents (D.I. 94). Amazon's argument is without merit.

Amazon complains was made necessary by the conduct of its own agents. Requiring Amazon to participate in discovery to get to the bottom of that conduct is far from "unfair."

### C.   Amazon's Cases Are Not Applicable

None of the cases on which Amazon relies supports the result that Amazon seeks. Amazon first relies on *Slip Track Systems, Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256 (Fed. Cir. 2002). (Opp. at 12-13). In *Slip Track*, the defendant "admit[ted] that it knew the key facts relating to the alleged inequitable conduct earlier in the process" but then waited nearly two years before it "sought evidence to corroborate its potential claim of fraud on the PTO" by deposing the inventor. 304 F.3d at 1270, 1262. Only then did it seek to amend its pleadings to add the defense of inequitable conduct. *Id.* In other words, the defendant was already in possession of sufficient facts to be aware of the inequitable conduct, but then waited to "corroborate" its claim before it moved to amend its pleadings. That is far different from what has occurred here. Amazon does not dispute that Discovery had absolutely no reason to believe that there was any inequitable conduct before deposing Zimmerman. Instead, Amazon asserts that Discovery had *some* reason to depose Zimmerman because he was mentioned in the prosecution history, and therefore should have prioritized his deposition. The obvious fallacy in Amazon's argument is that the deception that occurred during prosecution *prevented* Discovery from learning of the need to depose Zimmerman on inequitable conduct issues and therefore *prevented* Discovery from having any reason to prioritize his deposition. Unlike the defendant in *Slip Track*, Discovery had no knowledge of "key facts" before deposing Zimmerman that would have alerted Discovery to the fact that there was an inequitable conduct defense.

Amazon next relies on *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330 (3d Cir. 2000). (Opp. at 13). In *Eastern Minerals*, the plaintiff sought to amend its complaint to add RICO claims, but offered absolutely no explanation as to "what led it to decide that RICO claims

could be pled or why information from independent sources could not have been obtained earlier." 225 F.3d at 340.  That is completely different from the situation here.  Here, Discovery has offered an explanation.  Discovery could have obtained the relevant information from Amazon, but Amazon's agents concealed it during prosecution, and Amazon did not produce it in the course of this litigation.  It was only after Discovery took Zimmerman's deposition that it learned of the inequitable conduct at issue.  It was the inequitable conduct itself that hindered Discovery from learning about the inequitable conduct earlier.

Amazon further relies on *Price v. Trans Union, LLC*, 2010 WL 3310241 (E.D. Pa. 2010) (Robreno, J.).  (Opp. at 13).  In *Price*, the plaintiff sought to amend her complaint, but the very information she sought to add by amendment "was known to Plaintiff's counsel…11 days before the deadline for amendments." 2010 WL 3310241, at *3.  The plaintiff then waited to file her motion for leave to amend until eight months later, but did "not account for her delay." *Id.* at *3, *1.  That is clearly not the situation here.  Here, the information that Discovery seeks to add to its answer was not known until the Zimmerman deposition, and Discovery diligently prepared and submitted its motion to Amazon within two weeks after it received the transcript.

Finally, Amazon relies on *Pressure Products Medical Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308 (Fed. Cir. 2010).  (Opp. at 13-14).  Amazon incorrectly asserts that *Pressure Products* is "exactly on point." (Opp. at 14).  In *Pressure Products*, during the prosecution of the patent-in-suit, declarations signed by a third party (Mr. Kontos) were submitted to the patent office.  Twelve years later during litigation, the defendant's counsel contacted Mr. Kontos, who could not remember seeing or working on the declarations.  599 F.3d at 1319.  The defendant then moved for leave to amend its answer to assert inequitable conduct on grounds that the declarations must therefore have been fraudulent.

6

The district court denied the motion.  The court first stated that the amendment would "almost certainly result" in having to extend the discovery period, which it was "loath" to do in light of a trial date only five months away.  (Exh. 2, Order Denying Motion for Leave to File, Case No. 9:06-121 (E.D. Tex. Jan. 14, 2008), pp. 3-4).  The court also rejected the defendant's reason for delaying discovery of Mr. Kontos.  The defendant argued that it had been limited to conducting discovery on claim construction issues until only recently, but the court concluded that, in fact, "there was nothing to prevent [the defendant] from conducting discovery on non-claim construction issues."  *Id.* at 4, 6.  The court also questioned whether the "lapse of memory" on the part of Mr. Kontos really provided clear and convincing evidence of inequitable conduct.  *Id.* at 5-6.  On appeal, the Federal Circuit concluded that the district court had not abused its discretion in denying the motion, and expressed doubt that the lapse of memory was sufficient to meet the "higher standards of proof" required for inequitable conduct.  599 F.3d at 1320-21.

*Pressure Products* is different from this case for at least four reasons.  First, this is not a case in which the amendment will "almost certainly result" in having to extend the discovery period.  The only "additional discovery" Amazon has identified are the depositions of Mr. Lovejoy and Mr. Schoenbaum.  (Opp. at 15).  Notices of deposition and subpoenas for these individuals were issued and the depositions were scheduled before the end of the discovery period.  (D.I. 121, 122).  Second, even if the discovery period needs to be extended by a few weeks, no trial date has been set in this case, unlike the situation in *Pressure Products*.  Thus, unlike in *Pressure Products*, there would be no prejudice in extending the discovery period here if it were necessary.  Third, unlike the defendant in *Pressure Products*, Discovery has provided the court with valid reasons for not having taken Zimmerman's deposition earlier.  Moreover, the plaintiff in *Pressure Products* had no blame for the delay in seeking discovery from Mr. Kontos,

but here it is the deceptive acts of Amazon's own agents during the prosecution history that are to blame for any delay in seeking discovery from Mr. Zimmerman. Fourth and finally, there is no question that the conduct at issue here constitutes inequitable conduct. Whereas the case for inequitable conduct in *Pressure Products* was flimsy and the amendment was likely futile, Amazon has not even insinuated such a thing for Discovery's amendment. Amazon's opposition brief does not argue that the amendment would be futile, does not deny that the information withheld from the examiner would have been highly material, and does not dispute that the alleged conduct would clearly render the patents unenforceable for inequitable conduct. The severity of Amazon's misconduct must clearly be taken into account when assessing whether any delay is "undue" or any prejudice is "unfair."

## II.   CONCLUSION

Amazon's arguments should be rejected, and the motion should be granted.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*Of Counsel*
Brent P. Lorimer
Sterling A. Brennan
L. Rex Sears
WORKMAN NYDEGGER
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
(801) 533-9800

Dated: January 18, 2011

Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jcastellano@ycst.com
*Attorneys for Discovery Communications, Inc.,*
*Discovery Communications, LLC, and The*
*Discovery Channel Store, Inc.*

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, hereby certify that on January 18, 2011, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Richard L. Horwitz [rhorwitz@potteranderson.com]
David E. Moore [dmoore@potteranderson.com]
POTTER, ANDERSON & CORROON
6th Floor, Hercules Plaza
1313 N. Market Street
Wilmington, DE 19801

Josh A. Krevitt [jkrevitt@gibsondunn.com]
Y. Ernest Hsin [ehsin@gibsondunn.com]
Sarah E. Piepmeier [spiepmeier@gibsondunn.com]
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

I further certify that I caused a copy of the foregoing document to be served by e-mail on the above listed counsel.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19801
(302)-571-6600
jcastellano@ycst.com

*Attorneys for Adrea, LLC, Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc.*

9

# EXHIBIT 1

**EXHIBIT 1**

LIST OF DISCOVERY'S MAJOR ACTIVITIES IN THIS LITIGATION BETWEEN FILING
OF DISCOVERY'S ANSWER AND ZIMMERMAN DEPOSITION

| Date | Case No. & Docket No. | Discovery's Major Activities In This Litigation |
|---|---|---|
| 10/1/2009 | 09-178 D.I. 45 | Discovery's Answer to Amazon's Counterclaims |
| 10/13/2009 | 09-178 D.I. 50 | Discovery's Initial Disclosures |
| 10/14/2009 | 09-178 D.I. 51 | Discovery's Motion to Sever and Transfer Amazon's Counterclaims |
| 10/28/2009 | 09-178 D.I. 56 | Discovery's Response to Amazon's First Set of Requests for Production of Documents<br>Discovery's Response to Amazon's First Set of Interrogatories |
| 11/16/2009 | 09-178 D.I. 62 | Discovery's Reply Brief on Motion to Sever and Transfer Amazon's Counterclaims |
| 12/15/2009 | 09-178 D.I. 67 | Discovery's First Set of Interrogatories to Amazon<br>Discovery's Second Set of Requests for Production of Documents to Amazon |
| 12/18/2009 | 09-178 D.I. 68 | Motion Hearing and Scheduling Conference |
| 1/4/2010 | 09-178 D.I. 71 | Discovery's Second Set of Interrogatories to Amazon<br>Discovery's Third Set of Requests for Production of Documents to Amazon |
| 1/21/2010 | 09-178 D.I. 76 | Subpoena to Knobbe Martens |
| 1/28/2010 | 09-178 D.I. 79 | Discovery's Third Set of Interrogatories to Amazon |
| 2/4/2010 | 09-178 D.I. 83 | Discovery's Proposed Terms for Construction |
| 3/12/2010 | 09-178 D.I. 90 | Discovery's Response to Amazon's Second Set of Interrogatories |
| 3/15/2010 | 09-178 D.I. 91 | Claim Construction Chart |
| 3/31/2010 | 09-178 D.I. 93 | Discovery's Claim Construction Opening Brief |
| 4/6/2010 | 09-178 D.I. 100 | Discovery's Subpoena to Commission Junction |
| 4/15/2010 | 09-178 D.I. 101 | Discovery's Supplemental Initial Disclosures |
| 4/19/2010 | 09-178 D.I. 103 | Discovery's Supplemental Responses and Objections to Amazon's First Set of Interrogatories |
| 4/21/2010 | 09-178 D.I. 104 | Discovery's Second Supplemental Responses and Objections to Amazon's First Set of Interrogatories |

| Date | Case No. & Docket No. | Discovery's Major Activities In This Litigation |
|---|---|---|
| 4/30/2010 | 09-178 D.I. 108 | Discovery's Claim Construction Answering Brief |
| 4/30/2010 | 09-178 D.I. 110 | Discovery's Motion to Compel Compliance with Requests for Production |
| 5/5/2010 | 09-178 D.I. 112 | Discovery's Amended Subpoena to Commission Junction |
| 5/18/2010 | 09-178 D.I. 123 | Discovery's Reply Brief in Support of Its Motion to Compel Compliance With Requests for Production |
| 5/21/2010 | 09-178 D.I. 133 | Markman Hearing |
| 5/26/2010 | 09-178 D.I. 123 | Discovery's Objections to Amazon's Notice of 30(b)(6) Deposition |
| 6/7/2010 | | Lynn Radliff Deposition |
| 6/18/2010 | 09-178 D.I. 135 | Discovery's Response to Amazon's Second Set of Requests for Production of Documents |
| 6/29/2010 | 09-178 D.I. 136 | Discovery's Fourth Set of Interrogatories to Amazon |
| 7/6/2010 | 09-178 D.I. 138 | Subpoena to Bertelsmann DMI, Inc |
| 7/6/2010 | 09-178 D.I. 139 | Subpoena to Jason Olim |
| 7/8/2010 | 09-178 D.I. 141 | Subpoena to LinkShare Corporation |
| 7/14/2010 | 09-178 D.I. 142 | Subpoena to John K. Arnold |
| 7/14/2010 | 09-178 D.I. 143 | Subpoena to PC Flowers & Gifts.com Inc |
| 7/14/2010 | 09-178 D.I. 144 | Subpoena to Kurt Dennis Dahl |
| 7/14/2010 | 09-178 D.I. 145 | Subpoena to Infospace, Inc |
| 7/14/2010 | 09-178 D.I. 146 | Subpoena to William J. Tobin |
| 7/14/2010 | 10-600 D.I. 1 | Complaint filed by Discovery Patent Holdings |
| 7/15/2010 | 09-178 D.I. 147 | Motion to Dismiss |
| 7/21/2010 | | Jennifer Arnold Deposition Anders Bjoras Deposition |
| 7/22/2010 | | Jennifer Arnold Deposition Anders Bjoras Deposition |
| 7/22/2010 | 09-178 D.I. 149 | Amended Subpoena to Bertelsmann DMI, Inc |
| 8/5/2010 | | Nelson Morris Deposition |

| Date | Case No. & Docket No. | Discovery's Major Activities In This Litigation |
|---|---|---|
| 8/12/2010 | 10-600 D.I. 7 | Stipulation regarding consolidation of 09-178 with 10-600 |
| 8/24/2010 | | Kevin Moore Deposition |
| 8/26/2010 | | Chris McFadden Deposition |
| 9/15/2010 | | Larry Harris Deposition |
| 9/20/2010 | 10-600 D.I. 25 | Answer to Counterclaim |
| 9/27/2010 | 10-600 D.I. 29 | Response to Amazon's Motion to Limit Claims |
| 9/28/2010 | | David Matsumoto Deposition |
| 10/19/2010 | 10-600 D.I. 40 | Response to Amazon's Fifth Set of Interrogatories |
| 10/19/2010 | 10-600 D.I. 41 | Discovery's Subpoena to Zimmerman |

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| PRESSURE PRODUCTS MEDICAL SUPPLIES, INC., | § § § | |
| *Plaintiff,* | § § | Civil Action No. 9:06-CV-121 |
| v. | § § | JUDGE RON CLARK |
| ENPATH MEDICAL, INC. | § § | |
| *Defendant.* | § | |

## ORDER DENYING MOTION FOR LEAVE TO FILE

Defendant Enpath Medical, Inc. seeks to amend its answer and counter-claims, as well as add

a party, HL Medical Inventions, Inc., in light of documents received from Plaintiff Pressure Products

Medical Supplies, Inc., regarding declarations submitted by Steven Kontos during re-examination

of the '904 patent. *See* Doc. # 72. Pressure Products opposes the motion, arguing that the

amendment would result in undue delay and/or prejudice to Pressure Products and that the

documents Enpath cites do not support allegations of inequitable conduct.

### I. Background

Pressure Products filed suit against Enpath on June 12, 2006, claiming infringement of

United States Patent Nos. 5,125,904 ("the ` 904 patent")  and 5,312,355 ("the ` 355 patent").[1]

---

[1]The '904 and '355 patents are related to a splittable hemostatic valve and introducer
sheath assembly that allows introduction of leads or catheters into a vein or artery, with the '355
patent being a continuation-in-part of the '904 patent. Because of the hemostatic valve, the
introducer sheath can remain in the vein throughout an operation with the advantage of free lead
exchange, easier lead manipulation, reduced blood loss, and reduced risk of air embolism. A side
arm to the hemostatic valve cage provides continuous fluid drip in order to prevent clot
formation in the opening of the introducer sheath.

1

Enpath filed its answer and counter-claims on October 19, 2006 [Doc. # 6].  As per the court's

Scheduling Order [Doc. # 17], the deadline for the parties to join additional parties was February 8,

2007.  The deadlines for Pressure Products' amended pleadings and Enpath's response to the

amended pleadings were April 5, 2007 and April 26, 2007, respectively.  Enpath filed this motion

on December 7, 2007.

## II. Applicable Law and Analysis

A. Applicable Law

Once a scheduling order has been issued, Fed. R. Civ. P. 16(b) governs amendment of

pleadings.  *Hawthorne Land Co. v. Occidental Chemical Corp.*, 431 F.3d 221, 227 (5th Cir. 2005).[2]

"Only upon the movant's demonstration of good cause to modify the scheduling order will the more

liberal standard . . . apply to the district court's decision to grant or deny leave."  *Id* (citations

omitted).  In determining whether good cause exists under Rule 16(b), courts consider four factors:

(1) the unfair prejudice to the opposing party; (2) the importance of the evidence; (3) the possibility

for curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's

failure to comply with the scheduling order.   *Hawthorne Land Co.*, 431 F.3d at 227.  This court

must apply the rules of procedure to secure the just, speedy, and inexpensive determination of this

action.  Fed. R. Civ. P. 1.

B. Enpath's Request For Amendment

Enpath seeks to amend its answer and counter-claims to include allegations of inequitable

conduct and add HL Medical as a party.  As noted *supra*, Enpath filed its answer and counter-claims

---

[2] The Federal Circuit has stated that a decision on whether to grant or deny a motion for
leave to join a party is governed by the law of the regional circuit. *See Insituform Technologies,
Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1372 (Fed. Cir. 2004).

on October 19, 2006 and filed this motion almost eight months after the deadline to respond to Pressure Products' amended pleadings had passed. Trial is set for June 2008.

Enpath argues that it did not become aware that the declarations submitted by Mr. Kontos during the '904 patent re-examination proceedings might contain false statements until it began communicating with Mr. Kontos in early November 2007. According to Enpath, documents disclosed by Pressure Products on November 19, 2007 relating to the correspondence between Mr. Kontos and the attorney handling the '904 patent re-examination indicate that Mr. Kontos was told what to say and never conducted the independent prior art analysis set forth in his declaration. Enpath suggests that these documents demonstrate fraudulent conduct on the part of Pressure Products during the re-examination proceedings, and that it should be permitted to amend its pleadings to reflect this alleged inequitable conduct.

Enpath also seeks to add HL Medical as a party in this action. HL Medical is the assignee of the patents-in-suit, and exclusively licensed them to Pressure Products. According to Enpath, HL Medical is obligated, pursuant to the terms of the licensing agreement, to participate in any patent enforcement proceeding initiated by Pressure Products and any proceeding claiming invalidity or unenforceability of either of the patents-in-suit. Enpath's original answer raised both invalidity and unenforceability as defenses. *See* Doc. # 6, at 4.

C. Analysis

   1. *Unfair Prejudice and Possibility of a Continuance*

Allowing Enpath to amend its pleadings at this late date will almost certainly result in undue delay. Enpath has raised the issue of inequitable conduct for the first time. Discovery is set to close on March 28, 2008, giving the parties less than two months to gather, exchange, and evaluate any

3

new material associated with this issue.  The court previously extended the discovery deadline from November 30, 2007 until March 28, 2008, and is loath to do so again in light of the June 2008 trial date.

Even assuming the parties could complete discovery by the deadline, undue prejudice to Pressure Products is very likely to result. The re-examination proceedings and Mr. Kontos' declarations took place in 1995.  Pressure Products points out that the declarations have been publicly available in the prosecution file history of the '904 patent for over a decade.  At the very least, Enpath was on notice of the declarations existence when Pressure Products filed this suit and asserted infringement of the '904 patent.

Enpath argues that it did not become aware that inequitable conduct might be an issue until it was "allowed to conduct independent discovery on matters not solely related to claim construction." *See* Doc. # 72, at 2.  However, there was nothing to prevent Enpath from conducting discovery on non-claim construction issues after the Joint Rule 26(f) attorney conference on November 14, 2006.  In fact, Pressure Products states that it provided Enpath with a copy of the '904 patent's prosecution history as early as January 16, 2007.  Pressure Products should not now be penalized merely because Enpath chose not to conduct such discovery at an earlier date.

Enpath's request to add HL Medical as a party is also likely to result in delay of this litigation and prejudice to Pressure Products. Pressure Products' complaint clearly states that it is the licensee of the patents-in-suit.  *See* Doc. #1, at ¶ 8.  A simple search of the United States Patent and Trademark Office's website would have revealed that HL Medical is the assignee of the patents-in-suit.[3]  Enpath agreed to the February 8, 2007 Scheduling Order deadline for joining additional

---

[3] *See* http://assignments.uspto.gov/assignments/q.

parties, on at least constructive notice of the easily accessible fact that HL Medical was the patents'

assignee. Enpath did not request that HL Medical be added until almost ten months after that

deadline. Adding a new party at this stage of the litigation, with discovery set to close on March 28

and trial to begin in early June, would not afford HL Medical the opportunity to fully prepare for this

case. Enpath argues that HL Medical is a necessary party in this litigation, but fails to address why

it is a necessary party now when it was apparently not so prior to the filing of this motion on

December 7, 2007. The Federal Circuit has stated that there is an exception to the general rule that

a patentee should be joined in a suit brought by an exclusive licensee "where the patentee makes an

assignment of all substantial rights under the patent, the assignee may be deemed the effective

'patentee' under 35 U.S.C. § 281 and thus may have standing to maintain an infringement action in

its own name." *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000). In light

of clearly established law and the fact that Enpath could have discovered HL Medical was the

assignee of the patents-in-suit as early as when this suit was commenced on June 12, 2006, the fact

that it inexplicably failed to consider HL Medical a necessary party until December 2007 strongly

suggests that Enpath's request to add HL Medical at this point is merely a delaying tactic.

    2. Importance of the Evidence

    As discussed *supra*, the declarations of Mr. Kontos were available to Enpath long before this

motion is filed. The fact that Enpath did not notice Mr. Kontos' deposition until October 30, 2007

indicates that Enpath did not consider his declarations to be particularly important. Enpath's new

claim of inequitable conduct is supported solely by the facts that Mr. Kontos cannot now recall

participating in a re-examination proceeding that occurred twelve years ago and that the attorney

draft of his declaration is substantially similar to the declaration ultimately submitted. Enpath has

not indicated any statement in the declarations which is fraudulent; rather, it points primarily to a

lapse of memory on the part of Mr. Kontos. Pressure Products also points out that Mr. Kontos

signed the declarations and made handwritten revisions to the declarations. *See* Doc. # 76, Ex. A,

B. The new information Enpath cites is hardly a "smoking gun" that demonstrates inequitable

conduct.

### 3. Explanation of Delay

Enpath has provided no explanation for the delay, other than it was supposedly not aware of

the allegedly false statements in the Kontos declarations until it began conducting independent

discovery on non-claim construction issues. Even disregarding the fact that the *Markman* hearing

in this case took place on August 15, 2007 and Mr. Kontos' deposition was not noticed until October

30, 2007, this argument lacks merit. As already discussed, there was no legitimate reason why

Enpath could not have begun discovery on non-claim construction related issues as early as

November 2006; the fact that they chose not to is not a justification for amending the pleadings at

this late date.

A similar conclusion can be reached with regards to Enpath's request to add HL Medical.

Enpath could have easily ascertained the fact that HL Medical was the assignee of the patents-in-suit

when the suit was filed in June 2006, yet provides the court with no explanation why it did not seek

to join HL Medical earlier. Enpath's suggestion that HL Medical is required to participate in any

patent proceeding initiated by Pressure Products or which involves invalidity and/or unenforceability

under the licensing agreement does not change this conclusion, as Enpath raised invalidity and

unenforceability in its October 19, 2006 answer as defenses without seeking to join HL Medical as

a party until it filed this motion on December 7, 2007.

6

IT IS THEREFORE ORDERED that Defendant Enpath Medical, Inc.'s Motion For Leave to Amend [Doc. # 72] is DENIED.

So **ORDERED** and **SIGNED** this **12** day of **January, 2008.**

Ron Clark, United States District Judge