IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DISCOVERY PATENT HOLDINGS, : CIVIL ACTION
LLC, et al., : NO. 10-600-ER
:
        Plaintiffs, :
:
    v. :
:
AMAZON.COM, INC., et al., :
:
        Defendants. :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    FEBRUARY 4, 2011

## I.    INTRODUCTION

        Plaintiff Discovery Communications, Inc., ("Discovery"
or "Plaintiff") initiated this action against Defendant
Amazon.com, Inc. ("Amazon" or "Defendant"), alleging infringement
of two of its patents in violation of 35 U.S.C. § 271 and seeking
injunctive relief, and compensatory and punitive damages.[1]

        Before the Court are both parties' briefing on claim
construction with proffered definitions for disputed claim terms.
For the reasons set forth below, the Court defines the claim
terms as set out in the conclusion.

_____

        [1]    The Court has jurisdiction pursuant to 28 U.S.C. §§
1331 and 1338.

## II. BACKGROUND

On March 17, 2009, Plaintiff Discovery Communications, Inc., initiated this action against Defendant Amazon.com, Inc., alleging infringement of Discovery's '851 Patent in violation of 35 U.S.C. § 271 and seeking injunctive relief and compensatory and punitive damages. Discovery contends that Amazon is required to obtain a license to "make, use, sell, offer for sale and/or import products" under numerous patents in Amazon's E-book Patent Portfolio (including but not limited to the Kindle, the Kindle 2, and the content of other e-books).[2] Id.

On May 15, 2009, Amazon filed its Answer, asserting defenses and counterclaims. (Doc. no. 7.) Therein, Amazon asserted the following four defenses: (1) non-infringement of the '851 patent; (2) invalidity/unenforceability of the '851 patent; (3) inequitable conduct engaged in by Discovery in withholding material information to the USPTO regarding prosecution of the '851 patent; and (4) patent misuse. (Id.) Amazon also alleges patent infringements by Discovery, in the area of electronic commerce ("e-commerce") and its underlying technology, seeking declaratory relief and compensatory and punitive damages.

On July 14, 2010, Discovery filed a second, separate

---

[2] On October 2, 2008, Plaintiff sent Defendant a letter identifying the infringing conduct and products, and alleging that certain patents for products Defendant was using and/or selling required a license. (Doc. no. 7 at 17.)

complaint alleging infringement of its '690 patent.  On August 17, 2010, the Court consolidated both of Discovery's complaints and Amazon's counterclaims into this action.

Originally, eight patents were at issue.[3]  However,

_____

[3]    As referenced in the pleadings, the disputed patents were as follows:

-    Count I:        The '141 Patent is entitled "Internet-Based Customer Referral System," issued on Feb. 2, 2000

-    Count II:       The '133 Patent is entitled "Internet-Based Customer Referral System," issued on Feb. 26, 2000

-    Count III:      The '851 Patent is entitled "Electronic Book Security and Copyright Protection System," issued on Nov. 20, 2007, seeking declaratory relief based on disputed liability, patent invalidity, inequitable conduct and patent misuse

-    Count IV:       The '690 Patent is entitled "Electronic Book Selection and Delivery Service," issued on Nov. 15, 1999, seeking declaratory relief on the same bases

-    Count V:        The '173 Patent is entitled "Portable Electronic Book Viewer," issued to John S. Hendricks on April 29, 2003, seeking declaratory relief on the same bases

-    Count VI:       The '501 Patent is entitled "Electronic Book Selection and Delivery System Having Encryption and Security Features," issued to John S. Hendricks on Nov. 20, 2007, seeking declaratory relief on the same bases

-    Count VII:      The '788 Patent is entitled "Electronic Book Secure Communication with Home Subsystem," issued to John S. Hendricks on Feb. 26, 2008, seeking declaratory relief on the same bases

there are currently only four patents to be construed by the Court: Discovery's patents '690 and '851 ("Discovery Patents"); and Amazon's patents '141 and '133 ("Amazon Patents").

A. <u>Discovery Patents</u>

Discovery's '690 Patent is entitled "Electronic Book Selection and Delivery Service" and was issued on Nov. 15, 1999. The '690 Patent describes a "method of distributing electronic books to a portable book-shaped viewing device." (<u>See</u> Pl. Br. 2.) The '690 Patent's disclosure is comprised of (1) the viewing unit, and (2) the operations center that stores and transmits the e-books. (<u>See</u> Pl. Br. 2 (citing '690 Patent at 1:51-2:45).) The '690 Patent effectively transmits books to e-readers for reading, as opposed to physical book transportation.

Discovery's '851 Patent is entitled "Electronic Book Security and Copyright Protection System" and was issued on Nov. 20, 2007. The '851 Patent covers the same system as the '690 Patent, a "system and method of securely distributing electronic books to a portable book-shaped viewing device." However, the '851 Patent "details an encryption process for securing" the e-books transmitted to the viewing device. (<u>Id.</u> at 3.)

_____

- Count VIII: <u>The '286 Patent</u> is entitled "Electronic Book Electronic Links," issued to John S. Hendricks and Michael Asmussen on July 15, 2008, seeking declaratory relief on the same bases.

- 4 -

Specifically, the '851 Patent encrypts e-books by modifying unencrypted ("clear") text and transforming it into encrypted text ("ciphertext"); the reverse is done for encrypted text. (See Def. Br. 4.)  The '851 Patent is comprised of (1) an operations center to store/transmit e-books, and (2) a device to view the books.

   B. Amazon Patents

      Amazon's '141 Patent is entitled "Internet-Based Customer Referral System" and issued on February 2, 2000. Amazon's related '133 Patent is entitled "Internet-Based Customer Referral System" and issued on February 26, 2000.

      Amazon describes the '141 and '133 Patents as creating technological outpaths from the e-merchant's website (here, Amazon) to associates' websites (the referring entities) that avoids costly impediments for the e-merchant, such as having the burden of reviewing the associates' sites and having to pay for conventional advertising.  (Id. at 8.)  Thus, the associate is able to get referrals to its website (and products) from Amazon.com in exchange for a commission.  Associates are also able to generate feedback reports regarding the success of their referrals.  (Id. at 10.)

C. <u>Procedural History</u>

On March 12, 2010, the Court issued an amended scheduling order, regarding the <u>Markman</u> hearing and claim construction.  (Doc. no. 89.)  Both parties filed their claim construction briefing and on May 21, 2010, the Court held the <u>Markman</u> hearing.

**III. DISCUSSION**

Before the Court are both parties' briefing on claim construction with proffered definitions for disputed claim terms. The following claims are contested by the parties and contain terms which the Court must define:

- **'690 Patent:** Claims 39, 40
- **'851 Patent:** Claims 1, 34, 36, 38, 39, 45, 56, 61, 82, 96, 107, 110, 119, 122, 123
- **'141 Patent:** Claims 1, 2, 7, 9, 10, 13, 14, 15, 16, 17, 18, 19, 21, 23, 24, 25, 26, 27, 28, 29, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42
- **'133 Patent:** Claims 1, 2, 5, 8, 9, 18, 21, 22, 23, 24, 25

A. Legal Principles of Claim Construction

A court's analysis of patent infringement is comprised

of a well-established two-step process: (1) the meaning of disputed claims are construed; and (2) the allegedly infringing device is compared to the claims as construed.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996); Wavetronix LLC v. EIS Electronic Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009).  With respect to the first step, "[t]he purpose of claim construction is to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed."  Every Penny Counts, Inc. v. American Express Co., 563 F.3d 1378, 1382 (Fed. Cir. 2009) (citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008)).

It is axiomatic that the claims define the scope of the patent.  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed Cir. 2005) (en banc) (internal citations omitted); see also, Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Therefore, the Court must first look to the words of the claims themselves in order to ascertain their meaning.  Vitronics Corp., 90 F.3d at 1582; see also Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("[T]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual

words of the claim.").


### 1. Plain and Ordinary Meaning

Claim terms must be initially interpreted according to their ordinary and customary meaning.  Genzyme Corp. v. Transkaryotic Therapies, Inc., 346 F.3d 1094, 1106 (Fed. Cir. 2003).  Undefined claims terms are to be given an ordinary and customary meaning "as understood by a person of ordinary skill in the art at the time of the invention."  Gemtron Corp. v. Saint-Gobain Corp., 572 F.3d 1371, 1378 (Fed. Cir. 2009).  As explained by the Federal Circuit:

> Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean,' including 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'

Phillips, 415 F.3d at 1314 (quoting Innova, 381 F.3d at 1116).


### 2. Intrinsic Evidence

Where a court cannot properly construe a claim based on the plain meaning, it is necessary to examine the intrinsic record of the claims, which includes the specification and the prosecution history.  Masco Corp. v. United States, 303 F.3d

1316, 1324 (Fed. Cir. 2002) ((citing Vitronics Corp., 90 F.3d at 1582) (holding such intrinsic evidence to be "the most significant source of the legally operative meaning of disputed claim language.")).  The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it.  Thus, the specification provides necessary context for understanding the claims, and "is always highly relevant to the claim construction analysis."  Phillips, 415 F.3d at 1315 (quoting Vitronics Corp., 90 F.3d at 1582).  Therefore, a patentee can act as his own lexicographer in the patent specification by defining a term with particularity that already has an ordinary meaning to a person of skill in the art.  Merck & Co., Inc. v. Teva Pharma. USA, Inc., 395 F.3d 1364, 1370 (Fed. Cir. 2005) (internal citation omitted); Phillips, 415 F.3d at 1321 ("[T]he specification 'acts as a dictionary when it expressly defines terms used in the claims.'" (internal quotation omitted)).

Further, "[w]hen consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification." Abbott Labs. v. Sandoz, Inc., 566 F.3d 1282, 1288 (Fed. Cir. 2009).  Limitations contained in the specification should be applied judiciously and courts should refrain from restricting

broader claim language to a single embodiment described in the specification, "unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" Id. (quoting Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed. Cir. 2004)); see also Bell At. Network Servs., Inc. v. Covad Commc'ns. Group, Inc., 262 F.3d 1258, 1271 (Fed. Cir. 2001) ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'" (internal quotation omitted)).

Along with the specification, the prosecution history is "intrinsic evidence" of the meaning of the claims, because it "provides evidence of how the [United States Patent & Trademark Office ("PTO")] and the inventor understood the patent." Phillips, 415 F.3d at 1317. The prosecution history is comprised of the original application, communications between the patent applicant and the patent examiner, changes to the patent application, prior art cited during the patent examination, and other pertinent documents. See Rheox, Inc. v. Entact, Inc., 276 F.3d 1319, 1326 (Fed. Cir. 2002) (noting that the totality of the prosecution history includes "amendments to claims and arguments made to overcome or distinguish references.") (citing Elkay Mfg. Co. v. Ebco Mfg. Co., 192 F.3d 973, 979 (Fed. Cir. 1999)).

Though ambiguities during negotiations between the PTO and inventor may occur, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Abbott Labs., 566 F.3d at 1288 (quoting Phillips, 415 F.3d at 1317). Statements made during prosecution can serve to disavow the scope of the patent, but only in situations where the disclaimer is unambiguous. See id.; Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1374 (Fed. Cir. 2008) ("[A] patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution.") (quoting Purdue Pharma L.P. v. Endo Pharms., Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006)); Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.") (citations omitted).

        3. Extrinsic Evidence

Beyond the claim language itself and the intrinsic record, a court is permitted to rely on extrinsic evidence, consisting of "all evidence external to the patent and

prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." <u>Markman</u>, 52 F.3d at 980. Extrinsic evidence is to be used to aid in a court's interpretation of the claim language, but "not for the purpose of varying or contradicting the terms of the claim." <u>Id.</u> (internal citation omitted); <u>see</u> <u>Phillips</u>, 415 F.3d at 317 (extrinsic evidence is "less significant than the intrinsic record").

## B. Undisputed Claim Terms

### 1. Discovery Patents: '690 & '851 Patents

| <u>Patent(s)</u> | <u>Term</u> | <u>Agreed Position or Construction</u> |
|---|---|---|
| '851 Patent | **cryptographic algorithm** | "an operation used to encrypt or decrypt" |
| '851 Patent | **encryption / decryption algorithm** | "an operation used to encrypt or decrypt" |
| '851 Patent | **decryption key** | "data used to decrypt encrypted information" |
| '851 Patent | **encryption key** | "data used to encrypt information" |
| '851 Patent | **electronic book source** | "a location from which textual or graphical information of a book is electronically transmitted" |
| '690 Patent | **text source** | "a location from which textual or graphical information of a book is electronically transmitted" |
| '851 Patent '690 Patent | **upon demand** | No construction necessary. |

| | | |
|---|---|---|
| '851 Patent | **supplying a selected electronic book corresponding to the selected title to be encrypted** | No construction necessary. |

  

## 2. Amazon Patents: '141 and '133 Patents

| Patent(s) | Term | Agreed Position or Construction |
|---|---|---|
| '141 Patent '133 Patent | **Web page** | "interlinked, user-viewable hypertext document that is accessible via the Internet" |
| '141 Patent | **using the associate identifier . . . to identify the associate** | No construction needed. |
| '141 Patent | **computer implemented** | No construction needed. |
| '141 Patent | **automatically** | No construction needed. |
| '141 Patent | **generating . . . a report / generates . . . reports** | No construction needed. |

## C. Disputed Claim Terms

### 1. Discovery Patents: '690 & '851 Patents

There are seven (7) disputed terms for Discovery's '690 and '851 Patents.  The parties' proposed term constructions are as follows:

- 13 -

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| **broadcast**<br><br>'851 Patent | No construction necessary.<br><br>If construed: "transmitted" | "sent via a simultaneous transmission to multiple recipients" |
| **book**<br><br>'690 Patent<br><br>**electronic book**<br><br>'851 Patent | "an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, or manual" | "an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, manual, speech, law, court decision, or testimony" |
| **encrypting the selected electronic book**<br><br>'851 Patent | No construction necessary.<br><br>If construed: "encrypting data representing the text and graphics of an electronic book" | "modifying the unencrypted text and graphics of an electronic book, making it unreadable" |
| **decrypting the encrypted selected electronic book**<br><br>'851 Patent | No construction necessary.<br><br>If construed: "decrypting the encrypted data representing text and graphics of an electronic book" | "modifying the encrypted selected electronic book back to readable text and graphics" |
| **information that allows encryption and decryption of the electronic book and encryption and decryption of the encryption and decryption keys**<br><br>'851 Patent | No construction necessary. | "information that allows each of the following:<br>(1) encryption of the electronic book,<br>(2) decryption of the electronic book,<br>(3) encryption of the encryption key,<br>(4) decryption of the encryption key,<br>(5) encryption of the decryption key, and<br>(6) decryption of the decryption key" |

| | | |
|---|---|---|
| **key generator**<br><br>'851 Patent | "a key generation process implemented using hardware or software, or a combination thereof" | "a process that creates encryption and decryption keys used to encrypt and decrypt an electronic book" |
| **list of titles of available electronic books**<br><br>'851 Patent<br><br>**list of titles of available books**<br><br>'690 Patent | No construction necessary. | "list of titles of all books for which the text associated with the electronic book is available for transmission" |

a. broadcast

| Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary. If construed: "transmitted" | "sent via a simultaneous transmission to multiple recipients" |

Discovery argues that Claim 110, '851 Patent claims an electronic book viewer "wherein the electronic books are broadcast to the electronic book viewer." (See Pl. Br. 8.) Discovery argues that the plain meaning of "broadcast" should be construed as "transmitted." Discovery argues that Amazon's construction limits the term to (1) chosen "features of exemplary embodiments" in the specification, that improperly excludes other embodiments; and (2) the doctrine of claim differentiation supports the contention that the term "broadcast" need not necessarily require "simultaneous transmission to multiple" e-

book viewers.  (Id. at 10.)  Further, Discovery argues that

Amazon's limitation requires "over-the-air television or direct

satellite delivery method[s]," which contradicts the intrinsic

evidence.

Further, Discovery argues that dictionary definitions

supports its construction: Broadcast: "3. To send a transmission

or signal; transmit."  ((See Pl. Br. 9) (citing The American

Heritage Dictionary of the English Language, 3d Ed. at 241).)

However, other definitions in that same dictionary are: "1. To

transmit (a radio or television program) for public or general

use.  2. To send out or communicate especially by radio or

television . . . . 3. To make known over a wide area." (Id.)

Amazon, on the other hand, argues that the plain

meaning of "broadcast" is a "way of transmitting information to

multiple recipients simultaneously" as opposed to simply meaning

"transmitted."  (See Def. Br. 7.)  Defendant argues that express

claim language and specification show that "broadcast" means to

go to multiple viewers at the same time.  (See Id. (noting that

claim 41 states that an e-book is "broadcast to multiple home

systems simultaneously" and claim 129 states that "broadcasting

the encrypted e-book to multiple home systems simultaneously").)

Amazon argues that the specification further demonstrates that

transmission methods of satellite television and over-the-air

broadcast require that multiple recipient receive the

transmission at the same time, which support of its definition of "broadcast."  Lastly, Amazon argues that the extrinsic evidence of the dictionary definition supports its plain meaning definition:

> [B]roadcast: To send the same message simultaneously to multiple recipients.  Broadcasting is a useful feature in e-mail systems. It is also supported by some fax systems.

((See Def. Br. 8) (quoting 1999 Random House Webster's Computer & Internet Dictionary).)

The plain meaning of "broadcast" best supports Amazon's construction of "broadcast": "sent via a simultaneous transmission to multiple recipients."  (See Def. Br. 6-11); see also Lucent Tech., Inc. v. Extreme Networks, Inc., 367 F. Supp. 2d 649, 672 (D. Del. 2005) (construing "broadcast message" to mean "a message that is sent to all nodes in the network"); see also Sportvision, Inc. v. Sports MEDIA Tech. Corp., Civ. No. 04-03115, 2006 U.S. Dist. LEXIS 8995, *12 (N.D. Cal., Feb. 17, 2006) (defining "broadcast" as "a wide-spread distribution").  The presumption that different terms in the same claim have different meanings favor's Amazon's construction because Discovery uses both the term "broadcast" and "transmitted" within the same claim.  See Bancorp Services, LLC v. Hartford Life Ins. Co., 359 F.3d 1367, 1373 (Fed. Cir. 2004).

However, Amazon goes a step further introducing the word "simultaneous."  Thus, the Court will adopt Amazon's

construction without the "simultaneous" portion.  That is,

finding that "broadcast" means "sent to multiple recipients."

b. <u>book/electronic book</u>

| <u>Terms & Patent(s)</u> | <u>Discovery's Proposed Construction</u> | <u>Amazon's Proposed Construction</u> |
|---|---|---|
| **book**<br>'690 Patent<br><br>**electronic book**<br>'851 Patent | "an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, or manual" | "an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, manual, speech, law, court decision, or testimony" |

The parties agree that:  (1) the '690 and '851 Patents

demonstrate that e-books are "a vehicle for delivering numerous

categories of textual and graphical information;" (2) "e-books"

consist of textual information and graphics; (3) "book" and "e-

book" definitions are not just plain and ordinary meanings of the

word "book" and can include magazines, etc.; and (4) specific

examples of "e-books" is broader that the '851 specification and

includes more than just "a novel, encyclopedia, article,

magazine, newspaper, catalogue, periodical or manual."  ((<u>Id.</u> at

12) (citing Pl. Br. 7-8).)

Discovery argues that: (1) the express claim language

of the '690 and '851 Patent support its definition of "book" and

"electronic book;" (2) the explicit definitions in the

- 18 -

specification supports its definitions; (3) "book" refers to "electronic textual and graphical information;" and (4) additional examples are "unnecessary and may be misleading to a jury." (See Pl. Br. 7.)  Amazon, however, disagrees and argues that Discovery's limitation that "book" and "e-book" must include "published material or text" is improperly limiting.  (See Def. Br. 13-14.)

Here, as both parties agreed that the plain and ordinary meaning of "book" does not apply, Amazon's broader definition that includes "speech, law, court decision or testimony" to be included in the meaning of "book" or "e-book" seems to prevail over Discovery's definition which would only include "published material or text."  (Id. 12 (citing '851 Patent 1:61 - 2:6) (additional examples of e-books include "the President's speech, a new law, a court decision on abortion, or O.J. Simpson's testimony").)  That the '851 Patent itself includes speech, law, common law, and testimony, demonstrates that the meaning of "books" is not distinguished from textual material and at a minimum, includes these additional items. Thus, the Court will adopt Amazon's definition.

## c. encrypting the selected electronic book

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| **encrypting the selected electronic book**<br><br>'851 Patent | No construction necessary.<br><br>If construed: "encrypting data representing the text and graphics of an electronic book" | "modifying the unencrypted text and graphics of an electronic book, making it unreadable" |

Discovery argues that its construction is proper based on (1) the plain and ordinary meaning; (2) extrinsic evidence; and (3) intrinsic evidence. First, Discovery argues that Claim 1 of the '851 Patent involves "encrypting the selected electronic book" and that the word "encrypt" is so common to laypersons that it need not be construed. See Orion IP, LLC v. Staples, Inc., 406 F. Supp. 2d 717 737-38 (E.D. Tex. 2005) (refusing to construe terms used in accordance with ordinary lay meanings).

Further, based on intrinsic evidence in the specification, the data to be encrypted can include "any 'string of digital bits,'" not just data that was not already encrypted. Discovery argues that other portions of the specification contemplate "dual-layered encryption" where the text to be encrypted is already encrypted. However, this does not mean that encrypted data be first unencrypted as already encrypted text can be dually encrypted. (See Pl. Br. 22.) Lastly, Discovery argues that, based on the extrinsic evidence, "encryption" does not

require input by unencrypted data.

In response, Amazon argues that Discovery's construction (1) does not define the term "encrypting"; (2) allows textual material that is "to be encrypted" to already be encrypted; and (3) is unsupported by the claims and specification which instead support Amazon's construction. See Def. Br. 15.

First, Amazon argues the intrinsic evidence establishes that the e-books "entering the encryption process are unencrypted" since Claim 1 states "to be encrypted." See id. (arguing that "to be" means "not yet encrypted"); but see Pl. Br. 22 (contending that already encrypted text can undergo dual-layer encryption). Amazon also argues that the specification explicitly states that clear text, not already encrypted text, is contemplated to be encrypted:

> A basic encryption process operates on a string of digit bits, or clear text, by modifying the clear text using a series of mathematical operations with both the clear text and a second string of bits, called an encryption key, as inputs, resulting in a third string of bits, called ciphertext.

(See Def. Br. 16 (citing '851 patent, 28:12-16); see also Figure 1.1, '851 Patent (displaying a flow chart of "plaintext" -> "encryption -> "ciphertext" -> "decryption" -> "original plaintext").)

Second, Figure 19a of the '851 Patent displays a flowchart where it explicitly states that unencrypted text goes

through an encryption and decryption process.  ((See  Pl.
Piepmeier Decl. Ex. B, Applied Cryptology treatise) (explaining
that the encryption process disguises clear text to hide its
substance)); see also Adv. Display Sys., Inc. v. Kent State
Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000) (finding that
treatises incorporated by reference into the specification become
part of the specification and are therefore part of the intrinsic
record).

    Third, Amazon argues that extrinsic evidence further
supports its construction as Claim 83 of the '851 Patent states
"non-book content" (a reply message) is already encrypted text to
be encrypted twice, is distinguishable from the rest of the text
of the e-books and is treated as such in the specification
itself.  (See Def. Br. 22.)  Amazon argues that Claim 83
specifically refers to the e-book being "doubly encrypted" and
that there is another "re-encryption," where it fails to state
that explicit reference in any other claim.  See Comark, 156 F.3d
at 1187 ("There is presumed to be a difference in meaning and
scope when different words of phrases are used in separate
claims." (internal citation omitted)).

    The language in Discovery's '851 patent seems to
support Discovery's argument: "encryption process operates on a
string of digit bits, or clear text, by modifying the clear
text."  This language seems to suggest that the encryption

process contemplated would encrypt different types of data.
Amazon argues that the '851 Patent of Figure 19a shows that the
process begins with "unencrypted content" means that this content
is clear text.  However, these are not the same.  "Unencrypted
content" only means the content, in whatever form it is in,
before it undergoes this particular encryption process.  Indeed,
the fact that other claims relate specifically to "double
encrypted" data supports Discovery's contention that its language
was meant to be read more broadly to include data that was
already encrypted.  Additionally, encryption is understood by a
lay person.  Thus, the Court will adopt the definition,
"encrypting data representing the text and graphics of an
electronic book."


d. <u>decrypting the encrypted selected</u>
   <u>electronic book</u>

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| **decrypting the encrypted selected electronic book**<br><br>'851 Patent | No construction necessary.<br><br>If construed: "decrypting the encrypted data representing text and graphics of an electronic book" | "modifying the encrypted selected electronic book back to readable text and graphics" |

In regards to the constructions, Discovery contends
that Amazon's proposed construction improperly limits the claim
term to requiring that "decrypting . . . yield readable text and

graphics." ((Id.); but see ('851 Patent, 28:11-22 ("A reversing process exists using a fourth string of bits, called a decryption key, that, when input into a decryption process consisting of a second series of mathematical operations, along with the ciphertext, the resulting output is the original clear text string of digital bits.")).) Discovery argues that a "clear text string of digital bits" can be anything. (See Pl. Br. 25 (citing Applied Cryptography, 2d. Ed. at 2, Ahn Decl Ex. 12 (noting that clear text or plaintext can be "whatever")).)

Amazon argues that, like the encryption argument, Discovery solely disagrees that the "decryption process must result in 'readable' text and graphics." See Def. Br. 23. However, based on the intrinsic record, Amazon argues that (1) the entire point of decryption is so the reader can "read the book," thus resulting in clear text; (2) the '851 specification states that "the resulting output [of decryption] is the original clear text string of digital bits"; and (3) the incorporated Applied Cryptography treatise elucidates the point that "the process of turning ciphertext back into plaintext is decryption." See id. 24.

For the reasons above, the Court will adopt Discovery's definition "decrypting the encrypted data representing text and graphics of an electronic book."

<u>information that allows encryption and decryption of the electronic book and encrypting and decryption of the encryption and decryption keys</u>

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| **information that allows encryption and decryption of the electronic book and encryption and decryption of the encryption and decryption keys**<br><br>'851 Patent | No construction necessary. | "information that allows each of the following:<br>(1) encryption of the electronic book,<br>(2) decryption of the electronic book,<br>(3) encryption of the encryption key,<br>(4) decryption of the encryption key,<br>(5) encryption of the decryption key, and<br>(6) decryption of the decryption key" |

Discovery argues that Claim 96 of the '851 patent requires "information that allows encryption and decryption of the electronic book and encryption and decryption of the encryption and decryption keys," which should have plain and ordinary meaning that is apparent to laypersons. (See Pl. Br. 28.) As the terms "electronic book," "encryption key," and "decryption key" are construed, no construction is necessary here. (Id.)

Amazon contends, however, that Claim 96 requires six specific functions stated above. Claim 96 of the '851 Patent claims an e-book viewer that receives an e-book from a party and displays that e-book once received. (See Def. Br. 25.) In doing

so, Claim 96 "includes information that allows encryption and decryption of the electronic book and encryption and decryption of encryption and decryption keys."  (<u>Id.</u> (citing '851 patent).)  Amazon argues that where there are six separate functions to be understood from one-dense phrase, a lay jury would not be confused by its construction, but in fact would help to clarify the explicit functions of Claim 96.  (<u>Id.</u> at 26.)

Discovery's patent language is not any more confusing than Amazon's proposed language.  The original text is favored where proposed text does not further clarify the language.  What may make reading of the language easier is to add a comma.  Thus, the Court will adopt the original text with the addition of a comma: "information that allows encryption and decryption of the electronic book, and encryption and decryption of the encryption and decryption keys."


f. <u>key generator</u>

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| **key generator**<br><br>'851 Patent | "a key generation process implemented using hardware or software, or a combination thereof" | "a process that creates encryption and decryption keys used to encrypt and decrypt an electronic book" |

A "key generator" is used by the e-book viewer to "generate encryption and decryption keys."  (<u>See</u> Def. Br. 26 (citing Claim 96, '851 Patent).)  For one of ordinary skill to

understand the claims and corresponding specifications, one must
also know that the "key generator," "generates keys used to
encrypt and decrypt" the e-book for the "information stream
between the home system and operations center." ((Pl. Br.
29)(citing Vitronics, 90 F.3d at 1584).)

Discovery argues that its construction, "using hardware
or software, or a combination thereof": (1) is best reflected by
the intrinsic evidence; and (2) does not impute any unsupported
limitations on the terms.  (See Pl. Br. 29.)  First, Discovery
asserts that where the specification of Claim 96 of the '851
Patent provides that security measures, such as encryption or
decryption:

> Performed by the operations center 250 or the home system
> 258 may be done in hardware . . . [or] may be done in
> software . . . . In yet another alternative, a portion of
> security related activities may be done in software using
> a standard or secure processor while the remaining
> portion done in hardware via a specialized processor.

(See Pl. Br. 29 (citing '851 Patent at 50:1-12).)

Further, Discovery contends that Amazon's construction
is improper because (1) its construction language is redundant
with the "key generator" term, which already includes the
encryption/decryption keys and process; (2) the patentee did not
intend to "require that the generated keys be 'used to encrypt
and decrypt" an e-book, if so he would have stated so;[4] and (3)

---

[4]    See Hoganas, 9 F.3d at 951 (declining to incorporate
unstated limitations that could have been added by patentee, but
were not).

the specification does not limit the transactions to solely for e-book information (e.g., generator keys can encrypt/decrypt other information, such as associated metadata headers).  (Id. 30.)

Contrarily, Amazon argues that the intrinsic evidence, the patent specification, requires its construction of key generator.  Claims 3 and 5 of the '851 Patent which rely on Claim 1 of the '851 Patent, specifically state that the key generator generates a "symmetric key" that encrypts (and decrypts) e-books. Amazon argues that the specifications in the '851 Patent support its contention that key generators are designed to encrypt and decrypt e-books.  (See Figure 24(A), '851 Patent (displaying a key generator in the encryption and decryption process via use of a transaction symmetric key).)

Further, Amazon disputes Discovery's third contention. Amazon asserts that simply because a key generator's term is construed as being used to encrypt or decrypt an e-book, does not "mean that it cannot also separately generate other keys used to encrypt and decrypt other information."  (See Def. Br. 28.)

Although Discovery's definition is reflective of the intrinsic evidence of the patent, Amazon correctly points out that the passage of its '851 patent that Discovery relies on for its definition is not a portion of the patent dealing with the key generator.  However, this claim term does not seem to need construction.  A layperson would likely understand that a "key

generator" is a process that generates keys.  Thus, the Court
will not define "key generator."


g.  <u>list of titles of available electronic books
/list of titles of available books</u>

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| **list of titles of available electronic books**<br>'851 Patent<br><br>**list of titles of available books**<br>'690 Patent | No construction necessary. | "list of titles of all books for which the text associated with the electronic book is available for transmission" |

Discovery argues that (1) "list of titles of available
books" need not be construed; (2) "list of titles of available
electronic books" need not be construed; (3) "available" is
already defined and can be construed by its plain and ordinary
meaning; and (4) "available" should not be construed as "all" as
"all" creates an additional, improper limitation.  <u>See</u> <u>Superguide</u>
<u>Corp v. DirecTV Enterprises, Inc.</u>, 358 F.3d 870, 875 (Fed. Cir.
2004) ("[I]t is important not to import into a claim limitations
that are not part of the claim.").  Further, Discovery argues
that Claim 1 of the '851 Patent requires "creating a list of
titles of available electronic books" which is the same a the
book definition and needs no further construction.

Discovery argues that "list of titles of available

books" means just that, "creating a list of titles of available books wherein a book is available if the text associated with the book is available for transmission." (See Pl. Br. 13 (citing '690 Patent at 25:4-6) (noting that the "available books may comprise books related to a particular category — not all available books").)

Amazon argues, on the other hand, that where the claims "must be read in view of the specification, of which they are a part" the specification requires that the claim be read as "a list of titles of all books for which the test associated with the electronic book is available for transmission." (See Def. Br. 29 (citing Phillips, 415 F.3d at 1315).) Amazon relies on Figure 10 of the '851 Patent to demonstrate that "all books available from the system must be displayed." (Id. 30 (citing Figure 10 of the '851 Patent specification that state" [i]nformation requests received from the viewer 266 generally fall into three categories: (1) directory data of books stored in the library 262, (2) index of all available books on the system, and (3) requests for a specific book (step S700)").)

Amazon's suggested definition begins with "a list of titles of all books" but Amazon's argument that its construction is appropriate is based on a figure which states "index of all books," not "a list of titles." While this does not seem to be a big difference, it is. Discovery is arguing that Amazon's

construction effectively precludes the transmission of lists
based on categories, and Discovery is right.  Discovery's patent
clearly contemplates sending lists based on categories as
evidenced in Figure 14e of Discovery's '851 patent.
Additionally, the plain language is clear and Amazon's
construction would lead to redundant language.  Thus, the Court
will not define this term.

## 2. Amazon Patents: '141 and '133 Patents

There are nine disputed terms for Amazon's '141 and
'133 Patents.  The parties' proposed term constructions are as
follows:

| Terms & Patent(s) | Amazon's Proposed Construction | Discovery's Proposed Construction |
| --- | --- | --- |
| **associate registration system** <br><br> '141 Patent | "software/hardware used in registering associates" | "enrollment software running on the merchant's Web site" |
| **associate enrollment system** <br><br> '141 Patent | "software/hardware used in enrolling associates" | "enrollment software running on the merchant's Web site" |
| **compensation system** <br><br> '141 Patent | "software/hardware used in compensating associates" | "software running on the merchant's Web site for crediting associates for referrals" |

| | | |
|---|---|---|
| **online registration system**<br><br>'141 Patent | "software/hardware used in registering associates online" | "enrollment software running on the merchant's Web site that sends an application document from the merchant's Web server to the enrolling associate's Web browser configured to be returned to the merchant's Web server upon completion" |
| **referral processing system**<br><br>'141 Patent | "software/hardware used in processing referrals" | "software running on the merchant's Web site that identifies the associate who referred the customer to the merchant Web site" |
| **report generation system**<br><br>'141 Patent | "software/hardware used in generating feedback reports" | "report generation software running on the merchant's Web site that uses information stored by the merchant Web site" |
| **web site**<br><br>'133 Patent | "A computer system that serves informational content over a network using the standard protocols of the World Wide Web. Typically, a Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term is generally intended to encompass both (i) the hardware/software server components that serve the informational content over the network, and (ii) the 'back end' hardware/software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users." | "a computer system that serves informational content over a network using standard Internet protocols and corresponding to a particular Internet domain name, such as 'amazon.com,' and which encompasses the hardware and software server components that serve the informational content and the hardware and software components that interact with the server components to perform additional Web site functions" |

| request message<br><br>'141 Patent | No construction needed.<br>If construed:<br>"communication requesting a Web page corresponding to an item offered for sale" | "a uniform resource locator address that includes the address for the item's product detail page on the merchant's Web site" |
|---|---|---|
| Determining . . . compensation / Determines . . . compensation<br><br>'141 Patent | No construction needed. | "calculating/calculates a proper amount of compensation" |

a. The "System Terms"

For all of the "system terms," Discovery adds in its definition the language "software running on the merchant's Web site" to each term. Amazon argues that Discovery attempts to improperly limit the "system terms" from specific embodiments of the inventions. However, Amazon avers that the '141 Patent specification "explicitly precludes such a limitation" by stating that a "'system' may be its own computer system or site, distinct from the merchant's site." (See Amazon Resp. 3-4.)

Amazon argues that its constructions are in accordance with the claims, specification, and ordinary meaning of the terms. Amazon collectively argues that Discovery's construction as to all the "system terms" are improper because (1) they limit the claims to "software running on the merchant's Web site"; and (2) individualized flaws for each "system term" exist (as dealt with below). Discovery, however, asserts that each term requires an independent construction. (See Disc. Resp. 13.)

| Terms & Patent(s) | Amazon's Proposed Construction | Discovery's Proposed Construction |
|---|---|---|
| **associate registration system**<br><br>'141 Patent | "software/hardware used in registering associates" | "enrollment software running on the merchant's Web site" |
| **associate enrollment system**<br><br>'141 Patent | "software/hardware used in enrolling associates" | "enrollment software running on the merchant's Web site" |
| **compensation system**<br><br>'141 Patent | "software/hardware used in compensating associates" | "software running on the merchant's Web site for crediting associates for referrals" |
| **online registration system**<br><br>'141 Patent | "software/hardware used in registering associates online" | "enrollment software running on the merchant's Web site that sends an application document from the merchant's Web server to the enrolling associate's Web browser configured to be returned to the merchant's Web server upon completion" |
| **referral processing system**<br><br>'141 Patent | "software/hardware used in processing referrals" | "software running on the merchant's Web site that identifies the associate who referred the customer to the merchant Web site" |
| **report generation system**<br><br>'141 Patent | "software/hardware used in generating feedback reports" | "report generation software running on the merchant's Web site that uses information stored by the merchant Web site" |

ii. The addition of the language, "software running on the merchant's web site"

- 34 -

Amazon asserts that Discovery's constructions for all the "system terms" immediately fails because it impermissibly limits them to "software running on the merchant's Web site." (See Amazon Br. 16.) Amazon argues that the claims need not be construed because a jury could readily determine that the claims "already describe these various 'systems'" that include both hardware and software system components. (Id. at 17 n.10.)

Specifically, Amazon asserts four flaws with Discovery's proposed construction it construes as a claim limitation by limiting the terms to only "software," the merchant's Web site, or any one Web site. (Id. at 19.) First, Amazon avers that Discovery's limitation cut against the "words of the claims themselves." See Amgen Inc. v. Hoechst Marion Roussel, Inc., 457 F.3d 1293, 1301 (Fed. Cir. 2006) ((citing Phillips, 415 F.3d at 1312) ("claim construction must begin with the words of the claims themselves.")). For example, by limiting the term "compensation system" to "software," Discovery did not "begin with the words of the claim themselves."

Second, Amazon argues that the "system" definitions themselves preclude a construction limited to "software." (Id. (noting that the claims explicitly include a Web site / "Web site system" and systems not part of the Web site, thus demonstrating that they are not limited to "software")); see also NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1300 (Fed. Cir. 2005)

("Nothing in the claim suggests that 'a plurality of originating processors' defines a genus . . . . Instead, these limitations are used as three separate, independent limitations to describe the various constituent components."). Here, Amazon argues that the "Web site" and corresponding "systems" are "various constituent components" and "cannot be required to be a part of (or running on) the Web site system." (See Amazon Br. 21.)

Third, Amazon avers that Discovery's construction cuts against the explicit specification because the terms function by running on the merchant's Web site and other web sites. (Id. 22.) The '141 Patent specification provides:

> Although the automated enrollment function is preferably handled by the same computer system that handles the referral processing function, these functions could be performed by dedicated, physically distinct computer systems or sites.

((See '141 Patent, 10:24-28); see also '141 Patent 9:61 (refers associate to access "merchant Web site 106 and the enrollment function," the latter of which is performed on each user's website).)

Fourth, Amazon contends that Discovery's limitation is inconsistent with the prosecution history. In this vein, Amazon avers that Discovery's construction contradicts the intention of the inventors who specifically did not limit claims to "software running 'on the merchant's Web site.'" Id. 25-26 (noting that Claim 31 of the '141 Patent limits the "systems" to "run on a

common World Wide Web site"). Further, Amazon points to independent and dependent claims that function to limit some of the terms in specific ways. See <u>Dow Chem. Co. v. United States</u>, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000) (explaining that claims are presumed to have different scope, and an independent claim is broader than dependent claims).

On the other hand, Discovery argues that the entirety of Claim 36 's specification supports its construction as "nothing . . . contemplates a different implementation" from software running on a merchant's Web site. Discovery points to the "Abstract" and "Summary of the Invention" to support its contention that Amazon reads the term too broadly. See Disc. Resp. 14 (noting that Figure 1, '141 Patent at 6:2-4 refers to all embodiments); <u>see</u> <u>C.R. Bard, Inc. v. U.S. Surgical Corp</u>, 388 F.2d 858, 864 (Fed. Cir. 2004) (emphasizing statements regarding nature of the overall invention from the Summary of Invention).

Although Discovery points to portions in Amazon's patents that support its inclusion of "on the Merchant's Web site" the support is tenuous. The language that Discovery points to is in the Abstract and Summary of the Invention sections. Also, Discovery's arguments seem tailored to summary judgment instead of claim construction. Discovery's construction also defines the terms too narrowly by only using "software" and "on the Merchant's website." However, Amazon's proposed construction

includes the vague term "software/hardware."  Thus, the Court

will adopt Amazon's construction but with the substitution of

"and" for the "/".

b. web site

| Terms & Patent(s) | Amazon's Proposed Construction | Discovery's Proposed Construction |
|---|---|---|
| **web site**<br><br>'133 Patent | "A computer system that serves informational content over a network using the standard protocols of the World Wide Web. Typically, a Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term is generally intended to encompass both (i) the hardware/software server components that serve the informational content over the network, and (ii) the 'back end' hardware/software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users." | "a computer system that serves informational content over a network using standard Internet protocols and corresponding to a particular Internet domain name, such as 'amazon.com,' and which encompasses the hardware and software server components that serve the informational content and the hardware and software components that interact with the server components to perform additional Web site functions" |

Amazon argues that its construction of "web site" is

proper based on (1) the definition in the Patent itself; (2)

intrinsic evidence (i.e., specialization and prosecution

histories); and (3) the plain and ordinary meaning of the term.

Specifically, Amazon asserts that where the '141 Patent

specification explicitly provides a detailed description of web

site, no further construction of the term is warranted.  (See

Def. Resp. 12 (citing "Glossary of Terms and Acronyms" list, '141 Patent 4:27-5:67); see Vitronics, 90 F.3d at 1582 (holding that definitions in patents control).)

Amazon argues that web site need not be construed, and argues that the exact definition as provided in the patent should apply, whereby web site was defined as:

A computer system that serves informational content over a network using the standard protocols of the World Wide Web. Typically, a Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term is generally intended to encompass both (i) the hardware/software server components that serve the informational content over the network, and (ii) the 'back end' hardware/software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users.

See '141 Patent, 5:5-14; see Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("[A] patent applicant has elected to be a lexicographer by providing an explicit definition in the specification for a claim term . . . the definition selected by the patent applicant controls.")

Therefore, as dictated by Renishaw, where a patent applicant provides an explicit definition, that definition must be applied by the Court. 158 F.3d at 1250; accord Phillips, 415 F.3d at 1316 ((citing Innova/Pure Water, Inc. v. Safari Water Filtration Sys., 381 F.3d 1111 (Fed. Cir. 2004) (It is a "bedrock principle" of patent law that "the claims of a patent define the

invention to which the patentee is entitled the right to exclude.")).  However, a patent lexicography must also appear "with reasonable clarity, deliberateness, and precision" prior to affecting the claim.  <u>Renishaw</u>, 158 F.3d at 1249 (quoting <u>In re Paulsen</u>, 30 F.3d 1475, 1480 (Fed. Cir. 1994)).

Discovery, in opposition, argues that Amazon's construction of web site is improper because (1) Amazon's definition of web site is vague and imprecise and thus not controlling; (2) '141 Patent's specification supports deleting "generally intended" and "typically" and requiring both "hardware and software."  (<u>See</u> Disc. Resp. 36-38.)

While Amazon provided a definition in the patent itself and thus, deserves deference, Amazon's definition includes wording that is not sufficiently precise, for example: "typically," "generally intended to," and "hardware/software." Thus, the Court will adopt a definition that is a fusion of the two: "A computer system that serves informational content over a network using the standard protocols of the World Wide Web. A Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization.  As used herein, the term encompasses both (i) the hardware and software server components that serve the informational content over the network, and (ii) the 'back end' hardware and software components, including any non-standard

or specialized components, that interact with the server
components to perform services for Web site users."

c. request message

| Terms & Patent(s) | Amazon's Proposed Construction | Discovery's Proposed Construction |
|---|---|---|
| **request message**<br><br>'141 Patent | No construction needed. If construed: "communication requesting a Web page corresponding to an item offered for sale" | "a uniform resource locator address that includes the address for the item's product detail page on the merchant's Web site" |

Amazon contends that Claim 1 uses "request message,"
should be construed as "communication requesting a Web page
corresponding to an item offered for sale," which comports with
the surrounding claim language and summarizes what is being
requested — a Web page corresponding to the "item identifier."
(See Amazon Br. 37.)

Discovery argues that the "request message" is a URL
based on Amazon's repeated reference to a "referral link" in its
specifications which seems to be synonymous with the "request
message" as described in the claim.  However, this seems
incorrect.  The referral link seems to be what the customer
clicks on to generate the "request message."  Thus, as Amazon's
proposed construction seems to be supported by the claim language
and specifications, the Court will adopt Amazon's definition.

d. determining . . . compensation/
determines . . . compensation

| Terms & Patent(s) | Amazon's Proposed Construction | Discovery's Proposed Construction |
|---|---|---|
| **Determining . . . compensation / Determines . . . compensation** '141 Patent | No construction needed. | "calculating/calculates a proper amount of compensation" |

Amazon contends that Claims 17 and 36 of the '141 Patent involve determining the compensation system for the associates who refer customers who purchase items off the merchant's web site.  As such, the claim is particularly clear as it uses common language known by laypersons.  Amazon argues Discovery's construction is improper by demonstrating that there is permissible language used as to whether to include calculating an amount in the compensation and requiring that the calculation must occur.  The patent refers to the calculation as permissive and Discovery's definition would improperly require it.

On the other hand, Discovery points to the specifications to show that Amazon repeatedly used "calculated" where they were referring to the process of "determining compensation."  However, the specifications do not limit it to "calculated" only, so Amazon's broader language should control. Although it is hard to see how "determine" would mean anything other than "calculate," the claim language should be used if its meaning is plain and ordinary.  Thus, the Court will not define

this term.

## IV. CONCLUSION

For the reasons stated above, the Court will adopt the claim term definitions below.  An appropriate order will follow.

| DISCOVERY PATENTS | |
|---|---|
| Terms & Patent(s) | Construction |
| **broadcast**<br>'851 Patent | sent to multiple recipients |
| **book**<br>'690 Patent<br><br>**electronic book**<br>'851 Patent | an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, manual, speech, law, court decision, or testimony |
| **encrypting the selected electronic book**<br><br>'851 Patent | encrypting data representing the text and graphics of an electronic book |
| **decrypting the encrypted selected electronic book**<br><br>'851 Patent | decrypting the encrypted data representing text and graphics of an electronic book |

| | |
|---|---|
| **information that allows encryption and decryption of the electronic book and encryption and decryption of the encryption and decryption keys**<br><br>'851 Patent | information that allows encryption and decryption of the electronic book, and encryption and decryption of the encryption and decryption keys |
| **key generator**<br>'851 Patent | No construction needed. |
| **list of titles of available electronic books**<br>'851 Patent<br><br>**list of titles of available books**<br>'690 Patent | No construction needed. |

| AMAZON PATENTS | |
|---|---|
| Terms & Patent(s) | Construction |
| **associate registration system**<br>'141 Patent | software and hardware used in registering associates |
| **associate enrollment system**<br>'141 Patent | software and hardware used in enrolling associates |
| **compensation system**<br>'141 Patent | software and hardware used in compensating associates |
| **online registration system**<br>'141 Patent | software and hardware used in registering associates online |
| **referral processing system**<br>'141 Patent | software and hardware used in processing referrals |

| | |
|---|---|
| **report generation system**<br>'141 Patent | software and hardware used in registering associates |
| **web site**<br>'133 Patent | A computer system that serves informational content over a network using the standard protocols of the World Wide Web. A Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term encompasses both (i) the hardware and software server components that serve the informational content over the network, and (ii) the 'back end' hardware and software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users |
| **request message**<br>'141 Patent | communication requesting a Web page corresponding to an item offered for sale |
| **Determining . . . compensation /**<br>**Determines . . . compensation**<br>'141 Patent | No construction needed. |

```
        IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE


DISCOVERY PATENT HOLDINGS,    :    CIVIL ACTION
LLC, et al.,                  :    NO. 10-600-ER
                              :
         Plaintiffs,          :
                              :
      v.                      :
                              :
AMAZON.COM, INC., et al.,     :
                              :
         Defendants.          :
```

## O R D E R

      **AND NOW**, this **4th** day of **February, 2011**, for the reasons set forth in the Court's accompanying memorandum dated February 4, 2011, it is **ORDERED** that the disputed claim terms shall be defined as follows:

| DISCOVERY PATENTS | |
| --- | --- |
| Terms & Patent(s) | Construction |
| **broadcast**<br><br>'851 Patent | sent to multiple recipients |
| **book**<br><br>'690 Patent<br><br>**electronic book**<br><br>'851 Patent | an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, manual, speech, law, court decision, or testimony |

| | |
|---|---|
| **encrypting the selected electronic book**<br><br>'851 Patent | encrypting data representing the text and graphics of an electronic book |
| **decrypting the encrypted selected electronic book**<br><br>'851 Patent | decrypting the encrypted data representing text and graphics of an electronic book |
| **information that allows encryption and decryption of the electronic book and encryption and decryption of the encryption and decryption keys**<br><br>'851 Patent | information that allows encryption and decryption of the electronic book, and encryption and decryption of the encryption and decryption keys |
| **key generator**<br><br>'851 Patent | No construction needed. |
| **list of titles of available electronic books**<br><br>'851 Patent<br><br>**list of titles of available books**<br><br>'690 Patent | No construction needed. |

## AMAZON PATENTS

| Terms & Patent(s) | Construction |
|---|---|
| **associate registration system**<br><br>'141 Patent | software and hardware used in registering associates |

| | |
|---|---|
| **associate enrollment system**<br><br>'141 Patent | software and hardware used in enrolling associates |
| **compensation system**<br><br>'141 Patent | software and hardware used in compensating associates |
| **online registration system**<br><br>'141 Patent | software and hardware used in registering associates online |
| **referral processing system**<br><br>'141 Patent | software and hardware used in processing referrals |
| **report generation system**<br><br>'141 Patent | software and hardware used in registering associates |

| | |
|---|---|
| **web site**<br><br>'133 Patent | A computer system that serves informational content over a network using the standard protocols of the World Wide Web. A Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term encompasses both (i) the hardware and software server components that serve the informational content over the network, and (ii) the 'back end' hardware and software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users |
| **request message**<br><br>'141 Patent | communication requesting a Web page corresponding to an item offered for sale |
| **Determining . . . compensation / Determines . . . compensation**<br><br>'141 Patent | No construction needed. |

**AND IT IS SO ORDERED.**


S/Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**