IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADREA, LLC, | ) |
| Plaintiff, | ) C.A. No. 10-600-ER |
| v. | ) (Consolidated) |
| AMAZON.COM, INC., | ) REDACTED - PUBLIC VERSION |
| Defendant. | ) |
| | ) **ORAL ARGUMENT REQUESTED** |
| AND RELATED COUNTERCLAIMS | ) |

**PLAINTIFF ADREA, LLC'S MOTION TO COMPEL DISCOVERY
OF FUTURE MODELS OF ACCUSED PRODUCTS**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................... 1
INTRODUCTION & SUMMARY OF ARGUMENT ............................................................... 1
STATEMENT UNDER DELAWARE LOCAL RULE 7.1.1 ..................................................... 2
NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 2
STATEMENT OF FACTS ......................................................................................................... 2
   I.     Redacted Sensitive Information ..................................................................................... 2
   II.    Keyword Searching ....................................................................................................... 4
ARGUMENT .............................................................................................................................. 7
   I.     Adrea Is Entitled to Take Discovery of Amazon's REDACTED ................................... 7
        A.    Amazon should be required to unredact the documents classified as
             "Redacted Sensitive Information" .................................................................... 10
        B.    Amazon should be required to produce another 30(b)(6) witness on
             document collection and production .................................................................. 12
        C.    Amazon should be required to produce email files that contain the names
             of REDACTED ..................................................................................................... 12
   II.    Amazon Should Pay Adrea's Attorneys' Fees and Costs Relating to This Motion ........ 13
CONCLUSION ......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Andco Environmental Processes, Inc. v. Niagara Environmental Assoc., Inc.*,
   215 USPQ (BNA) 224 (W.D.N.Y. 1982) ..................................................................9

*DR Sys. Inc. v. Fujifilm Med. Sys. USA, Inc.*,
   No. 06cv417 JLS (NLS), 2008 U.S. Dist. LEXIS 29485 (S.D. Cal. Apr. 10, 2008)............10

*E.I. du Pont De Nemours & Co. v. Phillips Petroleum Co.*,
   24 F.R.D. 416 (D. Del. 1959) ..................................................................9

*EpicRealm Licensing, LLC v. Autoflex Leasing, Inc.*,
   Nos. 2:05-CV-163-DF-CMC and 2:05-CV-356-DF-CMC, 2007 U.S. Dist. LEXIS
   68784 (E.D. Tex. Aug. 27, 2007) ..................................................................9

*Honeywell Int'l, Inc. v. Acer America Corp.*,
   655 F. Supp. 2d 650 (E.D. Tex. 2009)..................................................................9

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.*,
   662 F. Supp. 2d 375 (D. Del. 2009)..................................................................7

*Rohm and Haas Co. v. Brotech Corp.*,
   No. 90-109-JRR, 1990 U.S. Dist. LEXIS 20117 (D. Del. Sep. 14, 1990)............10

*Ropak Corp. v. Plastican Inc.*,
   No 04-5422, 2006 WL 1005406 (N.D. Ill. Apr. 17, 2006)..................................9

*Solae, LLC v. Hershey Canada, Inc.*,
   557 F. Supp. 2d 452 (D. Del. 2008)..................................................................8

STATUTES

28 U.S.C. § 271..................................................................9

OTHER AUTHORITIES

Federal Rule of Civil Procedure 26 ..................................................................7, 8, 10

Federal Rule of Civil Procedure 37(a)(5)(A)..................................................................13

## INTRODUCTION & SUMMARY OF ARGUMENT

Amazon's "compliance" with its discovery obligations has been, at best, inconsistent. Beyond the conflicting, contradictory representations from its counsel regarding its use of keyword terms for filtering its email production, Amazon suddenly switched its production methodology in the middle of November, 2010, indicating that it would not provide any discovery into [REDACTED] In December 2010 and January 2011, Amazon produced over 1,200 documents that were redacted either in whole or in part on the grounds that they were non-responsive and confidential. But Amazon failed to explain why it was producing allegedly non-responsive documents, especially those that were redacted in their entirety, and began to abuse the redaction stamp by obfuscating information to which Adrea is clearly entitled.

More troublingly, Amazon admitted just one month prior to the scheduled close of fact discovery that it had employed keywords to filter its email production. Not surprisingly, the keywords furtively selected by Amazon were highly restrictive, and failed to include names of [REDACTED] Combined with its redacting of all information pertaining to [REDACTED] Amazon has effectively denied Adrea discovery pertaining to [REDACTED]

Because of the lack of transparency in Amazon's document collection and production efforts and the improper denial of discovery into relevant information, Adrea has been forced to seek the Court's intervention. Adrea hereby moves the Court to compel Amazon to (a) produce a 30(b)(6) witness on the use of keyword searches in connection with its document collection and production; (b) unredact every document that has been redacted as "sensitive information"; (c) run keyword searches of all of its email custodians' files using the [REDACTED] [REDACTED] and to produce the resulting documents; and (d) pay Adrea's costs and expenses incurred in bringing this motion. Adrea respectfully requests oral argument on this motion.

## STATEMENT UNDER DELAWARE LOCAL RULE 7.1.1

The undersigned counsel has made a reasonable effort to reach agreement with opposing counsel on the matters set forth in this motion, including in written correspondence and through multiple meet and confer discussions that took place beginning on December 31, 2010, and ending on January 30, 2011.

## NATURE AND STAGE OF THE PROCEEDINGS

On July 14, 2010, Adrea filed this patent infringement suit against Amazon. The Court consolidated this action with case no. 09-cv-178 on August 18, 2010. Since then, the parties have engaged in extensive discovery. Fact discovery is scheduled to close on January 31, 2011.

## STATEMENT OF FACTS

Adrea alleges that Amazon's electronic book delivery service and its Kindle electronic book reading devices infringe Adrea's patents. *See* D.I. 1 ¶¶ 9-16. Specifically, Adrea alleges that Amazon infringes the patents in suit through the manufacture, use, importation, sale, and/or offer for sale of products, "including but not limited to the Kindle, Kindle 2, and Kindle DX." *Id.* at ¶ 11 (emphasis added). On September 1, 2010, plaintiff served Amazon with supplemental infringement contentions identifying the accused products as including another recently released device: "Kindle 3 (Amazon reference REDACTED)." (Declaration of Deok Keun Matthew Ahn in Support of Adrea's Motion to Compel ("Ahn Decl."), filed herewith, Ex. 1.) REDACTED REDACTED REDACTED REDACTED (Ahn Decl. Ex. 2). REDACTED REDACTED

### I. Redacted Sensitive Information

In mid-November, 2010, Amazon began to use on a limited basis a redaction stamp bearing the annotation "Redacted Sensitive Information" ("RSI"). Counsel for Amazon represented that the stamp was being used "to protect information related to Board of Director meetings and products that are still under development," and "to cover information that is both not responsive to [Adrea's] document requests and confidential." (Ahn Decl. Exs. 3 and 4.) In

December and January, this use escalated dramatically, and Amazon began to make rampant use of the RSI stamp, such that there are now over 1,200 documents redacted in whole or in part. On January 24, 2011, counsel for Adrea noted Amazon's abuse of the RSI stamp, requesting an explanation for why entirely redacted documents which are allegedly "not responsive" were produced at all, and why the protective order in this case does not safeguard the alleged confidentiality of the information that has been redacted. (Ahn Decl. Ex. 5.) Counsel for Amazon did not respond.

As examples, Amazon produced AMZN_DE_1493641 and AMZN_DE_1963091, which are redacted in their entirety, and provide absolutely no indication of what has been withheld. (Ahn Decl. Exs. 6 and 7.)

[REDACTED]

Similarly, Amazon has redacted information regarding [REDACTED] as, apparently, too sensitive for disclosure despite the existence of the Protective Order. (Ahn Decl. Ex. 8.)



Amazon has also redacted documents so heavily as to make them essentially worthless in providing relevant information. (*See, e.g.*, Ahn Decl. Ex. 9.)

During the final meet and confer between the parties, counsel for Amazon refused to even provide a redaction log for documents marked with the RSI stamp.

## II. Keyword Searching

In the interest of having full disclosure as to the universe of email files that would be reviewed for production, the parties met and conferred a number of times on the subject of exchanging keywords for email filtering. On May 17, 2010, the parties specifically met and conferred to discuss the keywords employed by Discovery Communications to identify relevant emails because of Amazon's concern that the list of keywords might not have been sufficiently inclusive. "During that conference, [counsel for Amazon] stated that Amazon had used keywords to search its wiki database, but that keywords had *not been used for any other search, including email databases* and Sharepoint files." (Ahn Decl. Ex. 10 (emphasis added).)

Lynn Radliff, Amazon's 30(b)(6) designee on document collection, confirmed on June 7, 2010, the representations made by counsel, and did not subsequently correct her testimony.





(Ahn Decl. Ex. 11 (Radliff Dep. Tr. 32:11-16).)



(*Id.* at 30:3-9.)



(*Id.* at 35:12-14.)

Subsequently, counsel for Amazon agreed to exchange Amazon's wiki search term list for Discovery's email search term list. (Ahn Decl. Ex. 12.) For the next six months, Amazon did not request that Discovery search on any keywords.

Half a year later, on the day before the New Year's holiday, and with only one month left before the close of fact discovery, Amazon admitted that it had in fact, contrary to its counsel's representations and its own sworn testimony, used search terms on its email databases. Counsel for Amazon stated: "I am writing to update you regarding the search terms Amazon has been using to locate documents for production among custodians' emails." (Ahn Decl. Ex. 13.) Approximately thirty document custodians were identified as being subject to keyword searches. (*Id.*)

On December 31, 2010, counsel for Adrea indicated that Amazon's belated admission of use of keyword searches was highly prejudicial to both Adrea and Discovery, and that counsel for Amazon had apparently made material misrepresentations. (Ahn Decl. Ex. 14.) For the avoidance of doubt, counsel for Adrea confirmed that Amazon had begun using search terms on

emails "fairly early on." (*Id.*) Counsel for Adrea also noted that the terms unilaterally selected by Amazon were overly restrictive and designed specifically to avoid relevant documents. (*Id.*) For example, Amazon had included on its list of keywords "Discovery Communications" and "John Hendricks," but had failed to include "Discovery" and "Hendricks." (*Id.*) In addition, Amazon did not include terms repeatedly used in plaintiff's infringement contentions, such as [REDACTED] (*Id.*)

On January 6, 2011, counsel for Amazon retracted its previous statements regarding the use of keyword searches, and claimed that "no search terms were used to collect or filter any of the emails" from most of the custodians identified in the earlier letter. (Ahn Decl. Ex. 15.) While claiming that search terms had only been used on recently identified custodians, counsel for Amazon admitted to using search terms on the email files of Jeff Bezos, Amazon's CEO, but glossed over when exactly those terms had been used, simply noting that "the use of search terms for Mr. Bezos's emails is appropriate, given the large volume of emails he receives . . ." (*Id.*) In addition, counsel for Amazon identified for the first time the existence of "additional email archives" for certain custodians, which would be subject to a search terms filter. (*Id.* at 2.)

On January 11, 2011, counsel for Adrea requested that Amazon "reopen the deposition of Lynn Radliff [Amazon's 30(b)(6) witness on document collection] so that [they] can obtain sworn testimony under oath on what exactly Amazon did regarding keyword searching and filtering." (Ahn Decl. Ex. 16.) That letter went on to note "the prejudice faced by Adrea and Discovery of not being afforded an opportunity to review Amazon's keyword selections" until the eve of the close of fact discovery. (*Id.* at 2.)

On January 13, 2011, following a meet and confer between the parties, counsel for Adrea proposed additional keywords to be searched by Amazon. The list included [REDACTED] [REDACTED] (Ahn Decl. Ex. 17.) The parties met and conferred a number of times on this issue, but reached an impasse on the subject of whether Amazon should be required to search its email files using [REDACTED] [REDACTED]

In addition, to deflect attention from its discovery failures, counsel for Amazon requested for the first time in over half a year that Discovery run additional keywords on its email collection. Amazon's overbroad list included terms such as "John Hendricks," "John NEAR/3 Hendricks," and "Hendricks." (Ahn Decl. Ex. 18.) Counsel for Amazon stated that it did not recall any previous agreement not to make such a broad request. However, the record is clear that over a year ago, on January 29, 2010, Amazon agreed to narrow the scope of its Request for Production No. 12, which called for all documents authored by or referring to the inventors of the asserted Adrea patents, because of "the potential volume of documents authored by or related to John Hendricks," who is the founder and Chairman of Discovery Communications, in addition to being a named inventor on both of the Adrea patents in suit. (Ahn Decl. Ex. 19.)

On January 31, 2011, Adrea deposed Steve Kessel, Amazon's head of the Kindle division. Curiously, Mr. Kessel could not confirm facts pertaining to Amazon's development of [REDACTED] leaving Adrea without a basis to test Amazon's assertions regarding the [REDACTED]

## ARGUMENT

### I. Adrea Is Entitled to Take Discovery of Amazon's [REDACTED]

It is beyond dispute that a patent infringement plaintiff may take discovery of the accused products as well as reasonably similar products. Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation, and permits a court to order broad discovery of "any matter relevant to the subject matter involved in the action," where such information is likely to lead to the discovery of admissible evidence and the party making the discovery request can establish "good cause" to support the request. Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is broadly construed." *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009) (citing *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999)); *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 460 (D. Del. 2008) (noting that Rule 26 provides liberal discovery of nonprivileged facts).

Here, Adrea has accused every iteration of the Kindle device, including the Kindle 1, Kindle 2, Kindle 3, and Kindle DX, of infringing its patents. Based on the limited information that Amazon has produced regarding REDACTED REDACTED REDACTED that have been expressly accused of infringement. For example, REDACTED REDACTED REDACTED (Ahn Decl. Ex. 2.) REDACTED REDACTED REDACTED

Moreover, counsel for Amazon has represented that REDACTED REDACTED. Based on Amazon's internal documents, REDACTED REDACTED (Ahn Decl. Ex. 20.) Accordingly, it appears that, at a minimum, REDACTED REDACTED Amazon witness Steve Kessel, the head of Amazon's Kindle division, testified that he was not certain about the status of Amazon's wholly-owned subsidiary's development of Kindle hardware, and REDACTED REDACTED Under these circumstances, Adrea should be allowed discovery into REDACTED that may infringe its patents, as Amazon has provided no information with which to test its assertions regarding REDACTED REDAC

Though Amazon previously produced a limited number of documents like those described above regarding REDACTED counsel for Amazon has stated in meet and confers that it now refuses to provide discovery on REDACTED and will continue to use the Redacted Sensitive Information stamp to deny Adrea discovery. Yet the legal standard defines the act of patent infringement to cover any entity that "makes, uses, offers to sell, or sells any patented invention." 28 U.S.C. § 271 (emphasis added). At a minimum, Adrea is entitled to take discovery on REDACTED to determine

if [REDACTED], as such information is relevant to Adrea's infringement analysis and calculation of damages.

And even if the [REDACTED] [REDACTED] Adrea is still entitled to take discovery to determine the extent of Amazon's potential infringement. District courts routinely permit discovery to determine the scope of infringement – including by products not expressly accused. *See Ropak Corp. v. Plastican Inc.*, No 04-5422, 2006 WL 1005406, at * 2 (N.D. Ill. Apr. 17, 2006) (granting motion to compel discovery "to determine the scope of the alleged infringement"); *Andco Environmental Processes, Inc. v. Niagara Environmental Assoc., Inc.*, 215 USPQ (BNA) 224, 226 n. 3 (W.D.N.Y. 1982) ("Plaintiff is not required to prove its case on the pleadings. Certainly, the fact that it has found three instances of potential infringement entitles it to determine whether other such instances exist"); *E.I. du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 24 F.R.D. 416, 426 (D. Del. 1959) ("It is obvious that the plaintiff is entitled to know which products the defendant or its licensees manufacture which may infringe").

Finally, the scope of permissible discovery clearly includes products "reasonably similar" to those expressly accused. In *EpicRealm*, the court held that "the scope of discovery may include products and services (in this case, websites and systems) 'reasonably similar' to those accused in the [preliminary infringement contentions] . . . This finding best comports with the 'notice pleading and broad discovery regime created by the Federal Rules' and the 'right to develop new information in discovery.'" *EpicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, Nos. 2:05-CV-163-DF-CMC and 2:05-CV-356-DF-CMC, 2007 U.S. Dist. LEXIS 68784 at *7, 10-12 (E.D. Tex. Aug. 27, 2007) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006)). Numerous courts have reached the same conclusion. *See, e.g., Honeywell Int'l, Inc. v. Acer America Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009) ("There is no brightline rule that discovery is permanently limited to the products specifically accused in a party's PICs"; such a rule would be "inconsistent with the broad discovery regime created by the Federal Rules and the notion that a party may be able to amend

its PICs"); *DR Sys. Inc. v. Fujifilm Med. Sys. USA, Inc.*, No. 06cv417 JLS (NLS), 2008 U.S. Dist. LEXIS 29485, at *13 (S.D. Cal. Apr. 10, 2008) ("Applying Rule 26, DR Systems' discovery should not be limited to only the products they expressly accused").

Here, Amazon cannot credibly deny that REDACTED REDACTED As described in the documents above, REDACTED REDACTED REDACTED

In sum, Amazon cannot escape inquiry into infringement REDACTED merely by asserting that REDACTED especially while withholding critical discovery by which Adrea might test that assertion. *See Rohm and Haas Co. v. Brotech Corp.*, No. 90-109-JRR, 1990 U.S. Dist. LEXIS 20117 at *20 (D. Del. Sep. 14, 1990) (noting that "a defendant cannot simply claim noninfringement and limit discovery according to its view of the case").

### A. Amazon should be required to unredact the documents classified as "Redacted Sensitive Information"

As reflected by the exemplary documents above, Amazon initially appeared to be complying with its obligation to produce documents pertaining to all currently available REDACTED REDACTED. Beginning in mid-November, 2010, Amazon suddenly ceased production of information on REDACTED by redacting all such information as non-responsive. Curiously, Amazon suddenly escalated its production of allegedly non-responsive documents, with no indication as to why they were being produced, or what had been redacted. For example the two complete documents below bearing Bates numbers AMZN_DE_1493641 and AMZN_DE_1963091 provide absolutely no indication of what has been withheld.



Combined with Amazon's refusal to provide a redaction log explaining the basis for the redactions, Adrea has absolutely no information by which to evaluate Amazon's claims of non-responsiveness and confidentiality.

Similarly, Amazon has redacted information regarding REDACTED which Adrea has requested to inform its damages analysis. (Ahn Decl. Ex. 8.)



Based on this document alone, it is unclear how this information, which appears to pertain to [REDACTED] is non-responsive or "sensitive."

Amazon's unexplained use of the Redacted Sensitive Information stamp does not appear to be limited to [REDACTED] however. Amazon has inappropriately redacted information pertaining to the currently available Kindle 3, [REDACTED] In the production document bearing the Bates number AMZN_DE_1509204, Amazon appears to have redacted a discussion of the cost estimates for the [REDACTED] device. (Ahn Decl. Ex. 21.)

Finally, Amazon also decided to redact its [REDACTED] despite having produced unredacted versions earlier in the discovery period. For example, in AMZN_DE_1800567, Amazon has now elected to redact information pertaining to [REDACTED] [REDACTED] (Ahn Decl. Ex. 22.) Because Amazon has failed to proffer any legitimate basis for these redactions, including an explanation of why the Protective Order in this case will not safeguard the confidentiality of these documents, the Court should require Amazon to reproduce every document bearing a "Redacted Sensitive Information" stamp.

### B. Amazon should be required to produce another 30(b)(6) witness on document collection and production

Given the contradictions and lack of clarity regarding its use of keywords in email filtering, Amazon should be required to make another 30(b)(6) witness on document collection and production available so that Adrea may question an Amazon representative, under oath, as to what exactly occurred regarding email searches and filtering, and when such activities took place. Only then will the multiple, conflicting representations of Amazon's counsel be rendered lucid.

### C. Amazon should be required to produce email files that contain the names of [REDACTED]

As discussed above, Amazon's belated disclosure of its use of keyword filtering and the conspicuous absence of the [REDACTED] in its keyword list has been extremely prejudicial to Adrea. Beyond the confusing and contradictory statements made by its

counsel, Amazon has clearly not satisfied its obligation to produce documents on the very relevant subject of REDACTED. During a number of meet and confers, Adrea proposed that Amazon search the email files of all of its custodians for the following REDACTED REDACTED REDACTED These terms reflect REDACTED which Adrea is entitled to discovery on, especially to confirm whether or not REDACTED REDAC and whether or not they infringe Adrea's patents.

Only after the documents responsive to this search are produced will Adrea have been provided sufficient access to plainly relevant information to fully develop its infringement case.

## II. Amazon Should Pay Adrea's Attorneys' Fees and Costs Relating to This Motion

Amazon should be ordered to reimburse Adrea for the fees and costs associated with this motion. Federal Rule of Civil Procedure 37(a)(5)(A) provides that "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

Amazon's apparent misrepresentations regarding its discovery activities combined with the belated disclosure of its use of keywords and unfettered use of the "Redacted Sensitive Information" stamp all suggest that Amazon has been playing fast and loose with its discovery obligations. As the examples above demonstrate, there is simply no justification for Amazon's production of allegedly "non-responsive" documents which are fully redacted, as well as Amazon's refusal to provide a redaction log explaining the basis for those redactions. Similarly, Amazon's disclosure of its use of keyword filtering only one month prior to the close of fact discovery was designed to maximize the prejudice to Adrea, virtually guaranteeing that it would not be able to obtain documents responsive to additional keyword searches until after the close of fact discovery. Based on these circumstances, the Court should order Amazon to pay Adrea's costs and expenses in bringing this motion.

## CONCLUSION

Amazon's refusal to produce information pertaining to [REDACTED] despite its clear relevance to infringement and damages issues, is baseless and necessitated this motion to compel. For the reasons set forth above, Adrea requests that the Court enter an order:

(a) compelling Amazon to produce a 30(b)(6) witness on the use of keyword searches in connection with its document collection and production;

(b) compelling Amazon to unredact every document that has been redacted as "Redacted Sensitive Information";

(c) compelling Amazon to run keyword searches of all of its email custodians' files using the [REDACTED] and to produce the resulting documents; and

(d) compelling Amazon to pay Adrea's costs and expenses incurred in bringing this motion.

Dated: January 31, 2011

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Jeffrey T. Castellano
Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jcastellano@ycst.com

OF COUNSEL:
Michael A. Jacobs
Richard S.J. Hung
Deok Keun Matthew Ahn
Patrick J. Zhang
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
(415) 268-7000

*Attorneys for Adrea, LLC*

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, hereby certify that on February 7, 2011, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz [rhorwitz@potteranderson.com]
>David E. Moore [dmoore@potteranderson.com]
>POTTER, ANDERSON & CORROON
>6th Floor, Hercules Plaza
>1313 N. Market Street
>Wilmington, DE 19801
>
>Josh A. Krevitt [jkrevitt@gibsondunn.com]
>Y. Ernest Hsin [ehsin@gibsondunn.com]
>Sarah E. Piepmeier [spiepmeier@gibsondunn.com]
>GIBSON, DUNN & CRUTCHER LLP
>200 Park Avenue
>New York, NY 10166

I further certify that I caused a copy of the foregoing document to be served by e-mail on the above listed counsel.

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ Jeffrey T. Castellano
>Elena C. Norman (No. 4780)
>Jeffrey T. Castellano (No. 4837)
>The Brandywine Building
>1000 West St., 17th Floor
>Wilmington, Delaware 19801
>(302)-571-6600
>jcastellano@ycst.com
>
>*Attorneys for Adrea, LLC, Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc.*