IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADREA, LLC, | ) | C.A. No. 10-600-ER |
| Plaintiff, | ) | **DEMAND FOR JURY TRIAL** |
| v. | ) | |
| AMAZON.COM, INC., | ) | REDACTED - PUBLIC VERSION |
| Defendant(s). | ) | DATED: JULY 21, 2011 |
| AMAZON.COM, INC., | ) | |
| Counterclaim Plaintiff, | ) | |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| ADREA, LLC, DISCOVERY COMMUNICATIONS, INC., DISCOVERY COMMUNICATIONS, LLC, and THE DISCOVERY CHANNEL STORE, INC., | ) | |
| Counterclaim Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DISCOVERY'S MOTION FOR LEAVE TO RE-OPEN THE DEPOSITIONS OF THOMAS SCHONHOFF AND NICHOLAS LOVEJOY**

*Of Counsel*
WORKMAN NYDEGGER
Brent P. Lorimer
Sterling A. Brennan
Thomas R. Vuksinick
L. Rex Sears
Seth W. Black
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
(801) 533-9800

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Adrea, LLC, Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc.*

i

## TABLE OF CONTENTS

                                                                                  **Page**

I. RELIEF SOUGHT ......................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 1

      A. The Technology Claimed in the Amazon Patents and the Roles of Schonhoff and Lovejoy ............................................................................................. 1

      B. The Testimony of Schonhoff and Lovejoy About Amazon's Pre-Filing Public Use of the Technology Claimed in the Amazon Patents is Relevant ........... 2

      C. Amazon's Statements to the PTO About Its Pre-Bar Date Public Uses ................. 4

      D. The *BTG* Litigation ................................................................................................. 6

      E. Amazon Should Have Produced the Schonhoff *BTG* Deposition Transcript In Response to Discovery's Requests for Materials Relevant to the Development of the Associates Program ............................................................... 9

      F. Discovery Has Met and Conferred with Amazon to No Avail ............................. 10

III. ARGUMENT ................................................................................................................ 11

IV. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aventis Pharma S.A. v. Amphastar Pharm., Inc.*,
    525 F.3d 1334 (Fed. Cir. 2008) ................................................................................... 3

*BTG Int'l, Inc. v. Amazon.com, Inc.*,
    No. 04-1264-SLR (D. Del. 2004) .................................................................................. 6

*Therasense, Inc. v. Becton, Dickinson and Co.*,
    No. 2008–1511, 2011 WL 2028255, at *11 (Fed. Cir. May 25, 2011) ............................ 3

**OTHER AUTHORITIES**

35 U.S.C. § 102(b) ............................................................................................................. 2

37 C.F.R. § 1.56 ................................................................................................................. 3

FED. R. CIV. P. 1 ............................................................................................................... 12

Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc., (collectively "Discovery") submit the following Opening Brief in Support of Discovery's Motion for Leave to Re-Open the Depositions of Thomas Schonhoff and Nicholas Lovejoy.

## I. RELIEF SOUGHT

Discovery seeks the following relief in connection with this motion:

1. An order re-opening the Schonhoff and Lovejoy depositions;

2. An order requiring Amazon to pay the attorneys' fees and costs incurred by Discovery in pursuing this motion and in re-deposing Schonhoff and Lovejoy;

3. An order finding that the time necessary to re-depose Schonhoff and Lovejoy shall not be counted against the total time allotted to Discovery for depositions; and

4. An order prohibiting Amazon from disclosing the content of this motion or the briefs filed in support of or in opposition to the motion to Schonhoff or Lovejoy prior to the completion of their re-opened depositions, and a further order prohibiting Amazon and its counsel from discussing with Schonhoff or Lovejoy the discrepancies between the Schonhoff *BTG* testimony, the testimony in this case, and the statements made by Amazon and Lovejoy to the United States Patent and Trademark Office ("PTO").

## II. FACTUAL BACKGROUND

### A. The Technology Claimed in the Amazon Patents and the Roles of Schonhoff and Lovejoy

As the Court is aware, Amazon has asserted counterclaims against Discovery for infringement of U.S. Patents Nos. 6,029,141 and 7,337,133 (the "Amazon Patents").[1] The

---

[1] Copies of the Amazon Patents are attached to the Declaration of Seth W. Black as Exhibits A and B. All references to exhibits herein are references to exhibits to the Black Declaration.

1

preferred embodiment disclosed and claimed in the Amazon Patents is a method whereby third party owners of Internet websites place Amazon links on those sites. When a consumer clicks on a link, a message is sent to the Amazon servers, and a web page advertising a particular product ("a product detail page") is sent from the Amazon server to the consumer's computer. Clicking on the link also sends a "tag" to Amazon. The tag tells Amazon the customer referral has come from the referring website. Amazon tracks the tag, and associates it with the consumer's browsing session. If the consumer makes a purchase during the session, Amazon associates the tag with the purchase, and pays the owner of the referring website a commission. Amazon refers to this system as its "Associates" program. Thomas Schonhoff ("Schonhoff") is a named inventor on the Amazon Patents. Schonhoff and Nicholas Lovejoy ("Lovejoy") were both key players in the development of the Amazon Associates program.

    **B.    The Testimony of Schonhoff and Lovejoy About Amazon's Pre-Filing Public Use of the Technology Claimed in the Amazon Patents is Relevant**

35 U.S.C. § 102(b) provides that a patent may not be obtained on subject matter that was described in a printed publication, in public use, or on sale in this country more than one year prior to the filing date. Thus, the date one year prior to the filing date is often referred to in patent parlance as the "bar date," because if any of the activities listed in section 102(b) occur prior to that date, they "bar" issuance of the patent. Amazon filed the earliest of the applications for the Amazon Patents on June 27, 1997.[2] The so-called "bar date" for the Amazon Patents is therefore June 27, 1996. Pre-bar date public uses or disclosures by Amazon of the claimed invention will invalidate the claims of the patents, as will public uses that would have rendered the claimed invention obvious. Amazon's pre-bar date activities (and the testimony of

---

[2] Both Amazon Patents claim June 27, 1997 as their priority date.

Schonhoff and Lovejoy about those activities) are therefore highly relevant to the validity of the Amazon Patents.

Not surprisingly, Amazon's invalidating pre-bar date public uses are also relevant to Discovery's claim of inequitable conduct. *Therasense, Inc. v. Becton, Dickinson and Co.*, No. 2008–1511, 2011 WL 2028255, at *11 (Fed. Cir. May 25, 2011) (holding that finding of invalidity based on information withheld from PTO necessarily includes a finding of materiality for purposes of inequitable conduct). The inventors, their attorneys, and all those substantively involved in the prosecution of a patent application have an uncompromising duty of candor to the PTO to disclose information material to examination to the PTO. 37 C.F.R. § 1.56. Failure to disclose such information, combined with intent to deceive, will result in a finding of inequitable conduct, which renders all of the claims of the affected patents unenforceable. *Aventis Pharma S.A. v. Amphastar Pharm., Inc.*, 525 F.3d 1334, 1349 (Fed. Cir. 2008) (the remedy for inequitable conduct is the "atomic bomb" of patent law.)

Amazon, its counsel, and Mr. Lovejoy knowingly and intentionally made false representations to the PTO about Amazon's pre-bar date public uses, and those misrepresentations were material. Specifically, Amazon and Mr. Lovejoy misrepresented the nature and scope of Amazon's pre-bar date public uses. Had the truth been made known, the Amazon Patents would not have been allowed and would not have issued. That fact makes the misrepresentations material for purposes of inequitable conduct. ████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████          ██████████████████████████████████████████
████████████████████████████████████████████████████████████████

[redacted]

### C.    Amazon's Statements to the PTO About Its Pre-Bar Date Public Uses

During the prosecution of the first of the Amazon Patents, Amazon disclosed "certain events that occurred prior to the June 27, 1996 critical [bar] date." Exh. C, at 1-2.[3] Among other things, Amazon disclosed that prior to the bar date, it was publicly using programs that included at least the following features:

- <u>Program 1</u>[4]    Amazon referred to this program as its "advertiser's" program. Under this program, the owner of an Internet website placed an Amazon.com link / advertisement on its site, a consumer clicked on the link, and was directed to the Amazon.com home page. Exh. C at 3. The link included a "tag" identifying the referring website. The tag was sent to Amazon so it could track the source of the referral. *Id.* If the consumer purchased a book during the browsing session, the purchase would be recorded in association with the tag. Using this method, Amazon determined the quantity of sales produced by each link / advertisement. *Id.* Amazon argued that the primary differences between Program 1 and the program claimed in the Amazon Patents were twofold: (1) the link / advertisement in Program 1 sent the consumer to the Amazon home page, not to a product detail

---

[3] Exhibit C is a copy of an Information Disclosure Statement dated May 10, 1999, filed by Amazon in connection with the prosecution of the '141 patent.

[4] The labels "Program 1," "Program 2," etc., are labels Discovery has applied to the various pre-bar date public programs Amazon was using. These labels are used only for ease of reference, and do not reflect names Amazon used to describe these programs.

4

page; and (2) the referring website owner in Program 1 was paid based on the number of downloads of the link / advertisement, not on a commission basis. *Id.*[5]

- Program 2    Program 2 was based on an arrangement with a website known as "IBIC," and was a modification of Amazon Program 1. Exh. C at 3-4. According to Amazon, this arrangement was the same as Program 1 except that it paid commissions on sales. *Id.* Amazon argued that the difference between Program 2 and the system claimed in the Amazon Patents was that in Program 2 the consumer was referred to the Amazon home page, not to a product detail page. *Id.*[6]

- Program 3    Program 3 was another modification of Program 1. According to Amazon, the links placed by website operators in Program 3 sent consumers to product detail pages on the Amazon website, not to the Amazon home page. Exh. C at 4. Amazon asserted that the principal differences between Program 3 and the system claimed in the Amazon Patents were that Program 3 did not track referrals and did not pay commissions on sales resulting from such referrals. *Id.*

The program ultimately claimed in the Amazon Patents is in reality a straightforward combination of Programs 1-3, programs Amazon admits it was publicly using prior to the bar date. The program claimed in the Amazon Patents requires links on third party websites (like

---

[5] Amazon later argued in connection with the '133 patent that Programs 1-3 also did not include an online enrollment process or an automated reporting feature, but those features were either known or obvious in light of the prior art.

[6] Discovery disputes Amazon's assertion that Program 2 did not refer consumers to an Amazon product detail page. The testimony of Fred Zimmerman, the owner of the IBIC site, makes it clear that Program 2 in fact contemplated referring customers to Amazon product detail pages. Exh. D, Zimmerman Depo. at 34:12-21, 35:7-10, 36:4-8; 38:21-39:1, 61:19-22, 62:17-24, 71:21-72:12, 73:10-21, 74:8-22, 124:17-18 126:14-127:4, 127:22-128:2.

Programs 1-3) to product specific Amazon pages (like Program 3), tracking of such referrals (like Programs 1 and 2) and the payment of sales-based commissions for referrals (like Program 2). Amazon, however, successfully argued that Programs 1-2 did not refer the consumer to a product detail page, Program 3 did not include tracking, and Programs 1 and 3 did not pay commissions based on sales. Contrary to Amazon's arguments, Program 2 did involve referrals to product detail pages, and the tracking function Amazon used for Program 1 was the same tracking function it ultimately adopted for the Associates program, meaning that such tracking was equally available for Program 3. These combined facts will ultimately prove the invalidity of the Amazon Patents.

The parties disagree as to the nature of Amazon's pre-bar date public uses, but they agree that Schonhoff and Lovejoy were involved in those activities and have knowledge about them.



Amazon's refusal to produce the Schonhoff *BTG* deposition in time for Discovery to review and use it to examine Schonhoff and Lovejoy has prejudiced Discovery.

### D. The *BTG* Litigation

In September 2004, BTG International, Inc. ("BTG") and others sued Amazon for patent infringement in this Court in an action captioned *BTG Int'l, Inc. v. Amazon.com, Inc.*, No. 04-1264-SLR (D. Del. 2004). BTG accused Amazon of infringing certain patents by its use of the Amazon Associates program, the same technology that forms the basis of the Amazon Patents.

In the course of the *BTG* litigation, BTG took the deposition of Mr. Schonhoff and questioned him extensively about the development of the Associates program. The same counsel represented Amazon and Mr. Schonhoff in the Schonhoff *BTG* deposition.[7]

During prosecution of the Amazon Patents, Amazon represented that it did not and could not track sales resulting from referrals to product detail pages. Exh. C at 3. Lovejoy repeated this argument in a declaration he filed with the PTO during prosecution of the '133 patent. Exh. E at 3, ¶ 6 ("the Associates Program provided the first practical method of tracking referral traffic from third-party sites"). This argument was critical to Amazon's ability to distinguish its Program 3 (an admitted prior public use) from the claimed invention, because even under Amazon's view of the facts, Program 3 used links from third party websites to Amazon product detail pages. Schonhoff's *BTG* deposition, however, refutes this argument.



7

when you get a banner ad or whatever bringing traffic to your site, it would be



Discovery ought to be able to examine Schonhoff and Lovejoy on these inconsistencies.

---

[9] The examples cited above are but a sampling of the types of testimony demonstrating the inconsistency between Amazon's current position and its position in the *BTG* litigation.

8

### E. Amazon Should Have Produced the Schonhoff *BTG* Deposition Transcript In Response to Discovery's Requests for Materials Relevant to the Development of the Associates Program

On January 4, 2010, Discovery served Requests for Production including Nos. 59 and 66, which required production of the following:

> **REQUEST FOR PRODUCTION NO. 59** All documents that relate to conception, reduction to practice, research and/or development of the subject matter disclosed and/or claimed in the Amazon Patents, including, but not limited to, all notebooks, notes, diagrams, drafts, drawings or sketches of, or related to, the subject matter claimed and/or disclosed in the Asserted Patents
>
> **REQUEST FOR PRODUCTION NO. 66** All documents related to any Amazon products, services, computer programs, or web sites that embody any of the Amazon Patents, including source code for any such products, services, computer programs, or web sites.

Exh. G, Request Nos. 59 and 66. Amazon did not produce the Schonhoff *BTG* transcript in response to these requests for production.

On June 4, 2010, Discovery served additional Requests for Production of Documents. Request No. 72 required production, *inter alia,* of the following classes of documents:

> (1) Documents related to publication, public knowledge, or public use of the subject matter claimed in the Amazon Patents prior to June 27, 1997;
>
> (2) Documents related to publication, public knowledge, or public use of the Amazon Associates Program prior to June 27, 1996, including all communications between Amazon and third parties concerning the Associates Program prior to June 27, 1996; and
>
> (3) Documents related to Amazon's use of user-selectable advertising links prior to June 27, 1996, including pay-per-click implementations in which referrals were tracked by Amazon and implementations involving direct links to specific book detail pages of the Amazon.com catalog, as described, for example, at AMZN_DE_0000150-151.

Exh. H, Request No. 72. The text of Request No. 72 (in portions not reproduced here) specifically references the *BTG* litigation, meaning that Amazon could not have possibly

9

misapprehended the connection between the *BTG* litigation and Request No. 72. Amazon, did not, however, produce the Schonhoff *BTG* transcript.

The above requests, among others, asked Amazon to produce any and all documents "related to" public uses of the subject matter of the invention claimed in the Amazon Patents. The breadth of these requests unquestionably encompassed the Schonhoff *BTG* deposition, which was directed almost exclusively to the development and functionality of the Amazon Associates program, which in turn is the subject matter of the Amazon Patents.[10] Amazon knew of the Schonhoff *BTG* deposition because it was a party to that litigation, and attended and defended that deposition. Amazon knew that the Schonhoff *BTG* litigation concerned Amazon's pre-bar date activities related to the Associates program, and therefore clearly should have produced the transcript.

Because Amazon refused to produce the Schonhoff *BTG* deposition, Discovery did not have the opportunity to review it to ascertain its relevance. Nor did Discovery have the opportunity to examine either Schonhoff or Lovejoy on the inconsistencies between Schonhoff's *BTG* testimony, Amazon and Lovejoy's contrary representations to the PTO, and the contrary positions taken by Amazon, Schonhoff, and Lovejoy in this action.

F. **Discovery Has Met and Conferred with Amazon to No Avail**

On March 23, 2011, after Amazon finally produced the Schonhoff *BTG* transcript, counsel for Discovery wrote counsel for Amazon and asked that Discovery be allowed to re-open the Schonhoff and Lovejoy depositions for the reasons stated above. Exh. I. On March 25,

---

[10] Amazon's response to Discovery's request to re-open the Schonhoff and Lovejoy depositions was that it had no obligation to produce the Schonhoff deposition transcript until it received Discovery's Request for Production No. 90, which specifically requested documents from the *BTG* litigation. The fact that the Schonhoff *BTG* deposition may have fallen within multiple requests for production is no excuse for not having produced it earlier.

10

2011, counsel for Amazon responded, arguing that Amazon had timely produced the deposition transcript, and declined to re-open the Schonhoff and Lovejoy depositions. Exh. I. Counsel for Amazon did not respond to Discovery's assertion that the deposition transcript should have been produced in response to earlier requests for production. *Id.* Counsel for Discovery responded by email on April 7, 2011, again identifying specific requests for production that clearly required Amazon to produce the Schonhoff transcript, well before his deposition occurred, again asking Amazon to re-open the Schonhoff and Lovejoy depositions, and asking for a telephonic meet and confer to discuss the matter. Exh. F. Amazon did not respond.

A mediation occurred in this action on April 12. After the mediation, the Special Master held a status conference on June 21, 2011, at which time this motion and various other discovery disputes were discussed. Discovery indicated its intent to move forward with this motion, and the Special Master set dates for the briefing of the motion. Amazon has not in the interim responded to Discovery's April 7, 2011 email, nor has it withdrawn its refusal to re-open the Schonhoff and Lovejoy depositions.

### III. ARGUMENT

This motion is straightforward. Discovery asserts that the Amazon Patents are invalid and unenforceable due to Amazon's own pre-bar date public uses, and its misrepresentations to the PTO about those public uses. Discovery asked for and should have received all documents in Amazon's possession or control that related to Amazon's activities prior to the filing of its patent application – which necessarily included Amazon's pre-bar date public uses. And that production should have happened early on in this case. Amazon was fully aware that the Schonhoff *BTG* deposition had occurred and was aware of its content, but refused to produce it, notwithstanding that nearly the entire deposition dealt with exactly the same subject matter of Discovery's assertions of invalidity and inequitable conduct in this case. Discovery went into

11

the Schonhoff and Lovejoy depositions thinking that it had all of the information available on these subjects, only to discover too late that Amazon had thwarted its efforts.[11]

Discovery needs to be able to re-open the Schonhoff and Lovejoy depositions because if it is unable to do so, it may not have any opportunity to examine either witness on the conflicts between Amazon's representations to the PTO, the current testimony of Schonhoff and Lovejoy, and the Schonhoff *BTG* testimony. Similarly, Discovery may not have any opportunity to examine either witness on the conflicts between their testimony in this action and Schonhoff's testimony in the *BTG* action. Neither Schonhoff nor Lovejoy are current employees of Amazon, and neither resides within 100 miles of this Court. Discovery therefore cannot compel Schonhoff or Lovejoy to attend the trial of this matter, and Amazon has not offered to make either available at trial. Nor has Amazon agreed that the Schonhoff testimony from the *BTG* action can be used at the trial of this action. Re-opening the depositions is the only way Discovery can take the testimony it was prevented from taking because of Amazon's refusal to produce the Schonhoff *BTG* transcript.

Even if Discovery were able to compel Schonhoff and Lovejoy to come to trial, it still ought to be afforded the opportunity to question them on the issues raised by Schonhoff's *BTG* testimony before trial. The purpose of modern discovery is to "secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. Gamesmanship and ambush are (or at least ought to be) artifacts of the past. Amazon's refusal to timely produce

---

[11] This is not the first time Amazon has not produced relevant documents. When Discovery subpoenaed Frederick Zimmerman, the proprietor of IBIC (Program 2), Mr. Zimmerman produced an email from him to Jeffery Bezos, in which Mr. Zimmerman disclosed to Mr. Bezos critical features of the claimed invention. Exh. D, Zimmerman Depo. at 25:10-20, 34:12-21, 35:7-10, 36:4-8, 124:17-18. Zimmerman's email to Bezos is dated October 31, 1995, approximately one year and eight months before Amazon filed its patent application. To this day, Amazon has not denied the authenticity of the Zimmerman email, nor has it produced it.

the Schonhoff *BTG* testimony has ambushed Discovery, and Discovery ought to be allowed to remedy that situation.

## IV. CONCLUSION

Discovery respectfully requests that the Court grant it leave to re-open the depositions of Schonhoff and Lovejoy for the limited purpose of exploring the conflicts raised by the Schonhoff *BTG* testimony with Amazon and Lovejoy's representations to the PTO and what Schonhoff and Lovejoy have testified in this action. Discovery further asks that the Court award it the attorneys' fees and costs incurred in preparing and arguing this motion and in re-deposing Schonhoff and Lovejoy. If Amazon had produced the clearly relevant Schonhoff transcript in a timely fashion, the parties would not be in this situation. It did not, and Discovery ought not have to bear the cost of Amazon's refusal to comply with its obligations. Discovery further requests an order that the time spent re-deposing Schonhoff and Lovejoy not be counted against its total available deposition hours. Last, Discovery seeks an order prohibiting Amazon and its counsel from tipping Schonhoff and Lovejoy off about the discrepancies between the Schonhoff *BTG* testimony, the testimony in this action, and the statements made to the PTO. What Discovery wants is the unvarnished, uncoached testimony of the witnesses, not the sanitized version that may be offered if Amazon is allowed to explain the inconsistencies to the witnesses.

|  |  |
|---|---|
|  | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|  | /s/ Jeffrey T. Castellano |
| *Of Counsel* | |
| Michael A. Jacobs | Elena C. Norman (No. 4780) |
| Richard S.J. Hung | Jeffrey T. Castellano (No. 4837) |
| Deok Keun Matthew Ahn | 1000 West Street, 17th Floor |
| Patrick Zhang | Wilmington, Delaware 19801 |
| MORRISON & FOERSTER | (302) 571-6600 |
| 425 Market Street | jcastellano@ycst.com |
| San Francisco, California 94105-2482 | |
| (415) 268-7000 | *Attorneys for Plaintiff Adrea, LLC (formerly Discovery Patent Holdings, LLC), Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc.* |
| Brent P. Lorimer | |
| Sterling A. Brennan | |
| L. Rex Sears | |
| WORKMAN NYDEGGER | |
| 1000 Eagle Gate Tower | |
| 60 East South Temple | |
| Salt Lake City, UT 84111 | |
| (801) 533-9800 | |
|  | Dated: July 15, 2011 |

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, hereby certify that on July 21, 2011, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Richard L. Horwitz
>David E. Moore
>Potter, Anderson & Corroon
>6th Floor, Hercules Plaza
>1313 N. Market Street
>Wilmington, DE 19801
>rhorwitz@potteranderson.com
>dmoore@potteranderson.com

I further certify that on July 21, 2011, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL:**

>Josh A. Krevitt
>Y. Ernest Hsin
>Sarah E. Piepmeier
>Gibson, Dunn & Crutcher LLP
>200 Park Avenue
>New York, NY 10166
>jkrevitt@gibsondunn.com
>ehsin@gibsondunn.com
>spiepmeier@gibsondunn.com

>Brian Ankenbrandt
>Gibson, Dunn & Crutcher LLP
>1801 California Street
>Suite 4200
>Denver, CO 80202
>bankenbrandt@gibsondunn.com

Brooke L. Myers
Jacon C. Lo
Jennifer J. Rho
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
bmyers@gibsondunn.com
jlo@gibsondunn.com
jrho@gibsondunn.com

Stuart M. Rosenberg
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
srosenberg@gibsondunn.com

Mark Reiter
Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
mreiter@gibsondunn.com

William F. Cronin
Corr Cronin Michelson Baumgardner & Preece LLP
1001 Fourth Avenue
Suite 3900
Seattle, WA 98154
wcronin@corrcronin.com

       YOUNG CONAWAY STARGATT & TAYLOR, LLP

       */s/ Jeffrey T. Castellano*

       ———————————————
       Elena C. Norman (No. 4780)
       Jeffrey T. Castellano (No. 4837)
       The Brandywine Building
       1000 West St., 17th Floor
       Wilmington, Delaware 19801
       (302)-571-6600
       jcastellano@ycst.com

       *Attorneys for Adrea, LLC, Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc.*

2