# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADREA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 10-600-ER |
| | ) | (Consolidated) |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | **PUBLIC VERSION** |
| | ) | **August 2, 2011** |
| AMAZON.COM, INC. | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADREA, LLC, DISCOVERY | ) | |
| COMMUNICATIONS, INC., DISCOVERY | ) | |
| COMMUNICATIONS, LLC, and THE | ) | |
| DISCOVERY CHANNEL STORE, INC., | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

## AMAZON.COM, INC.'S OPPOSITION TO ADREA, LLC'S
## MOTION TO COMPEL DISCOVERY OF FUTURE MODELS

OF COUNSEL:

Josh A. Krevitt
Y. Ernest Hsin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Amazon.com, Inc.*

Dated: July 25, 2011
1021554 / 34137

**PUBLIC VERSION**
**August 2, 2011**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ - 1 -

II.  STATEMENT OF FACTS ....................................................................................... - 3 -

    A.   Discovery Pertaining to Hypothetical Future Models ........................................ - 3 -

        1.   Adrea's Damages Theory ....................................................................... - 3 -

        2.   Amazon's Redaction of Information Relating to Unreleased
            Products.................................................................................................. - 4 -

    B.   The Parties' Use of Search Terms ..................................................................... - 6 -

        1.   Amazon's Internal Document Collection Process ................................... - 6 -

        2.   Outside Counsels' Procedures For Identifying And Producing
            Relevant Documents............................................................................... - 7 -

        3.   The Parties' Use of Search Terms ......................................................... - 7 -

III. ARGUMENT....................................................................................................... - 10 -

    A.   Discovery About Hypothetical Future Models Lacks Probative Value and
        Is Unduly Burdensome .................................................................................. - 10 -

    B.   Adrea Has Not Established the Appropriateness of Removing the
        "Redacted Sensitive Information" Stamp ....................................................... - 13 -

    C.   Requiring Additional Testimony Would Provide No Benefit to Adrea and
        Would Unnecessarily Burden Amazon........................................................... - 13 -

IV.  CONCLUSION................................................................................................... - 15 -

## TABLE OF AUTHORITIES

CASES

**Pages**

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
    24 F.R.D. 416 (D. Del. 1959) ..................................................................... - 12 -

*epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*,
    No. 2:05-CV-163-DF-CMC, 2007 U.S. Dist. LEXIS 68784
    (E.D. Tex. Aug. 27, 2007) ..................................................................... - 12 -

*Honeywell Int'l, Inc. v. Acer Am. Corp.*,
    655 F. Supp. 2d 650 (E.D. Tex. 2009) .............................................................. - 12 -

*Ropak Corp. v. Plastican, Inc.*,
    No. 04 C 5422, 2006 WL 1005406 (N.D. Ill. Apr. 17, 2006) ............................................ - 12 -

*Thermal Design Inc. v. Guardian Bldg. Prods., Inc.*,
    No. 08-C-828, 2011 WL 1527025 (E.D. Wis. Apr. 20, 2011) ........................................... - 10 -

*Wyeth v. Impax Labs.*,
    248 F.R.D. 169, 170-71 (D. Del. 2006) ........................................................... - 11 -


OTHER AUTHORITIES

Fed. R. Civ. Proc. 26(b)(2)(C)(iii) ............................................................... - 10 -, - 11 -

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Adrea seeks relief with respect to three issues.  First, it seeks to compel the production of materials relating to future Kindle designs that have never been offered for sale, much less sold.  Second, and relatedly, Adrea seeks to compel Amazon to un-redact portions of certain documents relating to those unreleased products.  Third, Adrea seeks an additional Rule 30(b)(6) deposition relating to Amazon's limited use of search terms on email correspondence, even though Adrea has used search terms on all of its email production, and even though Amazon already has employed every search term suggested by both Adrea and Discovery and disclosed in detail its search methodology.  As described below, Adrea's Motion should be denied in all three respects.

Neither the law nor the facts of this case support Adrea's efforts to compel discovery with respect to unreleased products.  In its Motion, Adrea fails to cite to a single case in support of the proposition that it can obtain discovery regarding proposed future models that have not been publicly released.  Adrea's request is all the more egregious because Adrea does not seek an injunction in this case, and instead seeks only monetary damages.  Accordingly, even if the unreleased products were to infringe the asserted patents, the potential damages associated with such products are at best nominal, and in all likelihood, non-existent.  In short, Adrea's efforts to obtain discovery as to products that have never been offered for sale nor sold amounts to nothing more than a fishing expedition manufactured to create an enormous burden for Amazon with no corresponding benefit to the development or resolution of this case.

The Court also should deny Adrea's effort to obtain relief with respect to Amazon's use of search terms to identify potentially responsive documents for review and production.  *Both* parties used search terms for that purpose in this litigation so there is no dispute that the methodology is appropriate.  ███████████████████████████████████████



Adrea's request for an additional 30(b)(6) witness on the use of keyword searches thus is plainly unwarranted in light of Amazon's proper use of search terms in its document collection efforts.

It also is unwarranted because Amazon's 30(b)(6) witness on the topic, Lynn Radliff, has testified accurately and unambiguously that Amazon personnel were not involved with the decision to utilize search terms.

Amazon respectfully requests that the Court deny Adrea's Motion.

## II.   STATEMENT OF FACTS

**A.   Discovery Pertaining to Hypothetical Future Models**

**1.   Adrea's Damages Theory**

By any measure, the discovery in this case has been an enormous burden to Amazon,

both in terms of expense and of the time spent by company personnel. ███████████

████████████████████████████████████ Declaration of Harvey

Carroll ("Carroll Decl."), ¶ 14.  Amazon also made available over███████████

████████████████████████████████████████████

█████████ Declaration of Jason Lo ("Lo Decl."), ¶ 2.  Such information, of course, is

highly sensitive and confidential.  Adrea now seeks to add to Amazon's burden and to obtain

even more sensitive information by requiring Amazon to produce additional information relating

to products that have never been offered for sale, or sold, in the United States.

Not only would the production of such materials be highly burdensome, but those

materials have no practical relevance in this case because they will not affect the amount of

damages (if any) to which Adrea is entitled.  From the outset of this case, Adrea has conceded

that it does not practice the asserted patents, and that it has never sought to monetize the asserted

patents (other than through the filing of this lawsuit).  *Id.* Ex. 1 at 168:5-15, 169:6-170:7, 181:10-

21.  Accordingly, the only relief Adrea seeks here is for monetary damages based on a

---

[1]   Adrea and Discovery, in contrast, have produced a sum total of 64,800 documents amounting
to 485,858 pages.  Carroll Decl. ¶ 15.  Many were determined by the Amazon review team to be
wholly irrelevant—likely "false hits" due to Adrea and Discovery's use of search terms without
further human review.  Lo Decl. ¶ 3-4, Exs. 14-15.

reasonable royalty.[2]  *Id.* Ex. 2 at 8-9.  Even if Amazon's conceptual designs were to infringe the asserted patents, there simply can be no material damages associated with the existence of such designs because no such product has been offered for sale or sold to the public.

It also is worth noting that although Amazon has released several variants of the accused Kindle devices, Adrea's position is that the parties would have engaged in only one hypothetical negotiation for a license under the Asserted Adrea Patents that would cover each and every Accused Product.  *Id.* Ex. 3 at 4-5.  As the Court is aware, one of the key factors used to determine the "reasonable royalty" for purposes of patent damages focuses on a "hypothetical negotiation" that would have occurred at the time infringement began.  In some factual contexts, parties may contend that a different hypothetical negotiation would have taken place just before the launch of a subsequent generation product.  The result is that different royalty rates may apply to different generations of products.  But that is not the case here.  Instead, Adrea's position is that the negotiation would have taken place only once – just prior to the launch of the first Kindle product – and that the negotiation would have yielded a single royalty rate applicable to all subsequent products.

## 2.    Amazon's Redaction of Information Relating to Unreleased Products

In a limited number of instances, Amazon used a "Redacted Sensitive Information" stamp to protect wholly unrelated, nonresponsive information like that discussed in Amazon's Board of Director meetings and products that were (and for the most part, are) still under development.  *See, e.g., id.* Ex. 16; D.I. 194, Exs. 3, 4.

---

[2]    Adrea cannot seek lost profits because it is not in the electronic book business.

Adrea's accusation that Amazon rampantly misused the "Redacted Sensitive Information" stamp is false and misleading in at least two aspects. First, Amazon has utilized this redaction stamp on less than one-half of one percent of all produced documents. *See* Carroll Decl. ¶ 14. Under any reasonable interpretation, such use cannot be characterized as "rampant."

Second, the broad accusations of misuse in Adrea's Motion belie the fact that in the meet-and-confer process leading up to the filing of the Motion, Adrea identified only limited examples of purported misuse. Amazon promptly investigated those examples (contrary to Adrea's suggestion that "[c]ounsel for Amazon did not respond," *see* D.I. 193 at 3) and reported to Adrea that it was using the stamp consistently with the stated purpose. Lo Decl. Exs. 4-5. Adrea did not pursue the matter further and did not identify any other example of suspected misuse prior to filing this Motion.

In its Motion, Adrea now has identified additional documents which it claims were improperly redacted. *See* D.I. 193 at 11-12 (referring to D.I. 194, Exs. 8, 21, and 22). But Amazon has since reviewed those additional documents as well and can confirm that, consistent with its stated practice, only information pertaining to proposed future models—and nothing else[3]—was redacted from those documents under the "Redacted Sensitive Information" stamp. *See* Lo Decl. ¶ 5.

---

[3]    Other than wholly irrelevant, completely unresponsive information discussed at Amazon's Board of Directors meetings. Lo Decl. ¶ 5; *see also id.* Ex. 16.

**B.      The Parties' Use of Search Terms**

In its Motion, Adrea takes umbrage with Amazon's use of search terms to help identify potentially responsive emails.[4]

The following section describes (1) Amazon's internal procedures for collecting all *potentially* relevant documents from Amazon employees, (2) outside counsel's procedures for identifying and producing relevant documents and (3) the parties' respective use of search terms in identifying and producing relevant documents.

**1.      Amazon's Internal Document Collection Process**

Lynn Radliff, Amazon's Rule 30(b)(6) designee regarding Amazon's document collection efforts, provided extensive testimony about Amazon's comprehensive efforts to collect documents for this litigation. ███████████████████████████

███████████████████████████████████████████" *Id.* Ex. 6 at 26:6-25.  Ms. Radliff further explained█████████████████████████

████████████████████ *Id.* at 46:3-7.  Finally, Ms. Radliff testified that

████████████████████████████████████████████████████████

███████████████████████████████ *Id.* at 17:5-12.

Ms. Radliff further testified that█████████████████████████████

██████████████████████ *Id.* at 74:25-75:2; *see also* D.I. 193 at 5 (citing similar deposition testimony).

In sum, Ms. Radliff testified that████████████████████████

████████████████████████████████████████████████████████

---
[4]   Although both parties have used search terms in conjunction with documents and materials other than emails, the parties' dispute now is targeted only at the use of search terms in conjunction with email correspondence.

████████████████████████████████████████████████████

████████████████ *See* Declaration of Lynn Radliff ("Radliff Decl.") ¶¶ 5-6; *see also* Carroll

Decl. ¶ 11.

      **2.**      **Outside Counsels' Procedures For Identifying And Producing
Relevant Documents**

████████████████████████████████████Amazon's outside counsel

oversaw the review and production of relevant and responsive documents.  While Amazon

employees were generally aware that additional review would be conducted, they necessarily had

little or no knowledge of how that review was conducted because they did not have a

comprehensive understanding of the various issues in this case.  For example, at her deposition

in June 2010, Ms. Radliff testified that███████████████████████████████

████████████████████████████████ Lo Decl. Ex. 6 at 30:3-9.  Beyond this

basic knowledge, she had little additional information about the specific decisions made by

outside counsel to judge the responsiveness or unresponsiveness of particular documents.

      **3.**      **The Parties' Use of Search Terms**

      All parties in this case used search terms to narrow the scope of documents subjected to

human review for responsiveness.  In particular, Adrea and Discovery used search terms to filter

the emails of every custodian from whom they collected documents.  Lo Decl. ¶ 3.  In other

words, once emails from identified custodians were gathered, Adrea and Discovery searched

those emails for certain keywords.  Only those emails that contained those keywords were

reviewed for potential responsiveness; emails that did not contain those keywords were neither

reviewed nor produced to Amazon.

      In this case, Adrea's counsel unilaterally determined the search terms to be used and has

refused Amazon's request that additional search terms—including words such as "list of titles of

available books," "key generator" (both terms that appear in the asserted claims) and "Rocket eBook" (an electronic book product that preceded the alleged conception date of the asserted patents) — be used to identify potentially responsive materials. *Id.* ¶ 9; *compare id.* Ex. 11 with *id.* Ex. 12.

By contrast, Amazon's use of search terms to identify responsive emails has been more measured, more transparent and more bilateral. At the beginning of the case, ██████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

*Id.* ¶ 6; Carroll Decl. ¶¶ 5-8.███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ *See* Lo Decl. ¶ 6; D.I. 194, Ex. 10. Adrea now seeks to twist the meaning and scope of that representation by stating that "contrary to its *counsel's representations* . . . , [Amazon] used search terms on its email databases," *see* D.I. 193 at 5 (emphasis added). Adrea's statement is misleading insofar as it suggests that (1) Amazon's counsel represented that it had not used search terms after search terms already had been utilized, or (2) Amazon's counsel represented that it would never use search terms on its email databases.

Neither suggestion is correct. In making such statements, Amazon's counsel was only describing its review methodology at the time, *not* making a commitment as to its future review methodology. Indeed, the fact that Amazon did not object after learning about Adrea's keyword search methodology strongly supports its understanding that using search terms would be an acceptable practice during the document review and production process. It is unsurprising that, in light of these discussions, Adrea's Motion is bereft of a single statement by Amazon committing to the exclusive human review of all collected documents.

In October 2010, 

Lo Decl. ¶ 7; *see also* Carroll Decl. ¶ 13.  As a result of that expansion, Amazon collected a                                        Lo Decl. ¶ 7. During this same time period,

*Id.*

*Id.*

Amazon's counsel then notified Adrea and Discovery about this limited use of search terms  and provided them with a list of the terms that had been used. *Id.* Ex. 10.

*Id.* ¶ 8.

*Id.*  In all,

[5]  *See id.*, Ex. 7 at 2; Carroll Decl. ¶ 13; D.I. 194, Ex. 17.          Discovery    reached an agreement to use *every* additional search term sought by Amazon. Lo Decl. ¶ 8.

Adrea alone remained obstinate, refusing to employ certain additional search terms sought by Amazon.  Among other things, Adrea refused to employ terms such as "list of titles of available books," "key generator" and "Rocket eBook." *Id.* ¶ 9; *compare id.* Ex. 11 *with id.* Ex. 12. These terms are highly relevant insofar as the first two terms are verbatim language taken

_____
[5]   Amazon does not concede the relevance of these terms, but offered to use them in order to reach a compromise on this dispute and to avoid burdening the Court. *See* Lo Decl. Ex. 7 at 2. The only category of terms that Amazon has not agreed to utilize is code words for potential future Kindle models. *Id.*

from the asserted claims, and the latter is a prior art electronic book system that one of the inventors of the asserted patents had knowledge of before the alleged conception of the patents-in-suit. *Id.* Ex. 8 at 1.



In short, although Adrea has refused to cooperate and use search terms suggested by Amazon, and although it has used search terms on far more document custodians than has Amazon, Adrea now seeks to complain about Amazon's behavior in this case.

### III.   ARGUMENT

**A.     Discovery About Hypothetical Future Models Lacks Probative Value and Is Unduly Burdensome**

The additional discovery sought by Adrea has no probative value, and, if required of Amazon, would create an enormous burden and potentially compromise highly sensitive research. *See* Fed. R. Civ. Proc. 26(b)(2)(C)(iii) ("[T]he court must limit the . . . extent of discovery otherwise allowed by these rules . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering [among other things] . . . the importance of the discovery in resolving the issues."); *see also Thermal Design Inc. v. Guardian Bldg. Prods., Inc.*, No. 08-C-828, 2011 WL 1527025, at *1 (E.D. Wis. Apr. 20, 2011) (denying motion to compel production where 1.46 million pages were already produced by the responding

party with significant financial strength because further requests amounted to a "fishing expedition").

Even if it could be demonstrated that products and concepts that have never been offered for sale or sold in the United States read on the asserted claims, the damages associated with such trivial instances of infringement are at best negligible and, in all likelihood, non-existent. Indeed, as Amazon's witnesses have confirmed during depositions, █████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Lo Decl. Ex. 9 at 167:1-6, 168:7-22, 170:23-171:17, 174:25-175:13, 175:18-24. ██████████

███████████████████████████████████████████

Moreover, any negligible damages that may arise out of such instances of infringement would be far outweighed by the burdens associated with the production of such materials. With respect to released products, ██████████████████████████████████████

████████████████████████████████ ███████████████

██████████████████) *Id.* Ex. 6 at 59:12-60:8, 76:2-77:3, 112:23-114:8, 135:3-19; Radliff Decl. ¶¶ 5-6. The cost of undertaking such a production with respect to unreleased products would far outweigh whatever nominal damages Adrea expects to obtain in connection with such conceptual designs. *See* Fed. R. Civ. Proc. 26(b)(2)(iii), Advisory Committee Notes to the 1983 Amendment (stating that this provision was added to Federal Rule 26(b) to "guard against redundant or disproportionate discovery"); *Wyeth v. Impax Labs.*, 248 F.R.D. 169, 170-71 (D. Del. 2006) (noting that the party seeking discovery must establish that the benefits of the requested discovery outweigh the burdens).

Indeed, even Adrea appears to concede that the cost to Adrea of analyzing any potential

- 11 -

production would far exceed any potential returns in the way of damages.  During the meet-and-confer process, Amazon's counsel posed a simple question:  if Amazon were to produce materials relating to unreleased products, would Adrea agree to either include an analysis of those unreleased products in its upcoming expert reports or forever forego the opportunity to accuse those products of infringement?  Lo Decl.¶ 10.  Adrea's counsel rejected this proposition. *Id.*  While Adrea did not articulate a rationale for this rejection, the rationale is not difficult to discern: ███████████████████████████████████████████████

███████████████████████████████████████████████

███████

      Not surprisingly, the cases cited by Adrea do nothing to advance Adrea's position.  This is because those cases deal with products that actually exist and are available to the public.  *See, e.g., epicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, No. 2:05-CV-163-DF-CMC, 2007 U.S. Dist. LEXIS 68784, at *8 (E.D. Tex. Aug. 27, 2007) (involving discovery regarding *existing* webpage generation systems); *Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 652, 655 (E.D. Tex. 2009) (granting discovery of reasonably similar products that "*perform* dot and/or column inversion" and for which "technical specifications and sales information" exist—*e.g.*, existing products (emphasis added)).

      In *Ropak Corp. v. Plastican, Inc.*, No. 04 C 5422, 2006 WL 1005406, at *2 (N.D. Ill. Apr. 17, 2006), for example, the plaintiff sought discovery pertaining to existing models of Plastican lids that it contended used technology similar to the "zig-zag tear-off lid" disclosed by its asserted patent.  In furtherance of this request, the plaintiff named the specific existing models that it sought to investigate.  *Id.*  Likewise, in *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 24 F.R.D. 416, 426 (D. Del. 1959), the court allowed the plaintiff discovery into

products not expressly accused, but in so doing only compelled the defendant to provide "the names of the products *manufactured* by the defendant and by its licensees . . . ."

In short, neither logic nor law supports Adrea's Motion.

**B.    Adrea Has Not Established the Appropriateness of Removing the "Redacted Sensitive Information" Stamp**

For similar reasons, Adrea also cannot establish its entitlement to a Court order commanding the removal of the "Redacted Sensitive Information" stamp.  In each instance identified by Adrea, Amazon used the "Redacted Sensitive Information" stamp only to the extent necessary to prevent the disclosure of information pertaining to proposed future models (or to prevent the disclosure of wholly unrelated, nonresponsive information discussed during, for example, Amazon's Board of Directors meetings).  Lo Decl. ¶ 5.  The fact that Amazon sometimes used the "Redacted Sensitive Information" stamp on the entire contents of certain documents is of no moment.  *See* D.I. 193 at 10-11.  If Amazon had simply withheld the document entirely on the theory that it was irrelevant, Adrea would be in no better position with respect to those documents.  Thus, Adrea essentially seeks to punish Amazon for being *too* diligent in its redactions.

Adrea also seeks to compel Amazon to search its collected emails for search terms corresponding to code names for future products.  *See* D.I. 193 at 12-13.  But this request depends entirely on the propriety of its theory that it is entitled to discover information pertaining to potential future Kindle models — a theory that, as demonstrated above, lacks any support.

**C.    Requiring Additional Testimony Would Provide No Benefit to Adrea and Would Unnecessarily Burden Amazon**

The existing record, including Amazon's 30(b)(6) deposition testimony, fully and accurately explains that Amazon's document collection and production efforts have resulted in the production of all responsive and relevant documents.  As Ms. Radliff testified under oath, the

- 13 -



Radliff Decl. ¶ 5.

     Contrary to Adrea's representations, and as described above, Amazon's existing

testimony clearly demonstrates Amazon's document collection and production methodology.

Amazon's 30(b)(6) witness fully and accurately testified about the manner in which Amazon

collected all of its documents.  She further testified about the process that was used to transfer

those documents to Amazon's outside counsel for ultimate production.  Radliff Decl. ¶¶ 5-6.

Amazon's counsel notified Adrea and Discovery when they began their limited use of search

terms to identify responsive documents.  Lo Decl. ¶ 7, Ex. 10; D.I. 194, Ex. 10.  And, as

Amazon's third-party document vendor details in his declaration attached to this brief, the

methodology used to apply those search terms is one that is consistent with the representations of

Amazon's counsel.  *See* Carroll Decl. ¶¶ 7-13.

     In light of these facts, Adrea cannot now claim that Amazon's document production was

rendered inadequate by the use of search terms.  Indeed, the speciousness of this allegation is

demonstrated by Adrea's failure to object to Amazon's use of search terms when it was first

---

[6]   This testimonial record further reveals the futility of Adrea's request for another 30(b)(6)
witness on document collection and production. ███████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████  *See* Carroll Decl. ¶¶ 9-13; Radliff Decl. ¶¶ 5-
6.

- 14 -

notified of that practice.  Instead of decrying this practice as improper, Adrea implicitly approved

Amazon's efforts by providing Amazon with additional search terms.  Adrea thus is not entitled

to an unnecessary, additional 30(b)(6) deposition during which no new information will be

revealed.

## IV.    CONCLUSION

Adrea relies on sleight of hand and distraction to manufacture a controversy that has little

to do with the relief it requests—relief utterly without legal support.  Because Adrea is not

entitled to discovery regarding proposed future Kindle models, its request that Amazon remove

the "Redacted Sensitive Information" stamp and run additional searches for keywords

corresponding to proposed future Kindle models should be denied.  Moreover, because Adrea

has failed to demonstrate anything improper about Amazon's document production

methodologies, and because an additional 30(b)(6) deposition would fail to uncover any useful or

relevant information, its request to compel further testimony on this issue also should be denied.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Josh A. Krevitt                             By:    /s/ David E. Moore
Y. Ernest Hsin                                     Richard L. Horwitz (#2246)
GIBSON, DUNN & CRUTCHER LLP                        David E. Moore (#3983)
200 Park Avenue                                    Hercules Plaza, 6th Floor
New York, NY 10166                                 1313 N. Market Street
Tel: (212) 351-4000                                Wilmington, DE  19801
                                                   Tel:  (302) 984-6000
                                                   rhorwitz@potteranderson.com
Dated:  July 25, 2011                              dmoore@potteranderson.com
1021554 / 34137

**PUBLIC VERSION**                          *Attorneys for Defendant Amazon.com, Inc.*
**August 2, 2011**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 2, 2011, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on August 2, 2011, the attached document was Electronically Mailed

to the following person(s):

Elena C. Norman
Jeffrey T. Castellano
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19899-2207
enorman@ycst.com
jcastellano@ycst.com

Michael A. Jacobs
Deok Keun Matthew Ahn
Patrick J. Zhang
Richard S.J. Hung
Brooks M. Beard
Francis C. Ho
Theodore M. Hasse
Jason D. Hall
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482
mjacobs@mofo.com
dahn@mofo.com
rhung@mofo.com
pzhang@mofo.com
bbeard@mofo.com
fho@mofo.com
thasse@mofo.com
jhall@mofo.com

Brent P. Lorimer
Sterling A. Brennan
L. Rex Sears
Seth W. Black
Thomas R. Vuksinick
Workman Nydegger
1000 Eagle Gate Tower
60 E. South Temple
Salt Lake City, UT  84111
blorimer@wnlaw.com
sbrennan@wnlaw.com
rsears@wnlaw.com
sblack@wnlaw.com
tvuksinick@wnlaw.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

916443 / 34137

2