IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADREA, LLC, | ) | C.A. No. 10-600-ER |
| Plaintiff, | ) | |
| v. | ) | |
| AMAZON.COM, INC., | ) | |
| Defendant(s). | ) | |
| AMAZON.COM, INC., | ) | |
| Counterclaim Plaintiff, | ) | |
| v. | ) | **REDACTED** |
| ADREA, LLC, DISCOVERY COMMUNICATIONS, INC., DISCOVERY COMMUNICATIONS, LLC, and THE DISCOVERY CHANNEL STORE, INC., | ) | **PUBLIC VERSION** |
| | ) | **DATED: SEPTEMBER 6, 2011** |
| Counterclaim Defendants. | ) | |

## DISCOVERY'S BRIEF IN OPPOSITION TO AMAZON'S MOTION TO PRECLUDE RELIANCE ON LATE-IDENTIFIED WITNESSES

*Of Counsel*
WORKMAN NYDEGGER
Brent P. Lorimer
Sterling A. Brennan
Thomas R. Vuksinick
L. Rex Sears
Seth W. Black
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
(801) 533-9800

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Adrea, LLC, Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc.*

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ...........................................1

II.    SUMMARY OF ARGUMENT ...................................................................1

III.   STATEMENT OF FACTS ........................................................................2

    A.    There Is No Dispute About Ten Of The Seventeen Witnesses Amazon Seeks To Preclude From Testifying..................................................................2

    B.    Amazon Has Long Known Of The Identity And Relevant Knowledge Of The Remaining Seven Witnesses At Issue.............................................4

          1.    Larry Rosen................................................................................5

          2.    Christine Wacker ........................................................................7

          3.    William Tobin.............................................................................8

          4.    Kurt Dahl ..................................................................................9

          5.    Authors Of Prior Art References .................................................10

          6.    Mark Hollinger And David Zaslav ...............................................11

IV.   ARGUMENT.......................................................................................12

    A.    Discovery Should Not Be Precluded From Relying On The Seven Witnesses At Issue ...........................................................................13

          1.    Discovery Was Substantially Justified In The Manner That It Disclosed The Seven Witnesses At Issue ....................................14

              a)    Importance Of The Witnesses At Issue Disfavors Exclusion........14

              b)    Prejudice Or Surprise To The Party Against Whom The Witnesses Are Offered Disfavors Exclusion .................................15

              c)    Likelihood Of Disruption Of The Trial Disfavors Exclusion........16

              d)    Possibility Of Curing Any Prejudice Disfavors Exclusion............16

              e)    Explanation For Failure To Disclose The Witnesses Disfavors Exclusion .................................................................16

              f)    Presence Of Bad Faith Or Willfulness In Not Disclosing

i

        The Witnesses Disfavors Exclusion...............................................18

    2.    The Witnesses At Issue Should Not Be Excluded Because Discovery's Disclosure Of Them Was Harmless ......................................18

B.    Amazon's Case Law Is Inapposite And Distinguishable From The Facts Of This Case ...........................................................................................19

V.    CONCLUSION..............................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Eli Lilly & Co. v. Actavis Elizabeth LLC,*
No. 07-3770, 2010 U.S. Dist. LEXIS 44913 .......................................................... 10, 19

*Fitz, Inc. v. Ralph Wilson Plastics Co.,*
174 F.R.D. 587 (D.N.J. 1997)...................................................................... 14

*Goodman v. Lukens Steel Co.,*
777 F.2d 113 (3d Cir. 1985)...................................................................... 13

*Hewitt v. Liberty Mut. Group, Inc.,*
268 F.R.D. 681 (M.D. Fla. 2010)...................................................................... 14

*Ill. Computer Research, LLC v. Harpo Prods., Inc.,*
No. 08-C-7322, U.S. Dist. LEXIS 51977 (N.D. Ill. May 26, 2010).................................. 19

*Konstantopoulos v.Westvaco Corp.,*
112 F.3d 710 (3d Cir. 1997)...................................................................... 13

*Leeseberg v. Converted Organics, Inc.,*
No. 08-926, 2011 U.S. Dist. LEXIS 21183 (D. Del. March 3, 2011) ........................ 13, 18

*Matthews v. Commonwealth Edison Co.,*
No. 93-C-4140, 1995 WL 478820 (N.D. Ill. March 24, 1995)........................................ 3

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
559 F.2d 894 (3d Cir. 1977)...................................................................... 13

*Newman v. GHS Osteopathic, Inc.,*
60 F.3d 153 (3d Cir. 1995)...................................................................... 14

*Rogers v. Wal-Mart Stores East, L.P.,*
No. 1:06-cv-84, 2008 WL 656078 (E.D. Tenn. March 6, 2008) ........................................ 3

## OTHER AUTHORITIES

Moore's Federal Practice § 26.27 ........................................................... 14, 18

Moore's Federal Practice § 37.62 ........................................................... 14

## RULES

Federal Rules of Civil Procedure 26 ........................................................... 4, 10, 17

iii

Federal Rules of Civil Procedure 37 ................................................................................. 4, 13, 17

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Discovery submits the following memorandum in opposition to Amazon's motion to preclude Discovery from relying on the testimony of allegedly late-identified witnesses (D.I. 359).

## II.   SUMMARY OF ARGUMENT

Amazon's motion is both disingenuous and without merit.  It is disingenuous because it seeks to preclude the testimony of at least ten witnesses about whom there is no dispute, and seeks to preclude testimony from others whose identity and relevant knowledge have long been known to Amazon.  Amazon's motion is without merit for at least two reasons.  First, this is ***not*** a situation where the witnesses were not disclosed.  Even under Amazon's skewed view of the facts, the witnesses it seeks to preclude from testifying were in fact disclosed—the real question is whether they were disclosed in a timely manner.  They were.  Amazon knew of the identity of these witnesses and the subject matter of their knowledge well before the close of discovery, and had ample opportunity to depose them if it desired to do so.[1]  The purpose of the disclosure rules is to avoid ambush by giving parties timely notice of the existence of witnesses with relevant knowledge.  That purpose has indisputably been fulfilled with respect to the witnesses who are the subject of Amazon's motion.  For the reasons set forth herein, Amazon's motion should be denied.

---

[1] Amazon argues that "it is disingenuous for Discovery's counsel to simultaneously seek to strike deposition testimony taken by Amazon that it claims exceeded the 100-hour limit (by 2 hours), and also claim that Amazon could simply have deposed all these additional witnesses 'if so desired.'"  D.I. 361 at 12.  It is Amazon that is disingenuous, not Discovery.  The motion referenced by Amazon is a motion filed by ***Adrea,*** not by Discovery.  Further, and perhaps more importantly, Amazon has ***not*** been misled about the disputed witnesses.  Any reasonable reading of Discovery's answers to interrogatories and the deposition testimony referenced herein would (and inevitably did) lead Amazon to know that Discovery intended to rely on the disputed witnesses.

### III.    STATEMENT OF FACTS

#### A.    There Is No Dispute About Ten Of The Seventeen Witnesses Amazon Seeks To Preclude From Testifying

The first problem with Amazon's motion is that Amazon grossly exaggerates the scope of the dispute.  Amazon asserts that there are seventeen witnesses at issue, when that is indisputably not the case.[2]  Of the seventeen witnesses identified by Amazon, Discovery has already agreed that it will not call ten.  Those ten witnesses are Christina Wadyka, Greg Durig, Josh Greene, Geoff Jackson, Nyles Lannon, Derek Matsuura, former employees of autoweb.com, former employees of kbkids.com, former employees of brainplay.com, and former employees of CDNow.[3]  Specifically, on August 16, 2011, as part of the meet and confer process, counsel for Discovery wrote to counsel for Amazon and made the following representation:

> We are willing to agree not to call the following witnesses on your list in our case in chief, except as they may have been designated and/or testified on particular topics or identified in discovery responses as having knowledge on particular subjects:
>
> Nyles Lannon
> Derek Matsuura
> Geoff Jackson
> Christina Wadyka
> Gregory Durig
> Josh Greene
> Aaron Holbert

---

[2] Amazon introduces its motion by arguing that Discovery identified "for the very first time over 30 new individuals or groups of individuals with relevant knowledge that Discovery may use to support its claims or defenses." D.I. 361 at 1.  If this premise were true (it is not, as demonstrated below), it is curious that Amazon seeks to preclude the testimony of only seventeen of the thirty allegedly late-identified witnesses, and not all of them.  Amazon's decision not to move against all of the witnesses disclosed by Discovery is further evidence that its motion is baseless.

[3] Discovery's agreement with respect to former employees of CDNow does not apply to Jason and Matt Olim, as expressly stated in the email quoted below, and as further discussed at page 10, *infra*.

Your list references "former employees" of CDNOW, autoweb.com, kbkids.com, and brainplay.com. We may call Jason and / or Matt Olim, both of whom are former employees of CDNOW. Otherwise, we do not plan on calling former employees of autoweb.com, kbkids.com and brainplay.com, except as they may be necessary to authenticate documents.

(Declaration of Seth W. Black in Support of Discovery's Brief in Opposition to Amazon's Motion to Preclude Reliance on Late-Identified Witnesses ("Black Decl."), filed herewith, Ex. 1.) A clearer statement of Discovery's willingness not to call these witnesses is hard to imagine. Amazon's motion inexplicably ignores this clear statement, and wastes the time and resources of Discovery and the Court in doing so.

The above email also states that these ten witnesses may be called if necessary to authenticate documents, and reserves the right to call them in connection with rebuttal, but neither of those reservations prejudices Amazon in any way. Discovery is hopeful that it can come to an agreement with Amazon on issues related to authentication, and if so, this issue will be moot. Even if there is no agreement, however, calling a witness to authenticate documents is neither prejudicial to Amazon nor controversial. The "rebuttal" referred to in the above-referenced email does not refer to witnesses Discovery will call in its case-in-chief. Instead, it refers to rebuttal witnesses Discovery may need to call in response to whatever rebuttal case Amazon chooses to put on. The need for rebuttal witnesses, by definition, is unexpected, and not known at the initial disclosure stage of the case. *See, e.g., Matthews v. Commonwealth Edison Co.*, No. 93-C-4140, 1995 WL 478820, at *3 (N.D. Ill. March 24, 1995) ("Rebuttal witnesses are oftentimes not known until after the trial is commenced because the need to call such a witness may not arise until the opposing party introduces an argument in issue or a fact during the course of the trial which must now, unexpectedly, be rebutted."); *Rogers v. Wal-Mart Stores East, L.P.*, No. 1:06-cv-84, 2008 WL 656078, at *7 (E.D. Tenn. March 6, 2008) (denying motion to exclude

3

testimony of a rebuttal witness for failure to comply with Rule 26(a)). Discovery's reservation

of the right to call one or more of these witnesses as a rebuttal witness in no way prejudices

Amazon. Amazon's exaggeration of the scope of its motion is a telling indicator of the lack of

merit in the motion generally.

**B.      Amazon Has Long Known Of The Identity And Relevant Knowledge Of The Remaining Seven Witnesses At Issue**

The thrust of Amazon's motion is that Discovery identified witnesses "for the very first

time" immediately before the close of discovery, that it (Amazon) had no idea who these people

were or what relevant knowledge they might possess, and that Amazon will be gravely

prejudiced if any of these individuals is allowed to testify. The short answer to Amazon's

arguments is that (1) Amazon knew of the identity of these witnesses and the subject matter areas

of their likely testimony long before the close of discovery, and (2) Amazon will not suffer any

unwarranted prejudice if these witnesses are allowed to testify, because if there is any prejudice,

Amazon is itself to blame for that prejudice.

Rule 26(a) requires that a party provide "the name, and if known, the address and

telephone number of each individual likely to have discoverable information—along with the

subjects of that information—that the disclosing party may use to support its claims or defenses,

unless the use would be solely for impeachment." Rule 37(c) provides that a failure to disclose

under Rule 26(a) may not be sanctioned if the failure was "substantially justified or is harmless."

In this case, if there was any failure to disclose (there was not) that failure was substantially

justified and was certainly harmless. Unquestionably, Amazon was in possession of the

information required by the disclosure provisions of Rule 26(a) for each of the seven witnesses

in dispute, and it was in possession of that information well before the end of discovery.

Discovery will now demonstrate that with respect to Larry Rosen, Christine Wacker, William Tobin, Kurt Dahl, authors of prior art references, Mark Hollinger and David Zaslav, Amazon knew, long before the close of discovery, of the identity of these witnesses, the subject matter of their relevant knowledge, and it suffered no harm because of any alleged failure to disclose their identity to Amazon.

### 1.    Larry Rosen

On October 15, 2010, Amazon served its Second Supplemental Initial Disclosures. (Black Decl., Ex. 2 at 11.)  Among the witnesses identified in that disclosure as having relevant knowledge was Larry Rosen, described by Amazon as an "E-Commerce Technical Lead" for Discovery.  (*Id.* at 3.)  The subject matter of Mr. Rosen's relevant knowledge was described by Amazon as the "[d]evelopment, functionality, and use of Discovery's accused websites; Discovery's use of the inventions claimed in U.S. Patent Nos. 6,029,141 and 7,337,133."  (*Id.*) The '141 and '133 patents are the patents Amazon has asserted against Discovery in this action. Certainly Amazon's knowledge that Mr. Rosen had knowledge of the "development, functionality, and use of Discovery's accused websites" reveals that Amazon knew that Discovery might choose to rely on Mr. Rosen to support its claims and defenses.[4]  Indeed, Discovery's Third Supplemental Initial Disclosures described the subject matter of Mr. Rosen's

---

[4] Amazon argues that its disclosure of the identity of the disputed witnesses was based on a good faith belief that these witnesses had relevant knowledge, but Discovery's (alleged) failure to identify the witnesses led Amazon to believe that they did not in fact have relevant knowledge. D.I. 361 at 11.  As demonstrated herein, the exact opposite is true.  The deposition testimony taken in this case and Discovery's interrogatory answers discussed below *confirm* the correctness of Amazon's identification of these witnesses as persons having relevant knowledge and that Discovery might call them to support its claims and defenses.

knowledge in language *identical* to that used by Amazon in its Second Supplemental Initial

Disclosures.[5]  (*Compare* Black Decl., Ex. 3 at 5 *with* Black Decl., Ex. 2 at 3.)

      Amazon's disclosure of Mr. Rosen as a person having knowledge about Discovery's

accused websites in October and November of 2010 was no accident.  On August 26, 2010,

Amazon took the deposition of Christopher McFadden, one of the developers of the software

associated with Discovery's Affiliates Program, the product / method that Amazon accuses of

infringement.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████  On November 19, 2010, Discovery served its

Supplemental Objections and Responses to Interrogatory No. 7, which asked Discovery to

identify the persons at Discovery who "designed, developed and/or implemented each Affiliates

Program [the accused product / method] or Internet-based Customer Referral System."  (Black

---

[5] Amazon again disclosed Mr. Rosen as a person having knowledge regarding Discovery's accused websites on November 4, 2010 as part of its Third Supplemental Initial Disclosures. (Black Decl., Ex. 4 at 3.)

Decl., Ex. 6 at 2.)  Discovery identified, among others, Larry Rosen.  Amazon knew exactly who Larry Rosen was long before the close of discovery, and knew that he was knowledgeable about the development and use of the accused website / program.  Importantly, Amazon does not argue that the information about Rosen in Discovery's initial disclosures was inadequate, only that it was untimely.  Everything disclosed about Mr. Rosen in Discovery's Third Supplemental Initial Disclosures was known to Amazon long before it received those disclosures.  Amazon's suggestion that it was somehow ambushed is without merit.

### 2.    Christine Wacker

Discovery's Third Supplemental Initial Disclosures disclosed Christine Wacker as someone having knowledge "regarding the development, functionality, use, customers, and revenue for the accused Discovery.com system;  . . . and Discovery's relationship with third parties relating to the accused Discovery.com system; marketing/promotional activities of Discovery and/or any third parties on Discovery's behalf."  (Black Decl., Ex. 3 at 5.)  The relevant question, for purposes of Amazon's motion, is whether Amazon knew that information sufficiently in advance of the close of discovery to take the deposition of Ms. Wacker if it desired to do so.  The undisputed answer is that it did.

On September 1, 2010, Amazon supplemented its answer to Discovery's Interrogatory No. 6, which asked Amazon to set forth in detail the bases for its claim of infringement.  (Black Decl., Ex. 7 at 4-5.) ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███

On August 24, 2010, Amazon took the deposition of Kevin Moore, a Discovery employee. ██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

As with Mr. Rosen, there is no question but that Amazon knew of the identity of Christine Wacker, knew that she had knowledge relevant to Discovery's defenses and claims, and had plenty of opportunity to depose her. Under these circumstances, its motion has no merit and should be denied.

### 3.   William Tobin

William Tobin is the founder of a company called PC Flowers & Gifts and the sole inventor of U.S. Patent No. 6,141,666. Tobin and his patent are not strangers to Amazon. Tobin's '666 patent was cited as a prior art reference against Amazon's '133 patent before the '133 patent issued in 2008, and long before this litigation was even initiated. (Black Decl., Ex. 9 at 2.) On January 24, 2006, Amazon took the deposition of Mr. Tobin in the *BTG* litigation, attempting to use Tobin and his patent to invalidate the *BTG* patent. (Black Decl., Ex. 10 at 1.) The *BTG* patent has an earlier priority date than the Amazon patents-in-suit, so if the Tobin patent is prior art to the *BTG* patent (as Amazon argued in the *BTG* litigation) it is also prior art to the Amazon patents. The *BTG* litigation accused Amazon's Associates Program of infringing

8

the *BTG* patent.  The Associates Program is Amazon's commercial embodiment of the subject

matter of Amazon's '133 and '141 patents.  As a result, Amazon clearly knew that the Tobin

reference was relevant to the validity of its patents.

      If there was any doubt about the fact that Mr. Tobin had relevant knowledge or that

Discovery was relying on that knowledge, Discovery eradicated that doubt when it served its

supplemental answer to Amazon's Interrogatory No. 8 on November 12, 2010.  (Black Decl., Ex.

11 at 7.)  Amazon's Interrogatory No. 8 asked for the bases for Discovery's invalidity defenses.

(*Id.* at 2.)  As part of Discovery's supplemental answer, it identified the Tobin patent and Tobin

(who is the *sole* named inventor) and went to great lengths to explain how and why Tobin's work

and his patent invalidate the Amazon patents.  (*Id.* at 3-4; App. A at 2-4; App. D.)  Discovery's

supplemental answer to Interrogatory No. 8 specifically charts the Tobin patent as an invalidity

reference against the claims of both the '141 and '133 patents.  (*Id.* at App. D.)  Additionally,

Tobin is referenced over 200 times in Discovery's invalidity analysis.  It is inconceivable that

Amazon would not know of Discovery's intent to rely on Tobin for its invalidity defense.

Amazon's argument to the contrary cannot be sustained.

    **4.**    **Kurt Dahl**

      Kurt Dahl is likewise no stranger to Amazon.  Dahl, along with Arnold, is one of the

named inventors of U.S. Patent No. 6,016,504, another prior art reference.  On October 28, 2009,

Discovery answered Amazon's Interrogatory No. 8, dealing with Discovery's invalidity

contentions.  (Black Decl., Ex. 12 at 12.)  ████████████████████████████

████████████████████████████████████████  On November

12, 2010, Discovery supplemented its answer to Amazon's Interrogatory No. 8, again analyzing

the '504 patent, referencing it as the "Arnold" patent, after the first named inventor.  (Black

Decl., Ex. 11 at App. A at 2.)  Discovery's supplemental answer to Interrogatory No. 8 also

charted the invalidity of Amazon's '141 and '133 patents against the Arnold / Dahl '504 patent. (*Id.* at App. B.) The Arnold / Dahl patent is referenced more than 250 times in Discovery's supplemental answer. Clearly, Amazon knew that Dahl, as a named inventor on a primary invalidity reference, is a person with relevant knowledge, and someone Discovery will rely upon. If Amazon had thought Dahl's testimony was relevant, it should have taken his deposition. It cannot lay its decision not to take Dahl's deposition at the feet of Discovery.

### 5.   Authors Of Prior Art References

As part of Discovery's supplemental answer to Interrogatory No. 8, it identified a number of prior art references and their authors as part of Appendix A to its answer. (Black Decl., Ex. 11 at App. A.) The identification of individual authors of prior art references in the context of a supplemental answer to an interrogatory on invalidity certainly fulfills the disclosure requirements of Rule 26(a).[6] The Rule itself requires the identification of individuals and the subject matter on which they have knowledge, not a thesis on each individual. Amazon's argument to the contrary is simply wrong.

One point on this issue deserves special note. Jason and Matt Olim are the founders of a publically used prior art website / system known as "CDNow." Amazon relied on the CDNow prior art in the *BTG* litigation in an attempt to invalidate the *BTG* patent. Throughout this action, Discovery has made it clear that it relies on the Olims and CDNow as part of its invalidity case.

---

[6] Amazon asserts that the "disclosure of a [prior art] *reference* does not constitute adequate disclosure of an *individual* related to that reference as someone on whom Discovery intends to rely on to support its claim or defenses." D.I. 361 at 8 n.3. In support, Amazon cites to *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-3770, 2010 U.S. Dist. LEXIS 44913, at *27-*28 n.5 (D.N.J. May 7, 2010). That case is inapposite and does not support Amazon's assertion, as *Eli Lilly* did not address the issue in this case, which is whether disclosure of a prior art reference in response to an interrogatory on invalidity constitutes adequate disclosure of the authors or individuals related to that reference. Discovery's disclosure is distinguishable from *Eli Lilly* and certainly adequate because it identified potential witnesses (the authors) and the scope of their relevant knowledge (the subject matter of the prior art references).

In its supplemental answer to interrogatory No. 8, Discovery extensively charted the CDNow art

in relationship to the claims of Amazon's '133 and '141 patents. (Black Decl., Ex. 11 at App.

C.) Amazon deposed Jason and Matt Olim in the *BTG* litigation, attempting to use the CDNow

prior art to invalidate the *BTG* patents. (Black Decl., Ex. 13.) Amazon knew of Matt and Jason

Olim, knew that they possessed relevant knowledge, and knew that Discovery was relying on

them to prove its claims and defenses. Additionally, during the meet and confer process leading

up to the filing of Amazon's motion, Discovery's counsel specifically addressed Jason and Matt

Olim, and Ernest Hsin, counsel for Amazon, agreed that Amazon is not trying to preclude Jason

or Matt Olim from testifying. (Declaration of Brent P. Lorimer in Support of Discovery's Brief

in Opposition to Amazon's Motion to Preclude Reliance on Late-Identified Witnesses ("Lorimer

Decl."), filed herewith, at ¶¶ 2-3.) However, footnote four of Amazon's brief in support of its

motion (which discusses former employees of CDNow) is ambiguous as to whether Amazon is

seeking to preclude the testimony of the Olim brothers. If Amazon insists on seeking to preclude

the testimony of the Olims, it should be denied. Amazon unquestionably knew of Jason and

Matt Olim, and unquestionably knew that Discovery intended to rely upon their testimony.

### 6.   Mark Hollinger And David Zaslav

Mark Hollinger is a former general counsel for Discovery. On October 15, 2010,

Amazon disclosed Hollinger as a person with knowledge of "the preparation and prosecution of

patent applications for the '851 patent, the '690 patent, and/or related applications." (Black

Decl., Ex. 2 at 4.) Discovery's Third Supplemental Initial Disclosures told Amazon what it

already knew, that Hollinger had knowledge regarding the preparation and prosecution of the

patents asserted against Amazon. (Black Decl., Ex. 3 at 6.) On November 16, 2010, Amazon

deposed Sarah Crispi, another in-house Discovery lawyer, and asked her about Mr. Hollinger.

11



Thus, Discovery's Third Supplemental Initial Disclosures identifying Mr. Hollinger as a witness did not reveal anything new or surprising to Amazon, and its motion should be denied.

Amazon's argument that David Zaslav should be precluded from testifying at trial likewise has no merit. Zaslav is a former CEO of Discovery. On October 12, 2009, Amazon served its Initial Disclosures, and identified Zaslav as a witness having knowledge related to "[a]lleged invention and patenting of the '851 Patent and the '690 Patent; operation of Discovery; lack of any Discovery products that practice the '690 and '851 Patents; Discovery's communications with and allegations of infringement against Amazon." (Black Decl., Ex. 15 at 4.) As with Mr. Hollinger, Discovery's Third Supplemental Initial Disclosures told Amazon what it already knew about Zaslav, disclosing virtually the same subject matters, without Amazon's negative slant. (Black Decl., Ex. 3 at 5.) Amazon's motion should be denied.

## IV.   ARGUMENT

Amazon's arguments that it has suffered surprise and unfair prejudice with respect to the seven witnesses in dispute cannot be squared with the undisputed facts set forth above. Amazon did know of the identity of these witnesses, did know that they had relevant knowledge and did know that Discovery might rely upon them. Amazon cannot complain of surprise and it suffered

no prejudice. Moreover, the case law relied upon by Amazon is inapposite to the facts of this case. As a result, Amazon's motion should be denied.

### A.   Discovery Should Not Be Precluded From Relying On The Seven Witnesses At Issue

Amazon moves for preclusion under Rule 37(c)(1) of the Federal Rules of Civil Procedure. That rule, on its face, applies when a party has failed to disclose witnesses in a timely fashion. As demonstrated above, Discovery in fact timely disclosed the identity of these witnesses and the fact that they had relevant knowledge, so Rule 37(c)(1) does not apply. Even if it did somehow apply, however, the sanction of preclusion cannot be applied where the failure to timely disclose is "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). If there was a failure here (there was not), it was both substantially justified *and* harmless.

According to Third Circuit precedent, whether a failure to identify witnesses is substantially justified or harmless is determined by analyzing the following six factors: (1) the importance of the witnesses at issue; (2) any prejudice or surprise to the party against whom the witnesses are offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing any prejudice; (5) the explanation for the failure to disclose the witnesses; and (6) the presence of bad faith or willfulness in not disclosing the witnesses. *Leeseberg v. Converted Organics, Inc.*, No. 08-926, 2011 U.S. Dist. LEXIS 21183, at * 15-*16 (D. Del. March 3, 2011) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)).

Ultimately, "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Id.* at *16 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977) and citing *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985)). Determining whether to preclude reliance upon witnesses "is a matter within

13

the discretion of the trial court." *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995). Application of the Third Circuit's six factor test establishes that exclusion of the seven witnesses at issue is not appropriate because Discovery's disclosures were substantially justified and any perceived failure to disclose was clearly harmless.

### 1. Discovery Was Substantially Justified In The Manner That It Disclosed The Seven Witnesses At Issue

Late-disclosed witnesses need not be excluded if the disclosing party was substantially justified in identifying the witnesses in the way that it did. MOORE'S FEDERAL PRACTICE § 26.27[2][c]. "Substantial justification for a failure to disclose is justification to a degree that could satisfy a reasonable person that the parties could differ as to whether, under the circumstances, disclosure was required." *Id.* (citing *Hewitt v. Liberty Mut. Group, Inc.*, 268 F.R.D. 681, 682 (M.D. Fla. 2010)); *see also* MOORE'S FEDERAL PRACTICE § 37.62 (citing *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997)). Applying the Third Circuit's six factors to the seven witnesses at issue establishes that Discovery was substantially justified because a reasonable person would be satisfied that the parties could differ as to whether disclosure was required. Indeed, a reasonable person would conclude under the facts of this case that Discovery *had* disclosed the witnesses in question before it served its Third Supplemental Initial Disclosures, and that it had no need to even serve those disclosures. The facts of this case meet and far exceed the standard requiring that "the parties could differ as to whether, under the circumstances, disclosure was required."

### a) Importance Of The Witnesses At Issue Disfavors Exclusion

The importance of the seven witnesses at issue weighs in favor of not excluding them. Specifically, Kurt Dahl, William Tobin, and the authors and inventors of prior art listed in Appendix A of Discovery's First Supplemental Response to Amazon's Interrogatory No. 8 are

witnesses of critical importance to Discovery's invalidity defense.[7]  Naturally, that is why

Discovery's reliance on these individuals was disclosed in Discovery's supplemental response to

Interrogatory No. 8 on November 12, 2010, well ahead of the close of fact discovery.  Moreover,

Dahl and Tobin are of such great importance to Discovery's invalidity defense that Discovery's

First Supplemental Response to Amazon's Interrogatory No. 8 also provided detailed invalidity

claim charts of Dahl's and Tobin's United States patents.  Similarly, Larry Rosen is important to

Discovery's non-infringement defense.  That is why on November 19, 2010, again well ahead of

the close of fact discovery, Rosen was disclosed in Discovery's supplemental response to

Amazon's Interrogatory No. 7, which sought an identification of the persons involved with the

Discovery Affiliates Program that Amazon had accused of infringement.   Likewise, Christine

Wacker's importance is established by the fact that her name is referred to throughout Amazon's

own infringement contentions.  With respect to Mark Hollinger and David Zaslav, they are

primarily important for issues relating to Adrea's side of this case, but their importance was

recognized early on as Amazon disclosed both of them in its various initial disclosures.  Thus, in

order to protect Adrea's interests, Discovery did not agree to their exclusion in this case.

**b)    Prejudice Or Surprise To The Party Against Whom The Witnesses Are Offered Disfavors Exclusion**

The prejudice or surprise to the party against whom the witnesses are offered also weighs

in favor of not excluding the witnesses at issue.  In particular, as established by the preceding

factual background section, Amazon has no basis for claiming prejudice or surprise because the

seven witnesses in dispute have long been known to Amazon and it simply chose not to depose

or further investigate these witnesses, even after it knew of them.

---

[7] This is true, *a fortiori,* of the testimony of Jason and Matt Olim.

c)      **Likelihood Of Disruption Of The Trial Disfavors Exclusion**

The trial will not be disrupted by Discovery's disclosure of these witnesses.  Discovery

timely disclosed the witnesses and the consequences of Amazon's decision not to depose them

can only be charged to Amazon.  Even if the Court were to allow Amazon to depose these

witnesses,[8] no trial date has yet been set, and trial is not likely until the spring or early summer of

2012.  Hence, the likelihood of disruption of the trial is non-existent.   As a result, this factor

disfavors exclusion.

d)      **Possibility Of Curing Any Prejudice Disfavors Exclusion**

The possibility of curing any prejudice that may exist likewise favors allowing Discovery

to rely on the witnesses at issue.  To be clear, there is no prejudice to Amazon in this case,

therefore the possibility of curing any prejudice is irrelevant here because Amazon knew of these

witnesses during the fact discovery period and Amazon could have deposed or further

investigated these witnesses then, if it had so desired.  Regardless, if this Court does find

prejudice that needs to be cured, the possibility of curing such prejudice is high, as there is more

than enough time available in the case schedule for Amazon to obtain further discovery through

whatever means this Court may allow.

e)      **Explanation For Failure To Disclose The Witnesses Disfavors Exclusion**

This factor is inapplicable, as Discovery in fact disclosed the disputed witnesses.  Given

the multiple disclosures of the identity of these witnesses and the subject areas of their

knowledge, the most that could be said of disclosure would be that Discovery's failure to

---

[8]  Discovery does not believe Amazon should be allowed to take the depositions of these witnesses at this late date.  Amazon knew who the witnesses were and that they had relevant knowledge, and it chose not to take their depositions.  Having made that choice, Amazon should not be allowed to revisit it.

formally include these witnesses in its earlier initial disclosures was inadvertent.[9] As the factual background discussion above illustrates, Discovery disclosed these witnesses well before the close of fact discovery and Amazon was well aware of them.[10]

Moreover, prior to explicitly listing the witnesses at issue in its January 25, 2011 Third Supplemental Initial Disclosures, Discovery's disclosures provided more information and detail regarding its reliance on these witnesses than any listing in an initial disclosure would do. For example, in its November 12, 2010 supplemental answer to Amazon's Interrogatory No. 8, Discovery's disclosure of Kurt Dahl, William Tobin, and the authors of prior art references provided extensive detail on Discovery's reliance on these individuals for purposes of its invalidity defense. Disclosure of such detail is far more than Discovery is required to provide under the Federal Rules of Civil Procedure.

Regardless, even if this Court determines that Discovery failed to disclose the witnesses at issue, Discovery has a substantial justification for identifying the witnesses when it did. From Discovery's perspective, it was clear that Amazon knew the identity of the seven witnesses at issue because they had been previously identified in Discovery's interrogatory responses, Amazon's own initial disclosures, and numerous depositions taken prior to the close of fact discovery. Thus, when Discovery identified these witnesses in its January 25, 2011 Third Supplemental Initial Disclosures, its purpose was to (1) formalize disclosure that had already occurred and (2) avoid protests from Amazon in the form of feigned unawareness of witnesses it had clearly known of all along.

---

[9] Fed. R. Civ. P. 37(c) advisory comm. nn. (1993) ("Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party.")

[10] Amazon itself had disclosed four of the seven witnesses in its own initial disclosures.

f)   **Presence Of Bad Faith Or Willfulness In Not Disclosing The Witnesses Disfavors Exclusion**

Because Discovery in fact disclosed the witnesses at issue, and did so well before the close of discovery, this factor is inapplicable to the facts of this case.  Amazon has tried and failed to find evidence of bad faith or willfulness because no such evidence exists.  The lack of bad faith or willfulness is best supported by the fact that Amazon itself identified many of the witnesses and Discovery identified the others.  Amazon has not been ambushed, and has not suffered any prejudice.

Since all six of the Third Circuit's factors weigh in favor of finding substantial justification for the manner in which Discovery identified the seven witnesses in dispute, this Court should deny Amazon's motion at least on that basis alone.

2.   **The Witnesses At Issue Should Not Be Excluded Because Discovery's Disclosure Of Them Was Harmless**

The exclusion of witnesses is not an appropriate sanction where a party's disclosure of those witnesses was "harmless." MOORE'S FEDERAL PRACTICE § 26.27[2] [d].

In the Third Circuit, the analysis of substantial justification and harmlessness are one and the same, as both require the evaluation of the six factors analyzed in the preceding section. *Leeseberg*, 2011 U.S. Dist. LEXIS 21183, at *15-*16.  In light of that analysis, the manner and timing of Discovery's disclosure of the witnesses at issue was also harmless based primarily on the obvious lack of prejudice to Amazon.

Moreover, "a failure to disclose witness information is 'harmless' if the other party was well aware of the identity of the undisclosed witnesses and the scope of their relevant knowledge well before trial." MOORE'S FEDERAL PRACTICE § 26.27[2] [d].  Furthermore, a court is more likely to find harmlessness "when there is plenty of time before trial for the opposition to counter the [allegedly] late submission." *Id.*

In this case, the timing and manner of Discovery's disclosure of the witnesses in dispute was harmless because, as established by the preceding factual background section, Amazon knew the identity of these witnesses and the scope of their relevant knowledge well before the close of fact discovery and certainly far ahead of trial in this action. Discovery's disclosure is also harmless because, in the event this Court determines that Amazon should be entitled to additional discovery on the witnesses at issue, an ample amount of time remains for Amazon to counter Discovery's reliance on those witnesses.

Therefore, Discovery's disclosure of the seven witnesses at issue was harmless, and this Court should deny Amazon's motion at least on that basis alone.

**B.     Amazon's Case Law Is Inapposite And Distinguishable From The Facts Of This Case**

The cases relied upon by Amazon do not support precluding Discovery from relying on the seven witnesses at issue because they involved facts distinguishable from those of this case. For example, in *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-3770, 2010 U.S. Dist. LEXIS 44913 (D.N.J. May 7, 2010), the Eli Lilly witness considered for preclusion was never listed on Eli Lilly's initial disclosures and was first identified as a fact witness a month and a half before trial. *Id.* at *5-*6. In addition, nearly a year and a half had passed between the close of fact discovery and Eli Lilly's disclosure of the witness at issue. *Id.* at *18-*19. Similarly, in *Ill. Computer Research, LLC v. Harpo Prods., Inc.*, No. 08-C-7322, U.S. Dist. LEXIS 51977 (N.D. Ill. May 26, 2010), the witnesses at issue had been disclosed six months after the close of fact discovery and about one month before the proposed trial date in the case. *Id.* at *5-*7.

In contrast to these cases, Discovery disclosed the seven witnesses at issue long before the close of fact discovery and many months before any proposed trial date in this case. In addition, this was not the first time Amazon was made aware of these witnesses, as they had all

19

previously been disclosed through Discovery's interrogatory responses, Amazon's own initial disclosures, and deposition testimony taken in the case. Thus, Discovery's disclosure of the seven witnesses at issue was proper, and therefore, Discovery should not be precluded from relying on those witnesses.

## V.    CONCLUSION

For the reasons set forth above, Amazon's motion should be denied and Discovery should not be precluded from relying upon its witnesses to supply evidence on a motion, at a hearing, or at a trial.

YOUNG CONAWAY STARGATT
& TAYLOR

*/s/ Jeffrey T. Castellano*

Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jcastellano@ycst.com

*Of Counsel:*
Michael A. Jacobs
Richard S.J. Hung
Deok Keun Matthew Ahn
Patrick Zhang
MORRISON & FOERSTER
425 Market Street
San Francisco, California 94105-2482
(415) 268-7000

*Attorneys for Plaintiff Adrea, LLC, Discovery
Communications, Inc., Discovery
Communications, LLC, and The Discovery
Channel Store, Inc.*

Brent P. Lorimer
Sterling A. Brennan
Thomas R. Vuksinick
L. Rex Sears
Seth W. Black
WORKMAN NYDEGGER
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
(801) 533-9800

Dated:  August 29, 2011

## CERTIFICATE OF SERVICE

I,  Jeffrey T. Castellano, hereby certify that on September 6, 2011, I caused to be

electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF,

which will send notification that such filing is available for viewing and downloading to the

following counsel of record:

> Richard L. Horwitz
> David E. Moore
> Potter, Anderson & Corroon
> 6th Floor, Hercules Plaza
> 1313 N. Market Street
> Wilmington, DE 19801
> rhorwitz@potteranderson.com
> dmoore@potteranderson.com

I further certify that on September 6, 2011, I caused a copy of the foregoing document to

be served by e-mail on the above-listed counsel of record and on the following in the manner

indicated:

### BY E-MAIL:

> Josh A. Krevitt
> Y. Ernest Hsin
> Gibson, Dunn & Crutcher LLP
> 200 Park Avenue
> New York, NY 10166
> jkrevitt@gibsondunn.com
> ehsin@gibsondunn.com

> Brooke L. Myers
> Jacon C. Lo
> Jennifer J. Rho
> Gibson, Dunn & Crutcher LLP
> 333 South Grand Avenue
> Los Angeles, CA 90071
> bmyers@gibsondunn.com
> jlo@gibsondunn.com
> jrho@gibsondunn.com

Stuart M. Rosenberg
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
srosenberg@gibsondunn.com

Mark Reiter
Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
mreiter@gibsondunn.com

William F. Cronin
Corr Cronin Michelson Baumgardner & Preece LLP
1001 Fourth Avenue
Suite 3900
Seattle, WA  98154
wcronin@corrcronin.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jeffrey T. Castellano*

Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19801
(302)-571-6600
jcastellano@ycst.com

*Attorneys for Adrea, LLC, Discovery Communications,*
*Inc., Discovery Communications, LLC, and The Discovery*
*Channel Store, Inc.*

2