IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADREA, LLC, | ) | |
| Plaintiff, | ) ) ) | C.A. No. 10-600-ER |
| v. | ) ) | (Consolidated) |
| AMAZON.COM, INC., | ) ) | |
| Defendant. | ) ) ) ) | REDACTED PUBLIC VERSION DATED: SEPTEMBER 6, 2011 |
| AND RELATED COUNTERCLAIMS | ) ) ) | |

**ADREA AND DISCOVERY'S ANSWERING BRIEF IN OPPOSITION TO AMAZON'S MOTION TO EXCLUDE ADREA FROM RELYING ON UNDISCLOSED VALUATIONS AND FOR OTHER REQUESTED RELIEF DUE TO PLAINTIFFS' DISCOVERY MISCONDUCT**

*Of Counsel*
MORRISON & FOERSTER LLP
Michael A. Jacobs
Richard S.J. Hung
Deok Keun Matthew Ahn
Patrick J. Zhang
425 Market Street
San Francisco, California 94105
(415) 268-7000

Dated: August 29, 2011

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Adrea, LLC, Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND AND ARGUMENT ................................................ 2

I.    THE OCEAN TOMO REPORTS ................................................................ 3

    A.    Amazon's Allegation ....................................................................... 3

    B.    Factual Background ......................................................................... 3

    C.    Argument ........................................................................................ 4

        1.    The Ocean Tomo Reports Were Never Concealed And
               Were Produced To Amazon Within One Month Of
               Amazon's Demand That They Be Removed From
               Plaintiff's Privilege Log ................................................. 4

        2.    Amazon Has Taken Full Discovery On The Ocean Tomo
               Reports And Has Suffered No Prejudice .......................... 6

        3.    Amazon Should Not Be Permitted To Undermine The
               Discovery Process And Exclude Evidence It Deems
               Unfavorable .................................................................... 6

II.    THE PCT CAPITAL REPORT ................................................................... 7

    A.    Amazon's Allegation ....................................................................... 7

    B.    Factual Background ......................................................................... 7

    C.    Argument ........................................................................................ 9

        1.    The PCT Capital Report Was Never Concealed And Was
               Produced To Amazon Within One Month Of Amazon's
               Demand That It Be Removed From The Privilege Log ........... 9

        2.    Amazon Has Taken Full Discovery On The PCT Capital
               Report And Has Suffered No Prejudice .......................... 10

        3.    Amazon Should Not Be Permitted To Undermine The
               Discovery Process By Excluding Evidence Amazon
               Requested And Received ............................................... 12

III.    THE PRICEWATERHOUSECOOPERS PRESENTATION .......................... 13

    A.    Amazon's Allegation ..................................................................... 13

i

B.    Factual Background ............................................................. 13

C.    Argument ........................................................................... 15

1.    The PwC Presentation Was Never Concealed And Was
Produced To Amazon One Month After Amazon
Demanded That It Be Removed From The Privilege Log ...................... 15

2.    Amazon Has Taken Full Discovery On The PwC
Presentation And Has Suffered No Prejudice ......................................... 16

3.    Amazon Should Not Be Permitted To Undermine The
Discovery Process ................................................................................... 16

IV.    DOCUMENTS PERTAINING TO THE FORMATION OF ADREA, LLC AND
OTHER "VALUATIONS" OF THE PATENTS IN SUIT ............................................ 17

A.    Amazon's Allegation ........................................................... 17

B.    Factual Background ............................................................. 17

1.    Document Production ............................................................................ 18

2.    Deposition Testimony ........................................................................... 19

C.    Argument ........................................................................... 23

1.    No "Valuations" Have Been Concealed From Amazon ........................ 23

2.    Discovery's Documents Pertaining To Legal Advice
Regarding The Formation Of Adrea Are Protected By The
Attorney Client Privilege ....................................................................... 23

3.    Plaintiff's Documents Pertaining To Legal Advice
Regarding The Amazon Litigation Is Protected By The
Joint Defense And Common Interest Privileges .................................... 24

4.    The Production Of Documents Pertaining To The
Formation Of Adrea Was Not Delayed ................................................. 26

5.    Amazon Has Taken Full Discovery On "Valuations" And
The ████████████████████████████ And Has Suffered No
Prejudice ................................................................................................ 28

6.    Amazon's Attempt To Suppress Evidence Through A False
Claim Of Discovery Violations Should Be Rejected ............................. 29

V.    PLAINTIFF IS ENTITLED TO ITS COSTS AND EXPENSES RELATED TO
PREPARING THIS OPPOSITION ............................................................................ 30

CONCLUSION ............................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Avgoustis v. Shinseki,*
    639 F.3d 1340 (Fed. Cir. 2011)..................................................................2, 4, 9, 15

*Corning Inc. v. SRU Biosystems, LLC,*
    223 F.R.D. 189 (D. Del. 2004) ..............................................................................26

*D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield,*
    03-cv-1026, 2011 WL 1871110 (D.N.J. May 13, 2011)......................................25

*Hunton & Williams v. U.S. Dep't. of Justice,*
    590 F.3d 272 (4th Cir. 2010) ................................................................................24

*In re Intel Corp. Microprocessor Antitrust Litigation,*
    562 F. Supp. 2d 606 (D. Del. 2008)......................................................................31

*In re Teleglobe Commc'ns Corp.,*
    493 F.3d 345 (3d Cir. 2007).................................................................................25

*Nidec Corp. v. Victor Co.,*
    249 F.R.D. 575 (N.D. Cal. 2007)..........................................................................24

*Pampered Chef v. Alexanian,*
    737 F. Supp. 2d 958 (N.D. Ill. 2010) ...................................................................26

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
    263 F.R.D. 142 (D. Del. 2009) .............................................................................25

*S.E.C. v. Wyly,*
    No. 10-cv-5760, 2011 WL 3055396 (S.D.N.Y. July 19, 2011)............................25

*Union Carbide Corp. v. Dow Chem. Co.,*
    619 F. Supp. 1036 (D. Del. 1985)........................................................................24

**OTHER AUTHORITIES**

Fed. R. Civ. P.
    Rule 26 ....................................................................................................................2
    Rule 30 ..................................................................................................................26
    Rule 37 ................................................................................................................2, 3

Saltzburg, Martin and Capra, *Federal Rules of Evidence Manual*
    at 501–29, 30 (9th ed.) ................................................................................................................25

## INTRODUCTION

Amazon's motion is a paradigm of litigation gamesmanship at its worst. Though it purports to unveil discovery misconduct and misrepresentations by opposing counsel, it instead is rife with factual inaccuracies and mischaracterizations, and is perhaps most notable for its seeming inability to comport with the record in this case. Amazon's attacks on the integrity of counsel for Adrea and Discovery are a smokescreen for its lack of legal and factual support for the allegations in its motion, which provide no justification for the extraordinary relief requested.

Amazon's purpose in filing this motion was twofold: first, to draw attention away from its own lack of diligence and failures during discovery, both of which are well-documented below and in Adrea's motions to compel, such as those pertaining to discovery into future models of the accused products and publisher agreements; and second, to undermine the discovery process by attempting to exclude documents that are not favorable to its position, even though it was Amazon that demanded and obtained production of these very same documents that were initially withheld and disclosed under a defensible claim of privilege. Because (1) Amazon was permitted to take full discovery on the documents that it now seeks to exclude; (2) Amazon seeks to exclude those documents not because of any misconduct by plaintiff but because Amazon simply does not like what those documents say; and (3) Adrea and Discovery stand to be harmed by the exclusion of those documents, the Court should deny Amazon's motion.

Moreover, it is clear based on the frivolous nature of Amazon's claims that this motion was brought in bad faith to harass Adrea and Discovery and needlessly increase the cost of litigation. Accordingly, Adrea and Discovery request that the Court sanction Amazon in

1

accordance with its inherent powers and order Amazon to pay their costs incurred in responding

to this motion.

## FACTUAL BACKGROUND AND ARGUMENT

At its core, Amazon's motion concerns the alleged concealment and non-production of

four categories of documents. Each of Amazon's contentions is contradicted by the record in

this case. In framing its argument, Amazon conveniently ignores and attempts to "conceal" the

fact that every "concealed" document referenced in its motion was actually disclosed to Amazon

in privilege logs, and was subject to the assertion of a defensible claim of privilege.[1] As

explained below, Amazon has long since taken full discovery on each category of discovery, and

therefore its constant refrain of "falsity" throughout its brief is, ironically, false itself.

It is also unclear under what legal authority Amazon brings its motion. Ostensibly,

Amazon's allegations of concealment implicate Federal Rule of Civil Procedure 37, but that

rule's applicability to the facts in this case is far from evident. In particular, Adrea and

Discovery[2] have adhered to the requirements of Federal Rule of Civil Procedure 26(b)(5) in

documenting the information that was allegedly concealed from Amazon, and therefore have

disclosed those documents within the meaning of the rule. *See, e.g., Avgoustis v. Shinseki,*

639 F.3d 1340, 1345-46 (Fed. Cir. 2011) (describing the requirements of Rule 26(b)(5) as

"disclosures about the general subject matter of potentially privileged documents in privilege

---

[1] It is only in footnote 8, "buried" in Amazon's 30 page brief, that Amazon admits that the documents in question were disclosed in plaintiff's and plaintiff's patent counsel's privilege logs. Amazon contends the documents were "buried" because of the length of the logs, and asserts that descriptions that accurately reflect the titles of the documents were somehow misleading.

[2] Because the subject matter of this motion encompasses events that span the period during which the plaintiff in this action changed from Discovery Communications, Inc. to Adrea, LLC (*see* D.I. 8 regarding the consolidation of civil action 09-cv-178 with 10-cv-600 and D.I. 28 regarding the related modification of the caption), the term "plaintiff" will be used for ease of reference.

2

logs"). To the extent that Rule 37(c) may apply to plaintiff's conduct, any failure to disclose

"was substantially justified or [wa]s harmless." Fed. R. Civ. P. 37(c)(1).

## I.   THE OCEAN TOMO REPORTS

### A.   Amazon's Allegation

Amazon claims that two reports prepared by third party Ocean Tomo (the "Ocean Tomo

Reports") were "improperly withheld" and "concealed," and that plaintiff allegedly claimed "that

the documents did not exist." (D.I. 300 at 11, 14.) This allegation is particularly surprising in

light of Amazon's admission in a footnote buried in the middle of its brief that plaintiff's

privilege log references a number of documents specifically identifying Ocean Tomo. (*Id.* at 12

n.8.)

### B.   Factual Background

Both of the Ocean Tomo Reports are essentially identical, and according to the executive

summary of the reports, the subject matter pertains to the following: ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████   (*See* Declaration of Deok Keun Matthew Ahn in Support of Adrea and

Discovery's Opposition to Amazon's Motion to Exclude ("Ahn Decl."), filed herewith, Ex. 1 at

DISCDE0000478863; and Ex. 2 at DISCDE0000478880.)

The Ocean Tomo Reports were first disclosed to Amazon on plaintiff's June 25, 2010

privilege log, where they were described as ████████████████████████

████████████████   (*See* Ahn Decl. Ex. 3 at entries 347, 2745.) Every page of the reports

except for the cover bears the legend:

████████████████████████

3

(*See, e.g.*, Ex. 1 at DISCDE0000478862 & Ex. 2 at DISCDE0000478879.)

It was not until six months after this disclosure, on December 28, 2010, that Amazon first

challenged the privilege designations on these documents and requested their production. (Ahn

Decl. Ex. 4 at 2.)  The same day, Amazon also filed a Notice of Subpoena pertaining to

subpoenas it intended to serve on Ocean Tomo, LLC.  (D.I. 109.)  Counsel for Adrea and counsel

for Amazon met and conferred on this issue.  (Ahn Decl. ¶ 2.)

Less than one month later, on January 24, 2011, Ocean Tomo produced a copy of one

report ███████████ in response to Amazon's subpoena.  (Ahn Decl. Ex. 5.)  One week

later, on January 31, 2011, Adrea produced the two Ocean Tomo Reports, ███████████

███████████.  (Ahn Decl. Exs. 1 and 2.)

Because no one with any knowledge of the Ocean Tomo Reports remained at Ocean

Tomo, Raymond Millien of PCT Capital, LLC ("PCT Capital"), as described in greater detail

below, agreed to testify regarding his work while an employee of Ocean Tomo.  (Ahn Decl.

Ex. 6 at 6:3-7.)  Based on the agreement of the parties, the fact discovery deadline of January 31,

2011 was extended until March 11, 2011, so that the parties could complete taking depositions.

(D.I. 195.)  Mr. Millien was deposed on March 3, 2011.  (*See* Ahn Decl. Ex. 6.)

**C.    Argument**

**1.    The Ocean Tomo Reports Were Never Concealed And Were Produced To Amazon Within One Month Of Amazon's Demand That They Be Removed From Plaintiff's Privilege Log**

Amazon directly contradicts itself by first claiming that plaintiff allegedly "concealed the

existence of" the Ocean Tomo Reports, and then admitting that these reports were disclosed on

plaintiff's first privilege log.  (D.I. 300 at 11 and 12 n.8.)  By placing these documents on its

privilege log, plaintiff did in fact disclose them.  *See, e.g., Avgoustis*, 639 F.3d at 1345-46.

Amazon also suggests that these reports were "improperly withheld," in essence raising the question of whether or not plaintiff had a good faith basis to claim privilege for these documents. Both of the reports, which were eventually produced at Amazon's insistence, have the legend ███████████ stamped on every page except for the cover, and also note in their executive summaries that ██████████████████████████████ ████████████████████████████. (*See, e.g.,* Ahn Decl. Ex. 1 at DISCDE0000478863.) Given these indications, plaintiff had more than adequate justification for claiming privilege. Plaintiff decided to produce these documents in order to obviate the need for motion practice.

Despite the fact that Amazon waited for over half a year to challenge these designations, it now blames plaintiff for Amazon's own lack of diligence in reviewing plaintiff's privilege log, and falsely represents to the Court that "[t]o this day, and despite repeated demands by Amazon, Plaintiffs and their counsel have never offered *any* explanation as to why the materials had not been produced earlier." (D.I. 300 at 3-4.) During the meet and confer process, counsel for plaintiff explained to counsel for Amazon that these documents appeared to be privileged, and that plaintiff did not intend to produce privileged material. (Ahn Decl. ¶ 2.) Amazon also seems to suggest that counsel for plaintiff made misrepresentations about the completeness of plaintiff's productions (e.g., "all valuations of the patents-in-suit have already been produced" (D.I. 300 at 3)) because privileged materials were not included in document productions and discovery responses. Yet Amazon need only review plaintiff's responses to Amazon's requests for production to see that plaintiff made clear, as does any litigant, that it would only "produce non-privileged, responsive documents and things." (*See, e.g.,* Ahn Decl. Ex. 7 at 5.) To claim that a

statement to the effect of "all materials have been produced" is false because privileged materials were not produced is absurd.

### 2.   Amazon Has Taken Full Discovery On The Ocean Tomo Reports And Has Suffered No Prejudice

Though Amazon claims that "[i]t is difficult to exaggerate the prejudice caused by Plaintiffs' selective disclosure," it seems to have had no difficulty in engaging in such exaggeration. (D.I. 300 at 27.)  In addition to the documents that it received through its subpoena to Ocean Tomo, Amazon received both Ocean Tomo Reports from plaintiff on January 31, 2011, just one month after Amazon first expressed interest in these documents.  Amazon then had over a month to prepare for the deposition of Raymond Millien, a former Ocean Tomo employee, who agreed to answer questions on March 3, 2011 about the report. (*See* Ahn Decl. Ex. 6 at 6:3-7.)  Jay Rosenstock, Discovery's 30(b)(6) witness on licensing, also testified regarding these reports. (*See, e.g.*, Ahn Decl. Ex. 8 at 132:20 – 134:4.)

When the issue of purported prejudice arose in correspondence between the parties earlier this year, counsel for plaintiff asked Amazon: "[t]o the extent that Amazon intends to claim some sort of prejudice despite being in possession of the documents that it will likely question Mr. Millien on next month, please identify the nature of that prejudice in a written response to this letter." (Ahn Decl. Ex. 9 at 2.)  Tellingly, Amazon failed to respond, and its motion does nothing to shed any light on this claimed prejudice.

### 3.   Amazon Should Not Be Permitted To Undermine The Discovery Process And Exclude Evidence It Deems Unfavorable

Having placed the Ocean Tomo Reports at issue, Amazon received exactly what it asked for: complete access to the reports and related documents.  Unhappy with the information disclosed in those documents, Amazon now seeks to put the genie back in the bottle.  Because the Ocean Tomo Reports highlight the extraordinary value of the patents in suit and will assist

the fact finder in fairly evaluating the damage to plaintiff caused by Amazon's continuing infringement, plaintiff should be allowed to use these documents at trial.

## II.     THE PCT CAPITAL REPORT

### A.     Amazon's Allegation

Amazon also claims that a report by third party PCT Capital (the "PCT Capital Report") was "improperly withheld" and "concealed," and that plaintiff allegedly claimed "that the documents did not exist." (D.I. 300 at 11, 14.) Again, this allegation is surprising in light of Amazon's admission that plaintiff served a privilege log on behalf of its patent counsel that listed a number of documents specifically identifying communications with PCT Capital. (*Id.* at 12 n.8.)

### B.     Factual Background

According to the introduction of the PCT Capital Report, the subject matter pertains to the following: ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████ (Ahn Decl.

Exs. 10 at DISCDE0000478910 & 11 at DISCDE0000479095.)

The PCT Capital Report was first disclosed to Amazon on the August 31, 2010 privilege log of Arent Fox LLP, Discovery's patent counsel, where they were described as ██████████

████████████████████████████████████████ (*See* Ahn Ex. 12 at entries 176-180.) The cover of the report notes the following:

7



(Ahn Decl. Exs. 10 at DISCDE0000478908 & 11 at DISCDE0000479093.)

Four months after this disclosure, on December 28, 2010, Amazon first challenged the privilege designations on these documents and requested their production. (Ahn Decl. Ex. 4 at 2.) A week later, on January 6, 2011, Amazon filed a Notice of Subpoena pertaining to subpoenas it intended to serve on PCT Capital. (D.I. 124.) Counsel for Adrea and counsel for Amazon met and conferred on this issue. (Ahn Decl. ¶ 2.)

Less than three weeks later, on January 24, 2011, PCT Capital produced a copy of the report in question. (Ahn Decl. Ex. 13.) One week later, on January 31, 2011, Discovery produced multiple copies of the PCT Capital Report, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See e.g.*, Ahn Decl. Exs. 10 and 11.)

In compliance with the subpoena to PCT Capital, Raymond Millien was deposed as PCT Capital's 30(b)(6) witness on March 3, 2011. (*See* Ahn Decl. Ex. 6 at 5:23-6:2.) Other witnesses, such as Jay Rosenstock, Discovery's 30(b)(6) witness on topics related to the licensing of the patents in suit, also provided testimony regarding the PCT Capital Report and the Ocean Tomo Reports. For example, Mr. Rosenstock testified that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ahn Decl. Ex. 8 at 132:20 – 134:4.)

In addition, on October 22, 2010, Amazon filed a Notice of Subpoena pertaining to subpoenas it intended to serve on Arent Fox LLP for deposition testimony pertaining to, among

8

other things, "The efforts to, and the results of any efforts to, commercially exploit the [patents

in suit]." (D.I. 46 at 40.) Arent Fox designated Wilburn Chesser, ████████████

████████████████████ to testify on its behalf. Before the end of that

deposition, counsel for Amazon expressly "reserve[d] its right to call Mr. Chesser back as a

witness or to reopen the 30(b)(6) deposition of Arent Fox . . ." (Ahn Decl. Ex. 15 at 331:7-19.)

Amazon did not attempt to reopen this deposition.

### C.    Argument

#### 1.    The PCT Capital Report Was Never Concealed And Was Produced To Amazon Within One Month Of Amazon's Demand That It Be Removed From The Privilege Log

As noted above in the discussion of the Ocean Tomo Reports, Amazon directly

contradicts itself by first claiming that plaintiff allegedly "concealed the existence of" the PCT

Capital Report, and then admitting that this report was disclosed on the Arent Fox privilege log

served by plaintiff. (D.I. 300 at 11 and 12 n.8.) Because these documents were on this privilege

log, they were in fact disclosed. *See, e.g., Avgoustis*, 639 F.3d at 1345-46.

There was also a good faith basis to claim privilege for these documents. The report,

which was eventually produced at Amazon's insistence, notes specifically that ████████████

████████████████████████████████████████████████████

████████████ (*See, e.g.*, Ahn Decl. Ex. 10 at DISCDE0000478908.) Plaintiff decided to

produce these documents in order to obviate the need for motion practice.

Amazon again blames plaintiff for Amazon's own lack of diligence and falsely represents

to the Court that "[t]o this day, and despite repeated demands by Amazon, Plaintiffs and their

counsel have never offered *any* explanation as to why the materials had not been produced

earlier." (D.I. 300 at 3-4.) During the meet and confer process, counsel for plaintiff explained to

counsel for Amazon that this document appeared to be privileged, and that plaintiff did not intend to produce privileged material. (Ahn Decl. ¶ 2.)

### 2. Amazon Has Taken Full Discovery On The PCT Capital Report And Has Suffered No Prejudice

Amazon has failed to state any substantiated claim of prejudice. In addition to the documents that it received through its subpoena to PCT Capital, Amazon received the PCT Capital Report from plaintiff on January 31, 2011, just one month after Amazon first expressed interest in this document. As noted above, Amazon had a substantial amount of time to prepare for the deposition of Raymond Millien, PCT Capital's 30(b)(6) witness, who was not deposed until March 3, 2011. (*See* Ahn Decl. Ex. 6.) When this issue of purported prejudice arose in correspondence between the parties before Mr. Millien's deposition, counsel for plaintiff asked Amazon to identify the nature of that prejudice in a written response. (*See* Ahn Decl. Ex. 9 at 2.) As noted above, Amazon failed to respond or to identify any prejudice.

Jay Rosenstock, Discovery's 30(b)(6) witness on licensing, also testified regarding the PCT Capital report. (*See, e.g.*, Ahn Decl. Ex. 8 at 132:20 – 134:4.) Throughout its motion, Amazon mischaracterizes Mr. Rosenstock's testimony to suggest both wrongdoing and prejudice, but a simple side by side comparison of Amazon's characterizations and Mr. Rosenstock's testimony demonstrates the lack of foundation for Amazon's claims.

10



| Amazon's Mischaracterizations | Mr. Rosenstock's Actual Testimony |
|---|---|
| • "Mr. Rosenstock testified that he not only had these reports, but had relied upon them *during this litigation*"; <br> • "Mr. Rosenstock then explained that he used the PCT and Ocean Tomo analyses throughout the pendency of this litigation"; and <br> • Mr. Rosenstock had "ongoing possession and use of those documents." <br><br> (D.I. 300 at 3, 12.) | (Ahn Decl. Ex. 8 at 132:20 – 133:12.) (emphases added.) |

Contrary to Amazon's statements, Mr. Rosenstock did not testify that he had "ongoing possession" of either the Ocean Tomo Reports or the PCT Capital Report. Amazon's insinuations are false. There was neither wrongdoing by plaintiff nor prejudice to Amazon.

Remarkably, Amazon also claims some kind of prejudice from not having had in its possession during the deposition of Discovery's Chairman, John Hendricks, a copy of the PCT Capital Report. Yet a copy of this report is actually an exhibit to Mr. Hendricks' deposition, and Mr. Hendricks had it in hand while testifying ▮▮▮▮▮▮▮▮▮▮:

| Amazon's Mischaracterization | Mr. Hendrick's Actual Testimony |
|---|---|
| "Mr. Hendricks distanced himself from PCT . . . This document, produced by PCT after Mr. Hendricks' deposition, could have been used to refresh his recollection." <br><br> (D.I. 300 at 25 n. 13.) | (Ahn Decl. Ex. 16 at 325:9-18 & Ex. 14.) |

11

Amazon's final attempt to manufacture a claim of wrongdoing and prejudice is that it "would have deposed Ms. Haydoutova [Discovery's patent counsel at Arent Fox] to inquire as to her qualifications in an attempt to impeach the reliability of the sources relied upon by PCT." (D.I. 300 at 25 n.13.)  Yet this claim of prejudice is belied by the fact that Amazon had already deposed a subpoenaed corporate designee (Wilburn Chesser) from Arent Fox on the topic of "[t]he efforts to, and the results of any efforts to, commercially exploit the [patents in suit]." (D.I. 46 at 40.)  Before the end of that deposition, counsel for Amazon expressly reserved the right to call Mr. Chesser back and to reopen the 30(b)(6) deposition, but did not do so.  (Ahn Decl. Ex. 15 at 331:7-19.)  Moreover, Amazon fails to mention that it individually subpoenaed two other Arent Fox attorneys, Charles Marmelstein and Sheree Rowe, but then decided against proceeding with those depositions.  (*See* D.I. 47 & 48.)  Amazon's actions speak louder than its words regarding its supposed desire to depose Ms. Haydoutova.

### 3. Amazon Should Not Be Permitted To Undermine The Discovery Process By Excluding Evidence Amazon Requested And Received

Amazon has only itself to blame for bringing the PCT Capital Report into this case. Because it does not like the substance of what is disclosed in that document, Amazon now unfairly seeks to preclude plaintiff from making use of it.  Because the PCT Capital Report highlights the extraordinary value of the patents in suit and will assist the fact finder in fairly evaluating the damage to plaintiff caused by Amazon's continuing infringement, plaintiff should be allowed to use this document at trial.  Otherwise, Amazon will have taken advantage of the discovery process first to gain access to, and then to lock away, this information.

### III.    THE PRICEWATERHOUSECOOPERS PRESENTATION

#### A.    Amazon's Allegation

Amazon claims that a presentation by third party PricewaterhouseCoopers (the "PwC Presentation"), as well as "documents describing the underlying methodology used by PwC," have not been produced.  (D.I. 300 at 15.)  This allegation ignores the fact that the PwC Presentation was produced to Amazon, and that there are no documents being withheld from production on this subject.

#### B.    Factual Background

The PwC Presentation pertains to ███████████████████████████████████████████████ ████████████████████████████████████████████████████.  According to John McCoskey, ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

(Ahn Decl. Ex. 17 at 238:16-20.)  A separate, internal Discovery presentation based on the PwC Presentation was produced to Amazon over a year and a half ago on January 11, 2010.  (*See* Ahn Decl. Ex. 18.)

On October 27, 2010, plaintiff listed the PwC Presentation on its privilege log.  (*See* Ahn Ex. 41 at entry 783.)  Every page of the PwC Presentation bears the following legend:

███████████████████████████████████████████████████

(*See, e.g.*, Ahn Decl. Ex. 19.)

During his deposition on December 6, 2010, Mr. McCoskey testified that ████████ 

███████████████████████████████████████████████████

[REDACTED] (Ahn Decl. Ex. 17 at 255:20 –

256:13 & Ex. 18.)  On December 8, 2010, Amazon challenged the privilege designation on the

PwC Presentation and requested its production.  (Ahn Decl. Ex. 4.)  One month later, on January

4, 2011, Amazon filed a sealed Notice of Subpoena pertaining to subpoenas it intended to serve

on PwC.  (D.I. 117-118.)  Counsel for Adrea and counsel for Amazon met and conferred on this

issue.  (Ahn Decl. ¶ 2.)

     In light of Mr. McCoskey's deposition testimony regarding [REDACTED]

[REDACTED], plaintiff produced the PwC Presentation on January 11, 2011.  (*See* Ahn Decl.

Ex. 19.)  To plaintiff's knowledge, Amazon did not follow through with its subpoenas to PwC,

and no discovery was produced in response to those subpoenas.

     The thoroughness of plaintiff's document collection was confirmed during the 30(b)(6)

deposition of Aaron Holbert, Discovery's witness on document collection, when he testified that



(Ahn Decl. Ex. 20 at 221:7-24.)

In addition, Mr. McCoskey, ████████████████████████████████████████

██████████████████████████████████████. (*See* Ahn Decl. Ex. 21 at response to

request no. 23.)

On January 27, 2011, the parties met and conferred, and counsel for plaintiff accurately

told counsel for Amazon that there were no documents related to the PwC Presentation that were

in plaintiff's possession that had not been produced. (Ahn Decl. ¶ 2.)

C.   **Argument**

1.   **The PwC Presentation Was Never Concealed And Was Produced To Amazon One Month After Amazon Demanded That It Be Removed From The Privilege Log**

Amazon has no basis to contend that the PwC Presentation has not been produced.  It was

produced on January 11, 2011. (*See* Ahn Decl. Ex. 22 at 2.)  Prior to production, this document

was listed, and therefore disclosed, on plaintiff's privilege log. *See, e.g., Avgoustis*, 639 F.3d at

1345-46.

There was also a good faith basis to claim privilege over this document.  The

presentation, which was eventually produced at Amazon's insistence, states on every page that it

is ██████████████████████████████████ (*See, e.g.,* Ahn Decl. Ex. 19.)

Despite the fact that Amazon waited for half a year to challenge this designation, it now

blames plaintiff for Amazon's own lack of diligence and falsely represents to the Court that "[t]o

this day, and despite repeated demands by Amazon, Plaintiffs and their counsel have never

offered *any* explanation as to why the materials had not been produced earlier." (D.I. 300 at 3-

4.)  During the meet and confer process, counsel for plaintiff explained to counsel for Amazon

that this document appeared to be privileged, and that plaintiff did not intend to produce

privileged material. (Ahn Decl. ¶ 2.)

### 2. Amazon Has Taken Full Discovery On The PwC Presentation And Has Suffered No Prejudice

Amazon has failed to make out a case for prejudice. It received the PwC Presentation from plaintiff on January 11, 2011, just one month after Amazon first expressed interest in this document. It also obtained substantial testimony from Mr. McCoskey regarding PwC's work on behalf of Discovery. To the extent that Amazon appears to be suggesting prejudice because it is unable to determine the methodologies used by PwC in preparing this presentation, Amazon has only itself to blame. As was the case with a number of its subpoenas, Amazon did not follow through with its document requests or deposition notice to PwC. And given Mr. McCoskey's testimony that ██████████████████████████████████████████████ ████████████████, Amazon cannot claim prejudice because there are no additional documents to be produced. Though Amazon was informed on January 27, 2011 of this fact, it still chose to file this motion and represent to the Court, in bad faith, that documents were being withheld.

### 3. Amazon Should Not Be Permitted To Undermine The Discovery Process

Amazon has only itself to blame for bringing the PwC Presentation into this case. As discussed above, it would be unfair to permit Amazon to take advantage of the discovery process to obtain access to documents, then abuse the system to shutter those same documents away. Because the PwC Presentation highlights the extraordinary value of the patents in suit and will assist the fact finder in fairly evaluating the damage to plaintiff caused by Amazon's continuing infringement, plaintiff should be allowed to use these documents at trial.

## IV. DOCUMENTS PERTAINING TO THE FORMATION OF ADREA, LLC AND OTHER "VALUATIONS" OF THE PATENTS IN SUIT

### A. Amazon's Allegation

Finally, Amazon claims that plaintiff "concealed" all manner of documents pertaining to the formation of Adrea, or in the alternative, that though this information was actually provided to Amazon, it was "selective" and "belatedly produced." (D.I. 300 at 6-10.) Amazon's allegations cover documents that it describes as "valuations," as well as testimony pertaining to a ███████████ that appears in Adrea's Operating Agreement.

### B. Factual Background



(See Ahn Decl. Ex. 23.)

(See Ahn Decl. Ex. 24.)

(Id. at 2)

(Id. at 1.)

Jeffery McDow, Adrea's 30(b)(6) witness, testified as follows ███████████

████████████████████████████████████████████

████████   (Ahn Decl. Ex. 25 at 130:9-15.)

### 1.   Document Production

On October 11, 2010, Amazon propounded an extraordinarily broad set of requests for

production that demanded, among other things, "All documents relating to the formation,

organization, and ownership of Adrea" and "All agreements and legal documentation relating to

Adrea . . . includ[ing] . . . Adrea's operating agreement and articles of organization." (Ahn Decl.

Ex. 26 at Requests Nos. 56 and 59.)  Despite the overbreadth of these requests, a little over two

weeks later, on October 29, 2010, Adrea produced a number of documents including its

operating agreement, as requested by Amazon.  (*See* Ahn Decl. Ex. 27.)  Far from being

"belatedly produced," the Operating Agreement was produced ████████████████████

████████████████████████████████.  (*See id.*)

Plaintiff continued to satisfy its discovery obligations on a rolling basis, and on

December 6, 2010, it collected and produced a large number of documents pertaining to the

formation of Adrea.  For example, plaintiff produced everything from ████████████

████████████████████████████████████████████

████████████████████████████████  (*See, e.g.*, Ahn Decl.

Exs. 28 & 29.)  Plaintiff also produced other documents such as those cited by Amazon in its

motion, including ████████████████████████████████████

████████████████████████████████████████████

████████████████   (Declaration of Brooke L. Myers in support of Amazon's Motion

(D.I. 302), Ex. 12 at DISCDE0000443188.)

From October 29, 2010 until March 14, 2011, plaintiff produced approximately 87,000

pages of documents (from Bates number DISCDE0000398279 to DISCDE0000485856).  (*See*

Ahn Decl. Exs. 30 & 31.)  To place this number in perspective, during the exact same period,

Amazon produced some 833,000 pages of documents (from Bates number

AMZN_DE0001674676 to AMZN_DE0002508007), or approximately 10 times the number of

pages produced by plaintiff.  (*See* Ahn Decl. Exs. 32 and 33.)  Put another way, Amazon

produced one third of its entire production while plaintiff was wrapping up the last of its

discovery specifically related to the recently completed formation of Adrea.

     The other joint venture members also produced documents in response to subpoenas from

Amazon, and specifically supplied Amazon with extensive discovery on the subject of

"valuations" and ███████████████████████████████████████.  For

example, ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████ (*See* Ahn Decl. Ex. 34 at 1-2 & Ex. 35 at 77:10-

12.)

### 2.    Deposition Testimony

     The joint venture members also provided deposition testimony and specifically supplied

Amazon with substantial discovery on the subject of "valuations" and ████████████████

████████████████████████████████.  For example, Jay Rosenstock, on behalf of

Discovery, made clear that ████████████████████████████████

████████████████████████████████████████

███████

(Ahn Decl. Ex. 8 at 27:11-14.)

████████████████████████████████████████████

████████████████████████████████████████████████



(*Id.* at 28:15-29:6.)

(*Id.* at 31:13-17.)

(*Id.* at 145:3-16.)

Arie Tol, on behalf of the subpoenaed Philips subsidiary, confirmed that



(Ahn Decl. Ex. 35 at 193:8 – 194:10.)

On the meaning of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇:



(*Id.* at 80:9 – 18.)

Jeffery McDow, on behalf of the subpoenaed Intertrust subsidiary, also provided related testimony ▇▇▇▇▇▇▇▇▇▇▇:



(Ahn Decl. Ex. 36 at 84:4– 14.)

Jaime Siegel, on behalf of the subpoenaed Sony subsidiary, testified about 

(Ahn Decl. Ex. 37 at 111:7 – 112:11.)

Finally, privilege was asserted over certain information pertaining to the formation of

Adrea.  Philips' representative Mr. Tol explained that

████████ █████████████████████████

(Ahn Decl. Ex. 35 at 49:5 – 13.)

    **C.**    **Argument**

        **1.**    **No "Valuations" Have Been Concealed From Amazon**

Amazon's allegation of concealment is unfounded.  In the first instance, it should be clear

from Mr. Rosenstock's and Mr. Tol's testimony, quoted above, that the types of documents that

Amazon has referred to as "valuations" do not exist.  (*See* Ahn Decl. Ex. 8 at 27:11-14; 28:15-

29:6; 31:13-17; 145:3-16 & Ex. 35 at 193:8 – 194:10.)

Amazon also insinuates impropriety on the part of counsel for plaintiff because ████

████████████████████████████████████████████████.  Rather

than pointing to any evidence, Amazon simply asserts that valuations must have existed, and that

therefore any representations by plaintiff's counsel concerning "investigations" regarding the

existence of "valuations" were false ████████████████████  (D.I.

300 at 20.)  Given Mr. Rosenstock's testimony on this issue, and given the logical flaws in

Amazon's argument, there is nothing to suggest that any "valuations" existed, much less that

they were withheld.

        **2.**    **Discovery's Documents Pertaining To Legal Advice Regarding The**
            **Formation Of Adrea Are Protected By The Attorney Client Privilege**

To the extent that Amazon is suggesting that it is entitled to all of Discovery's

communications with counsel pertaining to the formation of Adrea, it has provided no actual

legal or factual basis for any such contention.  As Amazon notes in its motion, ████████

████████████████████████████████████████████████.

Non-privileged information regarding that representation has been produced to Amazon, and

plaintiff provided a privilege log disclosing withheld documents.  Amazon has never challenged

those privilege designations. Likewise, as discussed above, communications between the other

joint venturers and their counsel are also subject to the attorney client privilege. (*See* Ahn Decl.

Ex. 35 at 49:5 – 13.) Because the attorney-client privilege appears to cover such

communications, it is unreasonable for Amazon to assert that it is entitled to this information.

> ### 3. Plaintiff's Documents Pertaining To Legal Advice Regarding The Amazon Litigation Is Protected By The Joint Defense And Common Interest Privileges

Though the question is not properly before the Court, the common interest privilege does

apply to certain communications exchanged by the joint venture members. *See Hunton &*

*Williams v. U.S. Dep't. of Justice*, 590 F.3d 272, 277 (4th Cir. 2010) ("The common interest

doctrine permits parties whose legal interests coincide to share privileged materials with one

another in order to more effectively prosecute or defend their claims"); *Union Carbide Corp. v.*

*Dow Chem. Co.*, 619 F. Supp. 1036, 1047 (D. Del. 1985) ("Third party communications do,

however, retain a protective shield if the parties have a common legal interest, such as where

they are codefendants or are involved in or anticipate joint litigation"); *Nidec Corp. v. Victor*

*Co.*, 249 F.R.D. 575, 579 (N.D. Cal. 2007) (noting that in an earlier decision from the district,

"the court found there was a common legal interest because of anticipated joint litigation").

Contrary to Amazon's assertions and cited authority, the common interest privilege

applies in a broad range of circumstances, including when a community's interests have

commercial as well as legal aspects. *See, e.g., In re Teleglobe Commc'ns Corp.*, 493 F.3d 345,

364-366 (3d Cir. 2007) ("The fact that there may be an overlap of a commercial and a legal

interest for a third party does not negate the effect of the legal interest in establishing a

community of interest") (citation omitted).

Nor do a community's interests need to be perfectly aligned in every respect. *See*

*S.E.C. v. Wyly*, No. 10-cv-5760, 2011 WL 3055396, at *2 (S.D.N.Y. July 19, 2011) (noting that

"the parties do not need to be in exact lock-step of interest in order for the common-interest

doctrine to apply to a shared communication"); *D & D Assocs., Inc. v. Bd. of Educ. of N.*

*Plainfield*, 03-cv-1026, 2011 WL 1871110, at *4 (D.N.J. May 13, 2011) ("The parties' common

legal interest need not be identical, but merely substantially similar . . . The fact that parties with

common interests may also have some adverse interests does not destroy the common-interest

privilege as to communications regarding the common interest"); *Robert Bosch LLC v. Pylon

Mfg. Corp.*, 263 F.R.D. 142, 146 (D. Del. 2009) ("members of the community of interest 'must

share at least a substantially similar legal interest'") (citation omitted); *see also* Saltzburg, Martin

and Capra, *Federal Rules of Evidence Manual* at 501–29, 30 (9th ed.) ("Relationships between

clients are often more ambiguous than the extremes of united in interest and completely adverse.

Sometimes it will occur that clients share a mutual interest as to one issue (such as discrediting a

witness) but are adversarial as to many or all other issues.  Most courts have held that the

common interest privilege can apply even if the clients are in conflict on some or most points, so

long as the communication itself deals with a matter on which the parties have agreed to work

toward a mutually beneficial goal").

        In contrast, the authority cited by Amazon is inapposite.  As just one example, in *Corning

Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004), the court concluded that the

common interest privilege did not apply because the parties asserting it "ha[d] failed to

demonstrate that the parties had agreed to a joint defense strategy or that the opinions were a

precaution against anticipated joint litigation."  Neither of these issues applies to Adrea.

        Amazon contends that the joint defense and common interest privilege has somehow

been waived in its entirety because of the production of certain documents like the one discussed

above ██████████████████████.  ████████████████

25

██████████████████████████. (*See* Ahn Decl. Ex. 34 at 1-2.) The production of

this document could not waive any privilege, as it was not privileged in the first place. *See*

*Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 968 (N.D. Ill. 2010) ("waiver cannot stem

from an unprivileged communication") (internal quotation marks omitted). Accordingly,

Amazon has failed to demonstrate that any privilege was waived. It has also failed to

demonstrate that any documents were improperly withheld or that any assertion of privilege was

improper.

Indeed, Amazon's support for its contention is limited to yet another unsubstantiated

attack, this time on Adrea's corporate representative. Amazon alleges that "[e]xecutives at

Discovery also knowingly participated in the concealing of the materials relating to the Adrea

negotiations . . . Adrea's Rule 30(b)(6) witness openly confessed that the Adrea partners

intended to hide the ongoing negotiations from Amazon." (D.I. 300 at 7.) First, Mr. McDow,

Adrea's corporate deponent, is not an executive at Discovery. Second, what Mr. McDow

actually testified to was that ████████████████████████

██████████████████████████████████████████

██████████████. (*See* Ahn Decl. Ex. 25 at 130:9-15.) That these

documents were produced to Amazon belies its allegation that they were concealed.

### 4. The Production Of Documents Pertaining To The Formation Of Adrea Was Not Delayed

Amazon also contends that documents pertaining to the formation of Adrea were not

produced quickly enough. This allegation is entirely without merit. First, it should be noted that

Amazon did not propound any discovery requests pertaining to Adrea until October 11, 2010.

Approximately two weeks later, on October 29, 2010, plaintiff began producing the requested

documents, including its operating agreement, as specifically requested by Amazon. Given that

the operating agreement ███████████████████████████████, Amazon cannot seriously

contend that it was "belatedly produced." Plaintiff continued to satisfy its discovery obligations

on a rolling basis and produced a large number of documents pertaining to the formation of

Adrea.

Amazon argues, in addition, that certain documents relating to the formation of Adrea,

such as licensing information, should have been produced earlier because they may have been

responsive to extant discovery requests. If there was any delay in production, it is of Amazon's

own making. Despite Amazon's overbroad document requests, plaintiff made every effort to

collect and produce responsive documents. For example, Mr. Holbert, Discovery's document

collection witness, made clear that documents relating to licensing were collected:



(Ahn Decl. Ex. 20 at 176:17-177:1.)

As Amazon is well-aware, document collection and production are not instantaneous

processes. For example, despite that fact that plaintiff propounded discovery requests to

Amazon on September 18, 2009 (*see* Ahn Decl. Ex. 38 at Request for Production No. 7.), it did

not receive documents responsive to the vast majority of those requests until 5 months later, on

January 29, 2010. (*See* Ahn Decl. Ex. 39 at 4.) Even after a production, parties typically meet

and confer to discuss the thoroughness of collections, as well as follow up document requests.

As detailed in Adrea's Motion to Strike Belatedly Produced Documents (D.I. 304), Amazon

produced on March 11, 2011, nearly six weeks after the original close of fact discovery, a

significant number of documents that were responsive to plaintiff's September 18, 2009 requests

for production, which had been outstanding for over a year and a half.

When counsel for plaintiff represented to Amazon on July 30, 2010 that it had

"completed its production of responsive, non-privileged documents from Mr. Rosenstock," this

representation was true. (D.I. 300 at 8.) Amazon alleges that it was false because an email chain

dated July 1, 2010 including Mr. Rosenstock had not yet been produced. (*See id.* at 7-8.)

Amazon fails to recognize, however, that the eventual production of this email chain is the result

of plaintiff's diligence in refreshing its document collections and productions. Far from being

concealed, the cited email chain stands as a testament to the comprehensiveness of plaintiff's

production and willingness to satisfy Amazon's document requests.

### 5. Amazon Has Taken Full Discovery On "Valuations" And ███████ And Has Suffered No Prejudice

Amazon has failed to demonstrate how it has been prejudiced. Far from being denied

discovery into "valuations" and ██████████████████████

█████████████████████, all of the joint venture members provided documents and

testimony pertaining to the lack of such "valuations" and ███████████████. (*See*

Ahn Decl. Ex.8 at 27:11-14; 28:15-29:6; 31:13-17; 145:3-16; Ex. 35 at 193:8 – 194:10; Ex. 34 at

1-2; Ex. 37 at 111:7 – 112:11; & Ex. 36 at 84:4– 14.)

In addition, even if there were any merit to Amazon's contention that it was somehow

prejudiced because it received Adrea-related documents towards the close of fact discovery, it

stands to reason that the prejudice to plaintiff is ten times greater. From the moment it first

produced a document relating to the formation of Adrea to the end of fact discovery, plaintiff

produced approximately 87,000 pages of documents. In comparison, Amazon produced

approximately 833,000 pages of documents in the same time frame. And while plaintiff's

production relatively small in size, Amazon's document dump was a full one third of its entire

production. In juxtaposition, it should be clear which party engaged in dilatory discovery tactics.

### 6. Amazon's Attempt To Suppress Evidence Through A False Claim Of Discovery Violations Should Be Rejected

Amazon seeks to exclude all the actual "valuation" documents that it demanded be

produced because it does not like what it found, namely, that all of these documents reflect

assessments of the high value of the patents in suit. In effect, Amazon is asking the Court to

limit the universe of "valuation" evidence to a single document ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████. Amazon's request for Court-ordered suppression and

fabrication of "evidence," based on specious claims of discovery violations, is absurd and made

in bad faith.

Given the massive scope of the preclusion requested by Amazon, plaintiff would suffer

severe prejudice if it is not allowed to rely on "any documents or testimony relating to the value

of the asserted patents." (D.I. 300 at 29.) This is particularly true where Amazon has taken

significant discovery on this subject, often at great expense to plaintiff in the form of overbroad

production requests and multiple, lengthy depositions. The documents and testimony highlight

the extraordinary value of the patents in suit, as well as place into context ███████████

████████████████████████████████. Without this information, the fact finder

would be severely handicapped in fairly evaluating the damage to plaintiff caused by Amazon's

continuing infringement.

Because Amazon itself is responsible for the production of the documents discussed in its

motion through its overbroad, unreasonable demands, it should not now be allowed to pretend

that this information does not exist, or to prevent plaintiff from relying on any other documents or testimony, including expert testimony, relating to the value of the asserted patents. Amazon's requested relief is overly broad and if granted, would severely prejudice plaintiff.

## V.   PLAINTIFF IS ENTITLED TO ITS COSTS AND EXPENSES RELATED TO PREPARING THIS OPPOSITION

As demonstrated above, Amazon's ad hominem attacks against plaintiff and its counsel are baseless. With its mischaracterizations, factual inaccuracies, and defamatory remarks directed at counsel and client representatives, Amazon's motion is the epitome of bad faith litigation tactics. This comes as no surprise, as Amazon has engaged in such behavior since the inception of this litigation. As only one other recent example, during the special master nomination process, Amazon had the audacity to nominate as its candidate for a "neutral" arbiter a former partner of Amazon's co-lead counsel. (*See* Ahn Decl. Ex. 40.) And when plaintiff learned of this disingenuous tactic, Amazon claimed that it was *Amazon* that was somehow prejudiced because of the "late" objection to this candidate. In light of the fact that this motion serves no purpose other than to harass plaintiff and to drive up the costs of prosecuting its infringement case against Amazon, the Court should sanction Amazon in accordance with its inherent powers and require it to pay plaintiff's expenses associated with defending against this motion. *See In re Intel Corp. Microprocessor Antitrust Litigation*, 562 F. Supp. 2d 606, 610 (D. Del. 2008) (imposing monetary sanctions and finding that "[t]here can be no dispute that Federal courts have inherent power to impose sanctions for a party's misconduct").

## CONCLUSION

For the foregoing reasons, Amazon's motion should be denied. Given the frivolous nature of the claims and support contained in the motion, Amazon should also be required to pay plaintiff's costs in having to prepare this opposition.

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

/s/ Jeffrey T. Castellano

OF COUNSEL:
Michael A. Jacobs
Richard S.J. Hung
Deok Keun Matthew Ahn
Patrick J. Zhang
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
(415) 268-7000

Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jcastellano@ycst.com

*Attorneys for Adrea, LLC, Discovery
Communications, Inc., Discovery
Communications, LLC, and The Discovery
Channel Store, Inc.*

Dated:  August 29, 2011

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, Esquire, hereby certify that on August 29, 2011, I caused a copy

of the foregoing document to be served on the following counsel of record in the manner

indicated below:

### BY EMAIL

Richard L. Horwitz
David E. Moore
Potter, Anderson & Corroon
6th Floor, Hercules Plaza
1313 N. Market Street
Wilmington, DE 19801
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Josh A. Krevitt
Y. Ernest Hsin
Sarah E. Piepmeier
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
jkrevitt@gibsondunn.com
ehsin@gibsondunn.com
spiepmeier@gibsondunn.com

Brian Ankenbrandt
Gibson, Dunn & Crutcher LLP
1801 California Street
Suite 4200
Denver, CO 80202
bankenbrandt@gibsondunn.com

Brooke L. Myers
Jacon C. Lo
Jennifer J. Rho
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
bmyers@gibsondunn.com
jlo@gibsondunn.com
jrho@gibsondunn.com

Stuart M. Rosenberg
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
srosenberg@gibsondunn.com

Mark Reiter
Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
mreiter@gibsondunn.com

William F. Cronin
Corr Cronin Michelson Baumgardner & Preece LLP
1001 Fourth Avenue
Suite 3900
Seattle, WA 98154
wcronin@corrcronin.com

YOUNG CONAWAY STARGATT & TAYLOR LLP

/s/ Jeffrey T. Castellano
Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19801
(302)-571-6600
jcastellano@ycst.com

*Attorneys for Plaintiff Adrea, LLC, Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc.*

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, hereby certify that on September 6, 2011, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz
> David E. Moore
> Potter, Anderson & Corroon
> 6th Floor, Hercules Plaza
> 1313 N. Market Street
> Wilmington, DE 19801
> rhorwitz@potteranderson.com
> dmoore@potteranderson.com

I further certify that on September 6, 2011, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

### BY E-MAIL:

> Josh A. Krevitt
> Y. Ernest Hsin
> Gibson, Dunn & Crutcher LLP
> 200 Park Avenue
> New York, NY 10166
> jkrevitt@gibsondunn.com
> ehsin@gibsondunn.com

> Brooke L. Myers
> Jacon C. Lo
> Jennifer J. Rho
> Gibson, Dunn & Crutcher LLP
> 333 South Grand Avenue
> Los Angeles, CA 90071
> bmyers@gibsondunn.com
> jlo@gibsondunn.com
> jrho@gibsondunn.com

Stuart M. Rosenberg
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
srosenberg@gibsondunn.com

Mark Reiter
Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
mreiter@gibsondunn.com

William F. Cronin
Corr Cronin Michelson Baumgardner & Preece LLP
1001 Fourth Avenue
Suite 3900
Seattle, WA  98154
wcronin@corrcronin.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jeffrey T. Castellano*

Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19801
(302)-571-6600
jcastellano@ycst.com

*Attorneys for Adrea, LLC, Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc.*

YCST01:11348319.1

900002.0008