## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ADREA, LLC,                              )
                                         )
        Plaintiff,                       )
                                         )        C.A. No. 10-600-ER
        v.                               )        (Consolidated)
                                         )
AMAZON.COM, INC.,                        )        DEMAND FOR JURY TRIAL
                                         )
        Defendant.                       )        **PUBLIC VERSION**
_____              )
                                         )
                                         )
AMAZON.COM, INC.,                        )
                                         )
        Counterclaim Plaintiff,          )
                                         )
        v.                               )
                                         )
ADREA, LLC, DISCOVERY                    )
COMMUNICATIONS, INC., DISCOVERY          )
COMMUNICATIONS, LLC and THE              )
DISCOVERY CHANNEL STORE, INC.,           )
                                         )
        Counterclaim Defendants.         )

---

### AMAZON.COM, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE ADREA FROM RELYING ON UNDISCLOSED VALUATIONS AND FOR OTHER REQUESTED RELIEF DUE TO PLAINTIFFS' DISCOVERY MISCONDUCT

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt
Y. Ernest Hsin
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Dated: September 14, 2011
**PUBLIC VERSION**
**Dated: September 21, 2011**

POTTER ANDERSON & CORROON LLP

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Amazon.com, Inc.*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ - 1 -

II.   ARGUMENT ...................................................................................................... - 3 -

    A.    Adrea Concedes That Its Document Production Even Today Remains
        Incomplete ................................................................................................. - 3 -

    B.    Adrea Improperly Concealed Discovery's ████████████
        ████ During The Pendency Of The Lawsuit ................................................ - 3 -

        1.   Through Its Silence, Adrea Concedes That It Withheld Non-
            Privileged Information Regarding The Adrea Transaction .................... - 4 -

        2.   The Parties Negotiating ████████████████ Were
            Adverse To Each Other And Had No Basis To Claim The
            Common Interest Privilege ................................................................ - 7 -

    C.    Through Its Silence, Adrea Concedes That The Withheld PCT Capital
        Materials Are Not Privileged And Were Improperly Withheld ...................... - 11 -

    D.    Through Its Silence, Adrea Concedes That The Withheld Ocean Tomo
        Materials Are Not Privileged And Were Improperly Withheld ...................... - 13 -

    E.    Adrea's Discovery Tactics Have Caused Severe Prejudice To Amazon ......... - 15 -

III.  CONCLUSION ................................................................................................. - 18 -

i

# TABLE OF AUTHORITIES

## CASES

*AAB Joint Venture v. United States,*
75 Fed. Cl. 448 (2007).................................................................................................. - 7 -

*Corning Inc. v. SRU Biosystems, LLC,*
223 F.R.D. 189 (D. Del. 2004)...................................................................................... - 4 -

*Hunton & Williams v. U.S. Dept. of Justice,*
590 F.3d 272 (4th Cir. 2010)......................................................................................... - 9 -

*In re Unilin Décor N.V.,*
153 Fed. Appx. 726 (Fed. Cir. 2005) ........................................................................... - 7 -

*Katz v. AT&T Corp.,*
191 F.R.D. 433 (E.D. Pa. 2000) .................................................................................... - 8 -

*Net2Phone, Inc. v. eBay, Inc.,*
C.A. No. 06-2469 (KSH), 2008 WL 8183817 (D.N.J. June 26, 2008) .............. - 8, 9-

*S.E.C. v. Wyly,*
No. 10-cv-5760, 2011 WL 3055396 (S.D.N.Y. July 19, 2011) .............................. - 9 -

*SmithKline Beecham Corp. v. Apotex Corp.,*
232 F.R.D. 467 (E.D. Pa. 2005) .................................................................................... - 8 -

*SR Int'l Bus. Insur. Co. Ltd. v. World Trade Cntr. Prop. LLC,*
No. 01 Civ 9291, 2003 WL 193071 (S.D.N.Y. Jan. 29, 2003) ................................ - 8 -

*Tulip Computers Int'l B.V. v. Dell Computer Corp.,*
C.A. No. 00-981-KAJ-MPT, 2002 WL 31556497 (D. Del. Nov. 18, 2002).......... - 8 -

*Union Carbide Corp. v. Dow Chem. Co.,*
619 F. Supp. 1036 (D. Del. 1985) ................................................................................ - 9 -

*Upjohn Co. v. United States,*
449 U.S. 383 (1981) ....................................................................................................... - 4 -

## I.      INTRODUCTION

Despite the generous length of Adrea's Opposition (31 pages), as well as of the

accompanying declaration of Adrea attorney Matthew Ahn (43 paragraphs), Adrea fails to

address, much less rebut – *in any way* – the following *facts*:

> The PCT Capital and Ocean Tomo Reports are not privileged, and the fact that
> PCT and Ocean Tomo prepared reports certainly is not privileged.  Yet the reports
> prepared by PCT Capital and Ocean Tomo were not disclosed in Adrea's
> Interrogatory Responses or produced by Adrea until the very last day of fact
> discovery.

> Even though Adrea and its counsel possessed copies of the PCT Capital Report,
> they neither produced it nor listed it on their privilege log until the last day of fact
> discovery.

> The fact that Discovery was engaged in an ███████████████████████
> ████████████ is not privileged.  Yet Adrea did not disclose that fact in its
> interrogatory responses until after the transaction was consummated and
> approximately one month before the close of fact discovery.

> The non-attorney communications leading up to the formation of Adrea (*e.g.*,
> communications between executives at Discovery and Intertrust) are not
> privileged.  Yet no such communications were produced during the entirety of the
> ████████

> In response to subpoenas, various third parties have produced responsive
> communications relating ███████████████████████
> ██████████ Adrea has not produced these same documents and
> has never explained this failure.

Rather than address these facts, Adrea does two things.  First, it argues that cryptic

privilege log entries ████████████████████████████████████ on a *third-*

*party's* privilege log are adequate substitutes for Adrea's production and disclosure of materials

that are not privileged or protected by the work product *in the first place.*  Clearly, they are not.

Such cryptic entries do not constitute evidence and are meaningless to a jury; indeed, their whole

purpose is to obscure rather than reveal evidence, and Adrea's description above most assuredly

provided no inkling that Adrea had retained a company called PCT Capital ████████████

████████████████████████████████████████████████

And more to the point, these cryptic privilege log entries do not excuse the repeated (and false) representations by Adrea's counsel that they had (i) conducted a thorough investigation, (ii) produced all responsive documents, and (iii) provided all responsive information in interrogatory responses. If it means anything, an attorney's certification of written discovery responses pursuant to Fed. R. Civ. Proc. 26(g) must mean that Amazon is permitted to rely on the accuracy of that representation, particularly when it is provided after multiple meet and confer efforts. Here, Adrea's certifications were demonstrably false, and nothing in the Opposition explains why that was so.

Second, Adrea litters its Opposition with carefully chosen language intended to suggest that its discovery conduct was innocent, but that language falls suspiciously short of representing to the Court that those suggestions are in fact true. For example, Amazon explained that despite Adrea's July 20, 2010 affirmative representation that it had completed its production of documents from Discovery executive Jay Rosenstock, at the time of that representation Mr. Rosenstock actually had many additional responsive materials that Adrea had not produced. D.I. 300, Amazon's Opening Brief in support of Motion ("Amazon Brief") at 7-8. Adrea now suggests that the late production of these additional documents is a tribute to "plaintiff's diligence in refreshing its document collections and productions." D.I. 377, Adrea Opposition to Amazon's Motion ("Adrea Opp.") at 28. But that alleged "diligence" fails to explain why Adrea represented the production was complete in the first place and also fails to explain why it took nearly six additional months for Adrea to produce Mr. Rosenstock's documents. Neither Adrea's Opposition nor Mr. Ahn's declaration accounts for these questions – not just for this example, but for all of the examples Amazon recited in its motion.

While making representations to contrary, Adrea withheld non-privileged information and materials throughout this case. Amazon's motion for sanctions should be granted.

## II.    ARGUMENT

### A. Adrea Concedes That Its Document Production Even Today Remains Incomplete

As the Court is aware, this Motion is about more than just the materials and information that Adrea concealed and only *belatedly* produced; it also extends to responsive materials that even today – *seven months* past the close of fact discovery – Adrea continues to withhold. Amazon Brief at 15-16.

Third party productions of responsive materials – including materials sent to or from Adrea / Discovery executives that Adrea itself never produced – evidences Adrea's inexplicably selective and incomplete production. Among other things, such documents relate to Discovery's agreement to ██████████████████████████████████████████████████████ ███████████████████████████████████████████ Adrea cannot reasonably contest the relevance of communications regarding a ████████████████████ ████████████████████████ Accordingly, Amazon can only speculate that Adrea selectively chose not to produce this document, and others like it, because Adrea thought such documents might hurt its case.

Despite the serious and *ongoing* nature of this misconduct, Adrea's Opposition is absolutely silent on Adrea's failure to produce these materials. There is no explanation about why the documents have not been produced, there is no protestation that the materials are not responsive, and there is no representation that additional, responsive documents remain unproduced. For this reason alone, sanctions are appropriate.

### B. Adrea Improperly Concealed ████████████████████████ ████████ During The Pendency Of The Lawsuit

Sanctions also are independently appropriate in view of Adrea's concealment of Discovery's ████████████████████████. Here again, the Court's decision is simplified by Adrea's concession that in the ████████ during which ████████████████

- 3 -

███████████████ Adrea did not produce a *single document* relating to those negotiations nor did it disclose those negotiations in its Interrogatory Responses.[1] Instead of disputing these facts, Adrea's Opposition focuses on its assertion that certain documents relating to that transaction may be protected by the joint defense and common interest privileges. Adrea Opp. at 23-26. As described below, even if the privileges applied (and they do not), they certainly would not excuse Adrea's concealment of *non-privileged* aspects of those negotiations.

### 1. Through Its Silence, Adrea Concedes That It Withheld Non-Privileged Information Regarding The Adrea Transaction

The *fact* that Discovery was engaged in an ██████████████████████ ██████ and the *non-attorney communications* made to advance that effort are not privileged, and both should have been disclosed in response to Amazon's Interrogatories and Requests for Production. "The common interest doctrine is an exception to the general rule that the attorney-client privilege will be waived following disclosure of *privileged materials* to a third party." *Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004) (emphasis added and citation omitted). Thus, as Adrea itself concedes, it has no applicability to communications between "two non-attorney personnel." Adrea Opp. at 25-26. And like the attorney-client privilege on which it is based, the common interest privilege cannot protect from disclosure underlying facts. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts

---

[1] Adrea asserts that the ██████████ in the Adrea formation agreements is not ████████ and therefore "██████████████████ Adrea Opp. at 23. This assertion is disingenuous at best. Even the Rule 30(b)(6) witness designated by Philips (one of the Adrea partners) confessed that ████████████████████████████████████████ ████████████████████ He concluded that ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████

by those who communicated with the attorney. . . .").  Despite these obvious limitations on the

scope of the common interest privilege, Adrea withheld for ▮▮▮▮▮ both the fact of the

underlying negotiations, as well as non-privileged communications relating to those negotiations.

The non-privileged communications and documents relating to the Adrea transaction

should have been disclosed at least in response to Request for Production No. 15, which calls for

materials related to "licensing or negotiating any transfer of rights or interests in the [asserted

patents]."[2]  Myers Motion Decl., Ex. 1.  There is no question that such non-privileged materials

existed prior to August 2010.  For example,



These

communications clearly are not privileged, and are responsive to Amazon's Requests for

Production.  But not only did Adrea not produce these documents during the ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ it has *never* produced these documents even

after the close of the transaction.  Instead, Amazon only received these highly responsive

---

[2]  After Amazon learned of Adrea's existence, it propounded additional discovery requests
    targeted at Adrea.  Contrary to Adrea's intimations, Adrea Opp. at 26, these later requests do
    nothing to justify Adrea's failure to produce documents responsive to Amazon's earlier
    requests, which were served on September 28, 2009.  Tellingly, Adrea never even attempts to
    argue that the materials at issue are not responsive to Request for Production No. 15.  Adrea
    Opp. at 27.

[3]  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

documents in response to a subpoena issued to third-party Intertrust. Adrea's Opposition, and the accompanying declaration of Mr. Ahn, offers no explanation for this failure, and more significantly, the representations Mr. Ahn made to Amazon's counsel regarding the supposed completeness of Adrea's production.

Moreover, the fact of the underlying negotiations should have been disclosed at least in response to Interrogatory No. 9, which calls for an identification of "any license, request for license, offer to license or possible license of any of the [asserted patents]" as well as of materials concerning "the value of the" asserted patents. Amazon Brief at 5, n.6 (quoting Interrogatory No. 9). But despite multiple rounds of supplementation, Adrea's responses to Interrogatory No. 9 said nothing about the formation of Adrea until December 1, 2010, nearly ██████████████████████████ and four months after Adrea substituted into the case, thereby announcing itself to Amazon. Myers Motion Decl at Ex. 37 (Oct. 28, 2009), Ex. 39 (Apr. 16, 2010), Ex. 27 (Dec. 1, 2010). Again, Adrea's Opposition, and the accompanying declaration of Mr. Ahn, offers no explanation for this failure. (Indeed, Adrea's 31-page Opposition fails to mention Interrogatory No. 9 *at all*.)

In its Opposition, Adrea attempts to deflect these serious deficiencies, stating that "document collection and production are not instantaneous processes." Adrea Opp. at 27. But this response is unsatisfactory for several reasons.

*First*, a careful reading of this statement reveals that Adrea is not asserting that it failed to produce responsive documents because it had yet to collect them. Instead, Adrea makes only a rhetorical statement about the document collection process in general: "As Amazon is well-aware, document collection and production are not instantaneous processes." *Id.*

*Second*, and relatedly, any suggestion that the delay was attributable to the fact that Adrea's attorneys had not yet collected responsive documents is inconsistent with the established facts. On July 30, 2010, counsel for Adrea made an unambiguous representation that it had "completed its production of responsive, non-privileged documents from" Discovery executive Jay Rosenstock, who partook in the two communications with Mr. Shamoon described above.

- 6 -

Myers Motion Decl., Ex. 13.  Yet, none of these communications had been produced at the time Adrea's counsel represented that the production of Mr. Rosenstock's materials was "complete," and, as noted above, Adrea has *never* produced some of these communications.

At the very least, Adrea's doublespeak is reason for this Court to grant Amazon's request for discovery to determine "the extent to which any of the conduct at issue in this Motion was premeditated" and "the specific individuals responsible for the conduct at issue in the Motion." Amazon Brief at 29.[4]

*Third*, regardless of the state of its document collection efforts, Adrea concedes that its counsel was aware of the Adrea negotiations.  Even if no documents relating to those negotiations had been generated or collected, it was incumbent on Adrea and its counsel to disclose the fact of those negotiations in response to Amazon's interrogatories.  *See AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 456 (2007) (citing *In re Unilin Décor N.V.*, 153 Fed. Appx. 726 (Fed. Cir. 2005) ("[F]or each of the interrogatories for which Defendant seeks to invoke the privilege, Defendant must set forth objective facts to establish that the requirements [for the assertion of privilege] are met.  To the extent that Plaintiff's Interrogatories request dates of reviews, identity of documents and names of individuals, the attorney-client privilege surely does not apply.").)  Yet they failed to do so.

### 2. The Parties Negotiating To ▮▮▮▮▮▮▮▮▮▮ Were Adverse To Each Other And Had No Basis To Claim The Common Interest Privilege

Because Adrea concealed even *non-privileged* information pertaining to ▮▮▮▮▮▮ ▮▮▮▮▮▮ the Court need not even reach Adrea's claim that a subset of the materials are

---

[4] A similar issue arises with respect to a ▮▮▮▮▮ email exchange between Mr. Rosenstock and Mr. Shamoon that was not produced by the time Adrea represented it had produced all of Mr. Rosenstock's documents.  Myers Motion Decl. at Ex. 34.  Adrea suggests that this email was belatedly produced only because of an unintentional lapse in Adrea's collection procedures.  Adrea Opp. at 27-28.  Limited discovery will shed light on whether Adrea's counsel in fact had possession of this email well before it was produced to Amazon.

subject to the common interest privilege in order to determine that Adrea has engaged in sanctionable behavior. Nevertheless, for completeness, Amazon now addresses these arguments.

At the outset, it is important to keep in mind that Adrea bears the burden to prove that the underlying communications are privileged. *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 472 (E.D. Pa. 2005). Adrea cannot, and has not, meet this burden with respect to the *pre-formation* communications by and between Discovery, Sony, Intertrust and Philips. For at least two reasons, those communications (whether by non-legal personnel, in-house counsel and/or outside counsel) are not privileged, regardless of whether they relate to the Amazon litigation or the Adrea formation.

First, to be protected from disclosure, the communications at issue must have been solely related to the provision of legal advice. Business discussions relating to the acquisition and license of ███████████ do not fall within the ambit of the common interest and joint defense privileges. *See Katz v. AT&T Corp.*, 191 F.R.D. 433, 437 (E.D. Pa. 2000) (the common interest privilege is not applicable if the documents sought are not privileged in the first place.); *SR Int'l Bus. Insur. Co. Ltd. v. World Trade Cntr. Prop. LLC*, No. 01 Civ 9291, 2003 WL 193071, at *1 (S.D.N.Y. Jan. 29, 2003) (citation omitted) ("A business strategy which happens to include a concern about litigation is not a ground for invoking the common interest rule."); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, C.A. No. 00-981-KAJ-MPT, 2002 WL 31556497, at *1, 2 (D. Del. Nov. 18, 2002) (observing that the "strategies and approaches to licensing" of a patent do not implicate legal issues); *cf. Net2Phone, Inc. v. eBay, Inc.*, C.A. No. 06-2469 (KSH), 2008 WL 8183817, at *8 (D.N.J. June 26, 2008) (characterizing arms-length negotiations as "commercial transaction[s]").

Second, the common interest privilege cannot protect from disclosure communications between parties who have not yet agreed to pursue a common legal interest (*i.e.*, pre-formation communications). In other words, with respect to every single communication at issue, Adrea must prove that, at the time the communications were made, "(1) . . . all clients and attorneys with access to the communications had in fact agreed upon a joint approach to the matter

- 8 -

communicated; and (2) that the information was imparted with the intent to further the common purpose." *S.E.C. v. Wyly*, No. 10-cv-5760, 2011 WL 3055396, at *2 (S.D.N.Y. July 19, 2011); *see also Hunton & Williams v. U.S. Dept. of Justice*, 590 F.3d 272, 274, 285-87 (4th Cir. 2010); *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1050 (D. Del. 1985) (concluding that communications sent before Carbide decided to take a license do not reflect the joint pursuit of a common interest); *Net2Phone*, 2008 WL 8183817, at *8 (holding that negotiations of the price one party would pay for the other party's shares amounted to a commercial transaction between legally separate entities, defeating any claim of privilege). "Where the parties have not yet agreed to proceed jointly on the matter communicated, the common interest rule will not apply." *S.E.C.*, 2011 WL 3055396, at *2. Amazon's Brief cited documents that supported its contention that, before the Adrea transaction was consummated, the parties were negotiating for ████████████████ at arms-length and in their own self-interest. Amazon Brief at 15-16. Because the parties did not jointly own or control the patents at issue, they had no common interest in the enforcement of those patents; only Discovery had standing to assert the patents.

That the Adrea negotiations lasted ██████ is itself strong evidence that not every communication between the parties involved issues on which all clients and attorneys had "agreed upon a joint approach to the matter communicated." This is further confirmed by the testimony of several Adrea witnesses. *See* Myers Reply Decl. at ████████████████

████████████████████████████████████████████
████████████████████████████████████████

Finally, Adrea attempts to side-step the fact that it waived any alleged privilege associated with the ██████████ when it produced selective emails about the ████████ ███, *see e.g.*, Myers Motion Decl., ██████, by now conceding that the emails were not privileged in the first place. *Compare* Amazon Brief at 10-11, 23-24 *with* Adrea Opp. at 25-26. In essence, Adrea seeks improperly to use this selective document as a sword to "place" the █ ██████████ "into context." *See* Adrea Opp. at 29. But privilege – to the extent one exists – does not apply selectively; it is an all or nothing proposition.

Adrea's selective production, moreover, is even more egregious because Adrea (i) produced this document at the very close of fact discovery, (ii) produced *no* documents relating to how the ██████████ was chosen prior to this late, selective production, (iii) produced no other documents regarding how the ██████████ was chosen, (iv) instructed *all* corporate witnesses not to answer questions relating to how the ██████████ was chosen, and (v) produced the document only to support its contention that the ██████████ ██████████████████████ This dilatory and self-serving production tactic provides Amazon no opportunity to test the veracity of the contention for which the document was produced. Indeed, it would be manifestly unfair to force Amazon and the jury to contend with the meaning of a selectively produced, post-formation document relating to the alleged import of the ██████ ███ when not one witness with direct knowledge of how that ██████████ was chosen has been permitted to disclose their knowledge and all other documents regarding ██████████ have been withheld. This is precisely the injury that Federal Rule of Evidence 502 was enacted to protect. If, in fact, these documents are privileged as Adrea maintained, Adrea should not be permitted to side-step the consequences of its intentional disclosure of selective "privileged" documents pursuant to Rule 502.

Accordingly, Adrea cannot meet its burden of demonstrating that the withheld communications are subject to the joint defense or common interest privilege. As with the

materials addressed in Section II.A above, Amazon continues to be prejudiced by Adrea's misconduct because it still has not received these materials.

### C. Through Its Silence, Adrea Concedes That The Withheld PCT Capital Materials Are Not Privileged And Were Improperly Withheld

The facts are clear and beyond dispute: The PCT Capital materials were first generated ▮▮▮▮▮; Discovery received a copy of the report contemporaneously with its creation; the PCT Capital materials ▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and Discovery executives possessed and used the materials at issue during the pendency of this litigation. Despite these facts, Adrea *never* disclosed the PCT Capital materials -- not in its privilege log, not in its document production, and not in its Interrogatory Responses.

Rather than explain these failures, Adrea states that this is a "no harm, no foul" situation, because these materials appeared as entries in *third-party* Arent Fox's privilege log (which contained over 200 entries). But far from excusing Adrea's actions here, the Arent Fox privilege log only highlights the inexcusable nature of Adrea's actions.[5]

To begin with, the fact remains that Adrea, Discovery, and their counsel were in possession of the PCT Capital materials, but failed to produce, describe, or log those materials in *their own* discovery responses. Indeed, Adrea and its counsel continued to deny the very existence of the PCT Capital materials even *after* its Rule 30(b)(6) witness affirmatively testified to their existence, and Adrea's counsel asked questions about the nature of those materials. *See* Amazon Brief at 3, 11-12. If there is evidence that this concealment was anything but deliberate, such evidence does not appear in Adrea's Opposition or in the accompanying declaration of Adrea's attorney Matthew Ahn.

---

[5] While Arent Fox's privilege log is not the subject of this Motion, it is worth noting that Adrea does not even attempt to argue that the PCT Capital materials in fact contained work product, or that Arent Fox had a basis for believing that they contained work product.

Moreover, Adrea's suggestion that "[b]ecause these documents were on [Arent Fox's] privilege log, they were in fact disclosed" serves as its own counterpoint. Adrea Opp. at 9. The "disclosure" at issue amounts to nothing more than five entries in a third-party log that spans over 200 entries, and which was served in August 2010 (more than ███████████████ ████ and more than a year after this litigation had begun). Myers Reply Decl., Ex. 2 at 11. All five entries reflect that documents had been withheld on the basis of the work product doctrine, and all have the same, cryptic description: "███████████████████████████████ ██████ *Id.* There is no suggestion in the log that the █████████████████████████████ ████████████████████████████ that high-level Discovery executives received and extensively utilized the report during the pendency of this litigation, or that the documents at issue would, in Adrea's words now, demonstrate the "extraordinary value of the patents in suit and . . . assist the fact finder in fairly evaluating the damage to plaintiff caused by Amazon's continuing infringement." *See* Adrea Opp. at 6-7.

The vague and cryptic privilege log descriptions are a stark contrast to the Interrogatory Responses Adrea finally provided on the ***last*** day of fact discovery:

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Myers Reply Decl., Ex. 3 at 9-10. Unlike the cryptic privilege log entries that third-parties provided, Adrea's interrogatory response highlights that the nature of the work was ███████ (and not legal) and that the work was focused on ███████████████████. Both of these facts would have raised a red flag for Amazon (as they should have for Adrea), that the materials are highly responsive, and unlikely to be protected by the work product doctrine.

Regardless of whether the contents of the ███████ were protected by the work product doctrine, the fact that such analysis was conducted is not protected by the doctrine

should have been disclosed by Adrea.[6]  At a minimum, the basic information about PCT Capital's work should have been disclosed to Amazon so that attention could be focused on the Report, and so that this Court could adjudicate any frivolous assertions of work product protection.  Adrea's failure to identify – or itself even log – the PCT Capital materials precluded Amazon from learning of and reviewing the documents, and testing any alleged disclosure immunity claimed.  Adrea should not now be permitted to benefit from its decision to withhold disclosure of these documents simply because Amazon stumbled upon the documents through another source.

### D.  Through Its Silence, Adrea Concedes That The Withheld Ocean Tomo Materials Are Not Privileged And Were Improperly Withheld

As explained in Amazon's opening papers, the PCT Capital materials were not ███████

█████████████████████████████████████

Ocean Tomo.  Like PCT Capital, Ocean Tomo first ███████████████████████████

███████████████████████████.  But despite now describing Ocean Tomo's work as helping to "highlight the extraordinary value of the patents in suit" and as capable of assisting "the fact finder in fairly evaluating the damage to plaintiff caused by Amazon's" alleged infringement as Adrea does now, Adrea Opp. at 6-7, Adrea never produced any materials from Ocean Tomo until the very last day of fact discovery.  Indeed, Adrea refused to produce the Ocean Tomo materials even after its Rule 30(b)(6) witness testified as to the existence of the documents, and Amazon specifically requested the materials.

---

[6]  Adrea cannot dispute this point now.  Indeed, after Discovery's Rule 30(b)(6) witness (inadvertently) disclosed the existence of the PCT Capital materials, even Adrea's counsel voluntarily solicited testimony about the existence and nature of the PCT Capital materials.
██████████████████████████████████████████████████████
████████████████████████████████████████████

Rather than acknowledge its misconduct, Adrea mockingly describes its late production of the Ocean Tomo materials as a magnanimous gesture, made only out of a desire "to obviate the need for motion practice." Adrea Opp. at 5. Nothing could be further from the truth.

To begin with, Adrea entirely fails to explain why it concealed the Ocean Tomo materials from its Interrogatory Responses. No later than June 25, 2010, Adrea and its counsel obviously were aware of and had read ████████████████████████████████████ they could not otherwise have logged the documents on their privilege log. Moreover, Adrea's ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ But despite this admitted knowledge about the Ocean Tomo materials, Adrea's December 1, 2010 Interrogatory Responses – served less than two months prior to the close of fact discovery – make no mention of these materials that had been prepared ████████████████████

Adrea's motivation for withholding the information from its Interrogatory Responses is as obvious as it is sanctionable. First, it must have known that the cryptic description on its privilege log ████████████████████████████████████████████ would give no real notice as to the nature of the work performed or that ████████████████████ ████████████████████. Indeed, in stark contrast to the Interrogatory Responses that Adrea provided on the last day of fact discovery, ████████████████████████████████ █████████████████

████████████████████████████████████████████████████ ████████████████████████████████████████ Put simply, Adrea cannot explain why it did not timely provide this information as opposed to its cryptical and incomplete privilege log entry.

Second, Adrea designed its privilege log description to create the *false* impression that the document reflected "legal advice from Arent Fox." Just as with the PCT Capital materials, there was never any basis for these documents to appear on a privilege log in the first place. In that regard, it is worth noting that Adrea in its Opposition does not even attempt to argue that the Ocean Tomo materials in fact are privileged; they *concede* that the materials are not privileged and should not have been hidden in a privilege log in the first place. *See* Adrea Opp. at 4-5.

Equally important, Adrea does not attempt to explain how these non-privileged materials found their way onto Adrea's privilege log. The explanation is highly unlikely to be an innocent one because nothing on the face of the Ocean Tomo Report suggests that it actually incorporated legal advice from Arent Fox. To the contrary, the first sentences of both Reports make clear that Ocean Tomo was retained to provide ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████ If Adrea had a reasonable justification for concluding that the Ocean Tomo materials reflected "legal advice from Arent Fox," one would have expected Adrea to provide pertinent details such as 1) the identity of the attorney who made the determination that the reports contained legal advice, 2) the diligence that attorney performed before making this determination, and 3) what information led the attorney to determine that the Ocean Tomo materials contained "legal advice from Arent Fox." This misrepresentation of legal advice alone demonstrates the improper and extreme efforts undertaken by Adrea and its counsel to hide responsive information requested by Amazon.

### E.  Adrea's Discovery Tactics Have Caused Severe Prejudice To Amazon

Finally, Adrea's attempts to downplay the prejudice to Amazon are profoundly misguided.

- 15 -

To begin with, Adrea's Opposition completely fails to address the fact that Adrea's document production – even to this day – remains demonstrably deficient. *See supra* at section II.A. Because Adrea refuses to – and cannot – certify that its document production is complete, Amazon unquestionably continues to be prejudiced by Adrea's misconduct. There is simply no way to determine what helpful materials Amazon still has not received from Adrea.

Moreover, Adrea improperly attempts to downplay the prejudice to Amazon by isolating each act of misconduct separately, as if they were not interrelated. Adrea Opp. at 6, 10, 16, 28. In fact, the prejudice to Amazon must be evaluated in view of Adrea's repeated and continuing pattern of withholding materials until it is caught red-handed, or until circumstances make it beneficial for Adrea to selectively produce materials.

This context is important because it underscores that the behavior at issue was intentional. Even in isolation, it is difficult to believe that Adrea would have (i) completely neglected to provide non-privileged information relating to the Adrea negotiations, (ii) completely neglected to log or produce any materials relating to PCT Capital, (iii) deliberately mischaracterized the Ocean Tomo materials as containing "legal advice from Arent Fox," or (iv) failed to produce responsive documents that third parties have produced. But when one considers that Adrea did *all* of those things in a single case, despite repeated promises to "investigate," the pattern that emerges places both Adrea's intent and the prejudice to Amazon in stark relief. Amazon Brief at 18-19.

Moreover, this context also is important so one can evaluate just how blind-sided Amazon was by Adrea's concealment. Here, fact discovery spanned 22 months. For ▮▮▮▮▮ Discovery did not disclose to Amazon that it was in negotiations ▮▮▮▮▮ For 20 of those months, Adrea did not disclose to Amazon that ▮▮▮▮▮ Discovery had engaged two outside firms ▮▮▮▮▮. Because of Adrea's extraordinary efforts to conceal responsive facts, Amazon litigated most of this case and developed its damages and invalidity theories with only the shadows of the truth Adrea had selectively disclosed. Indeed, certain of the key

documents at issue were produced *after* the depositions of Discovery CEO John Hendricks, Arent Fox corporate designee Wilburn Chesser, and Discovery's Rule 30(b)(6) witness Jay Rosenstock. *See* Amazon Brief at 24-25.

If the Court harbors any lingering doubt about the prejudice to Amazon, it needs look no further than Adrea's *own* characterization of the information it concealed:

████████████████████████████████████████

████ and *will assist the fact finder in fairly evaluating the damage* to plaintiff caused by Amazon's continuing infringement. . . ." Adrea Opp. at 7 (emphasis added).

████ and will *assist the fact finder in fairly evaluating the damage* to plaintiff caused by Amazon's continuing infringement . . . ." *Id.* at 12 (emphasis added).

and *will assist the fact finder in fairly evaluating the damage* to plaintiff caused by Amazon's continuing infringement . . . ." *Id.* at 16 (emphasis added).

"[Adrea] would suffer severe prejudice if it is not allowed to rely on 'any documents or testimony relating to the value of the asserted patents.'" *Id.* at 29.

████████████████████ as well as *place into context* other ████ contained in certain documents. *Without this information*, the *fact finder would be severely handicapped* in fairly evaluating the damage to plaintiff caused by Amazon's continuing infringement." *Id.* at 30 (emphasis added).

Adrea's descriptions of the withheld information and materials leave little doubt that Amazon was prejudiced by not having access to information that allegedly ████████████ ████ and will be used to "assist the fact finder in fairly evaluating the damage." Adrea should not be permitted to withhold and misrepresent the existence of such documents without consequence, particularly when it is unable to offer any explanation for its behavior.[7]

---

[7] As Adrea recently told this Court, the lack of an "adequate explanation" for discovery lapses "makes the remedy of excluding the late-produced evidence particularly appropriate in this case." *See* D.I. 304, Adrea, LLC's Motion to Strike Belatedly Produced Documents, at 4.

If, as Adrea asserts, the materials and information at issue are powerful evidence of the value of the patents in suit, then fundamental fairness – to say nothing of the Rules of Civil Procedure – dictates that Amazon should have had the benefit of the entire discovery process to formulate its response to that evidence, including by locating former employees of Ocean Tomo, by conducting its own ███████████, and by conducting independent discovery to undermine the factual underpinnings of the Ocean Tomo and PCT Capital Reports. The limited discovery that Amazon was able to conduct (a *single* deposition relating to both PCT and Ocean Tomo, as well as a *single* deposition of each of the Adrea members), is a poor substitute for the actions Amazon would have taken but for Adrea's misconduct.

And as Adrea told the Court recently in connection with *its* efforts to strike certain Amazon materials, re-opening discovery at this stage is hardly an appropriate remedy for the misconduct at issue: "There is no cure to [Amazon's] prejudice at this stage in the case-when fact discovery has been closed for some seven months. To re-open discovery and depositions would only reward [Adrea's] willful misconduct by burdening [Amazon] with enormous additional cost. Moreover, such a re-opening of fact discovery would disrupt the orderly and efficient trial of this case by putting the parties back at square one (or at least where they were seven months ago)." D.I. 363, Plaintiff Adrea, LLC's Motion to Strike Amazon.com, Inc.'s Belated Non-Infringement Contentions, at 9.

### III.   CONCLUSION

For the foregoing reasons, Amazon's Motion should be granted.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt
Y. Ernest Hsin
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000

By:   /s/ David E. Moore
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

*Attorneys for Defendant Amazon.com, Inc.*

Dated:  September 14, 2011
**PUBLIC VERSION**
**Dated:  September 21, 2011**
1028454 / 34137

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on September 21, 2011, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on September 21, 2011, the attached document was Electronically

Mailed to the following person(s):

Elena C. Norman
Jeffrey T. Castellano
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19899-2207
enorman@ycst.com
jcastellano@ycst.com

| | |
|---|---|
| Michael A. Jacobs | Brent P. Lorimer |
| Deok Keun Matthew Ahn | Sterling A. Brennan |
| Patrick J. Zhang | L. Rex Sears |
| Richard S.J. Hung | Seth W. Black |
| Brooks M. Beard | Workman Nydegger |
| Francis C. Ho | 1000 Eagle Gate Tower |
| Theodore M. Hasse | 60 E. South Temple |
| Jason D. Hall | Salt Lake City, UT  84111 |
| Morrison & Foerster LLP | blorimer@wnlaw.com |
| 425 Market Street | sbrennan@wnlaw.com |
| San Francisco, CA  94105-2482 | rsears@wnlaw.com |
| mjacobs@mofo.com | sblack@wnlaw.com |
| dahn@mofo.com | |
| rhung@mofo.com | |
| pzhang@mofo.com | |
| bbeard@mofo.com | |
| fho@mofo.com | |
| thasse@mofo.com | |
| jhall@mofo.com | |

_/s/ David E. Moore_
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

916443 / 34137