IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADREA, LLC, | ) |
| | ) |
| Plaintiff, | ) C.A. No. 10-600-ER |
| | ) |
| | ) (Consolidated) |
| v. | ) **REDACTED -** |
| | ) **PUBLIC VERSION** |
| AMAZON.COM, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) **ORAL ARGUMENT** |
| | ) **REQUESTED** |
| | ) |
| | ) |
| AND RELATED COUNTERCLAIMS | ) |

**PLAINTIFF ADREA, LLC'S OBJECTION TO SPECIAL MASTER DISCOVERY
ORDER NO. 8 DENYING ADREA'S MOTION TO COMPEL DISCOVERY
OF FUTURE MODELS OF ACCUSED PRODUCTS (D.I. 193)**

*Of Counsel*
MORRISON & FOERSTER LLP
Michael A. Jacobs
Richard S.J. Hung
Deok Keun Matthew Ahn
Patrick J. Zhang
425 Market Street
San Francisco, California  94105
(415) 268-7000

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Adrea, LLC*

Dated: October 6, 2011

Redacted Version:  October 13. 2011

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................... iii

STATEMENT OF FACTS ......................................................................................... 2

I.    AFTER THE KINDLE 3, AMAZON BEGINS CONCEALING
      INFORMATION REGARDING ITS FUTURE KINDLE PRODUCTS.......................... 2

      A.    Amazon Redacts Documents to Remove Future Kindle
            Information. .............................................................................................. 2

      B.    Amazon Reveals to Adrea, on the Eve of Fact Discovery Close,
            That Amazon Has Been Using Keywords to Search E-mails—
            Keywords That Did Not Include Code Names for Future Products
            Under Development. .................................................................................. 3

      C.    Amazon's Key Witnesses Claim to Know Surprisingly Little
            About Its Future Kindle Models or Were Instructed Not to Answer...... 4

      D.    July/August 2011:  Amazon Argues in Its Papers and at the
            Discovery Hearing That Amazon's Future Products are
            "Speculative." ........................................................................................... 4

      E.    September 28, 2011:  Amazon Releases New Kindles to Great
            Fanfare. ..................................................................................................... 5

      F.    The Special Master's Order Denies Adrea the Scope of Discovery
            to Which It is Entitled. ............................................................................. 5

ARGUMENT............................................................................................................. 6

I.    ADREA WAS ENTITLED TO TAKE DISCOVERY OF AMAZON'S
      FUTURE KINDLE MODELS ............................................................................ 6

      A.    Adrea was Entitled to Explore During Fact Discovery Whether
            Amazon's Similar Future Products Also Infringe Adrea's Patents. ...... 7

      B.    Unreleased Products Are Not Immune from Discovery. ........................ 8

      C.    There Is No Discovery Exception for "Trivial" Infringement, and
            Amazon's Infringement Would Not Be Trivial. ...................................... 9

            1.    *BigBand* cannot be distinguished on the basis of the relief
                  sought because the decision turns on the relevance of
                  sought-after information, not the significance of available
                  relief. ......................................................................................... 10

            2.    Adrea's remedy for any infringement by Amazon's future
                  models would be significant. ................................................... 10

            3.    The two decisions Amazon belated cited do not support its
                  position that uncommercialized products cannot be the
                  subject of discovery. ................................................................ 11

            4.    Adrea should not be force to bring a separate lawsuit when
                  it should have been able to obtain discovery in this case
                  about Amazon's future Kindles and to assert all its claims
                  here............................................................................................ 12

II.     THE BURDEN ON AMAZON TO PRODUCE ADDITIONAL
        DOCUMENTS WOULD BE MINIMAL.................................................................... 13

III.    THE SPECIAL MASTER'S ORDER SANCTIONS AMAZON'S
        CONCEALMENT OF RELEVANT DISCOVERY ...................................................... 13

CONCLUSION................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

CASES

*Andco Environmental Processes, Inc. v. Niagara Environmental Assoc., Inc.,*
   215 USPQ (BNA) 224 (W.D.N.Y. 1982) ..................................................................7

*Apple Inc. v. Samsung Elecs. Co.,*
   2011 U.S. Dist. LEXIS 53233 (N.D. Cal. May 18, 2011) ......................................9

*BigBand Networks, Inc. v. Imagine Communications, Inc.,*
   2010 U.S. Dist. LEXIS 72740 (D. Del. July 20, 2010) .................................. *passim*

*Dow Chem. Can., Inc. v. HRD Corp.,*
   2009 U.S. Dist. LEXIS 108794 (D. Del. Aug. 27, 2009) .......................................13

*DR Sys. Inc. v. Fujifilm Med. Sys. USA, Inc.,*
   No. 06cv417 JLS (NLS), 2008 U.S. Dist. LEXIS 29485 (S.D. Cal. Apr. 10, 2008).................7

*E.I. du Pont De Nemours & Co. v. Phillips Petroleum Co.,*
   24 F.R.D. 416 (D. Del. 1959) ..................................................................................7

*EpicRealm Licensing, LLC v. Autoflex Leasing, Inc.,*
   Nos. 2:05-CV-163-DF-CMC and 2:05-CV-356-DF-CMC,
   2007 U.S. Dist. LEXIS 68784 (E.D. Tex. Aug. 27, 2007) ......................................7

*Georgia-Pacific Corp. v. United States Plywood Corp.,*
   318 F. Supp. 1116 (S.D.N.Y. 1970)........................................................................11

*Honeywell Int'l, Inc. v. Acer America Corp.,*
   655 F. Supp. 2d 650 (E.D. Tex. 2009) .....................................................................7

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.,*
   662 F. Supp. 2d 375 (D. Del. 2009).........................................................................6

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.,*
   2004 U.S. Dist. LEXIS 670 (D. Del. Jan. 13, 2004)..............................................13

*Rohm and Haas Co. v. Brotech Corp.,*
   No. 90-109-JRR, 1990 U.S. Dist. LEXIS 20117 (D. Del. Sep. 14, 1990)................8

*Ropak Corp. v. Plastican Inc.,*
   No 04-5422, 2006 WL 1005406 (N.D. Ill. Apr. 17, 2006) .......................................7

*Solae, LLC v. Hershey Canada, Inc.,*
   557 F. Supp. 2d 452 (D. Del. 2008).........................................................................6

STATUTES

35 U.S.C.
   § 271...................................................................................................................1, 2, 10, 12

OTHER AUTHORITIES

Fed. R. Civ. P.
   Rule 26.......................................................................................................6, 8, 9
   Rule 26(b)(1)..................................................................................................6
   Rule 53(f)(3), (4)............................................................................................6

Adrea has accused Amazon's popular Kindle electronic book readers of patent infringement. Adrea has long sought discovery into future models of these accused Kindle products, which will likely also infringe Adrea's patents. Amazon does not deny that it has withheld such documents. Nor did Amazon contend that its future models were not relevant to Adrea's infringement allegations. Rather, Amazon merely asserted that Adrea was not entitled to this relevant information because Adrea's potential remedy was, in Amazon's view, too "trivial." The law does not support Amazon's contention.

The Special Master's Order No. 8 denied Adrea's motion to compel discovery concerning Amazon's future Kindle models, but it does not address relevant case law from this District permitting discovery concerning uncommercialized products. The Order is erroneous and objectionable because Adrea was entitled to discovery concerning Amazon products that are reasonably similar to its already-accused products. Authority from this District permits discovery into unreleased future products—which are capable of infringement under 35 U.S.C. § 271 when they are "made" or "used" even if they are not yet offered for sale. There is no authority for the proposition that an act of infringement is not discoverable simply because the alleged infringer deems the plaintiff's remedy to be "trivial" or "negligible." In any event, Adrea's potential remedy for infringement by Amazon's new Kindle products—products that have just been released with great fanfare and commercial success—is in fact substantial.

The Special Master's Order in effect condones Amazon's concealment of its potentially infringing activities with respect to unreleased future products and provides defendants with the assurance that, if only a new product can be held back from commercial release until after discovery closes, it will be safe from a pending infringement suit. The scope of discovery into potential patent infringement under § 271 is not limited to commercial sales, but also includes Amazon's "making" and "using" of infringing prototypes of future commercial products. Adrea was and is entitled to the requested discovery—to find out for itself the extent of Amazon's activities with respect to future Kindle models.

## STATEMENT OF FACTS

Adrea alleges that Amazon's electronic book delivery service and its Kindle electronic book reading devices infringe Adrea's patents. See D.I. 1 ¶¶ 9-16. Specifically, Adrea alleges that Amazon infringes the patents in suit through the manufacture, use, importation, sale, and/or offer for sale of products, "including but not limited to the Kindle, Kindle 2, and Kindle DX." Id. at ¶ 11 (emphasis added). On September 1, 2010, plaintiff served Amazon with supplemental infringement contentions adding its recently-released Kindle 3 device, for which Adrea had received discovery in this case. (Declaration of Deok Keun Matthew Ahn in Support of Adrea's Motion to Compel ("Ahn Decl."), D.I. 193, Ex. 1.)

During fact discovery, Adrea became aware of a number of additional Kindle models that were scheduled for future release ████████████████████████████ ██████████████ and timely sought discovery for these models. (Ahn Decl. Ex. 2.) To date, Adrea has been denied the discovery necessary to assess whether these products also infringe Adrea's patents.

## I. AFTER THE KINDLE 3, AMAZON BEGINS CONCEALING INFORMATION REGARDING ITS FUTURE KINDLE PRODUCTS.

After initially producing information concerning future Kindle products, including the Kindle 3 product released in July 2010, Amazon began to withhold such information from Adrea in pretrial discovery.

### A. Amazon Redacts Documents to Remove Future Kindle Information.

In mid-November 2010, Amazon began to use a redaction stamp bearing the annotation "Redacted Sensitive Information." Amazon admits that information concerning future Kindle products was redacted using these stamps ████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████

**B.      Amazon Reveals to Adrea, on the Eve of Fact Discovery Close, That Amazon Has Been Using Keywords to Search E-mails—Keywords That Did Not Include Code Names for Future Products Under Development.**

In the interest of having full disclosure as to any keywords used to filter e-mail files, the parties met and conferred and Discovery Communications (Adrea's predecessor in interest as plaintiff) disclosed its keyword list for e-mail searching to Amazon.  (Ahn Decl. Ex. 12.) Conversely, Amazon represented that it "had used keywords to search its wiki database, but that keywords had *not been used for any other search, including email databases* and Sharepoint files." (Ahn Decl. Ex. 10 (emphasis added).)  Lynn Radliff, Amazon's 30(b)(6) designee on document collection, confirmed Amazon's prior representations.  (Ahn Decl. Ex. 11 (Radliff Dep. Tr. 30:3-9; 32:11-16; 35:12-14).)

Six months later, and with only one month left before the close of fact discovery, Amazon informed Adrea for the first time that it had in fact been using search terms to filter its email databases.[1]  (Ahn Decl. Ex. 13.)  The search terms surreptitiously used by Amazon on no fewer than 14 custodians—including key persons likely to have knowledge of future product development such as CEO Jeff Bezos and head of Kindle division Steve Kessel—did not include any of the code names for its future Kindle models.  (Carroll Decl. at ¶¶ 9-13; Ahn Ex. 13.)

On learning that Amazon had been using keywords on e-mails, and that these keywords would not have captured information concerning future Kindle products, Adrea requested that code names for future Kindle models be used against Amazon's e-mail collection to cure this defect. (Ahn Decl. Ex. 17.)  Amazon refused to comply.

---

[1] When Adrea indicated the extremely prejudicial nature of Amazon's belated disclosure and demanded explanations, (Ahn Decl. Ex. 14), Amazon reacted by retracting some of its previous statements regarding whether keywords had been used on certain custodians (Ahn Decl. Ex. 15).  But Amazon does not dispute that search terms previously undisclosed to Adrea were used to filter many of its custodians' e-mails.

**C.   Amazon's Key Witnesses Claim to Know Surprisingly Little About Its Future Kindle Models or Were Instructed Not to Answer.**

On January 31, 2011, Adrea deposed Steve Kessel, Amazon's *head of the Kindle division*. Curiously, Mr. Kessel could not confirm facts pertaining to Amazon's development of new Kindle models. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

**D.   July/August 2011:  Amazon Argues in Its Papers and at the Discovery Hearing That Amazon's Future Products are "Speculative."**

Adrea filed its motion to compel future models information on January 31, 2011. (D.I. 193.)  Due to an intervening stay in this case, Amazon did not file its opposition until July 25, 2011. (D.I. 308.)  Adrea submitted a reply on August 1, 2011. (D.I. 296.)  Oral argument was heard by the Special Master on August 22, 2011. (Hearing Transcript dated Aug. 22, 2011 (Hr'g Tr.") attached to the Patrick J. Zhang Declaration In Support of Adrea's Objection To Special Master Discovery Order No. 8 ("Zhang Decl.") as Ex.1.)  At oral argument, the Special Master requested supplemental briefing on the applicability of *BigBand Networks, Inc. v. Imagine Communications, Inc.*, in which Judge Farnan of this District ordered production of source code relating to "future products" that had not been released to the public.  2010 U.S. Dist. LEXIS 72740 , *2-5 (D. Del. July 20, 2010).

Both in its papers and at oral argument, Amazon repeated the refrain that Adrea should not be allowed discovery into Amazon's future products because Adrea "only seeks speculative money damages from products that may or may not ever be commercialized." (Amazon's Supp. Br., D.I. 369 at 2; see also D.I. 287 at 11 ("any negligible damages that may arise out of such instances of infringement would be far outweighed by the burdens associated with the production of such materials"; ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

E.      **September 28, 2011:  Amazon Releases New Kindles to Great Fanfare.**

A mere month after Amazon's counsel argued that Adrea should not be entitled to

discovery on Amazon's Kindle products under development because any such infringement

would be "trivial" and any damages obtainable by Adrea "negligible," and that the motion was

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Amazon announced its release of four

new Kindles—Kindle Fire (a color Kindle), Kindle Touch (a touchscreen Kindle in 3G and WiFi

versions), and a new, light-weight Kindle.  (See Adrea's Supp. Br., attachment A, D.I. 370-1.);

(Amazon's Tablet Leads to Its Store, N.Y. Times article dated Sept. 28, 2011 at

http://www.nytimes.com/2011/09/29/technology/amazon-unveils-tablet-that-undercuts-ipads-

price.html?pagewanted=all, attached to Zhang Decl. as Ex. 2.)  There is no indication, from

Amazon or otherwise, that the encryption scheme used in these new electronic book reader

devices is any different than the Kindle devices already accused by Adrea in this case.  Industry

estimates put the first-day sales of the Kindle Fire at almost 100,000 units and first-day sales of

the three other new Kindles at 25,000 units.  (Analyzing Kindle Fire Sales Estimates, Forbes

article dated Oct. 5, 2001 at http://www.forbes.com/sites/paidcontent/2011/10/05/analyzing-

kindle-fire-sales-estimates/, attached to Zhang Decl. as Ex. 3.)

F.      **The Special Master's Order Denies Adrea the Scope of Discovery to Which It is Entitled.**

The Special Master denied Adrea's motion to compel in light of *BigBand* and explained

that:

> The Special Master believes the court's central ruling [in *BigBand*]
> is that there were products that have been released, which
> presumably means they are completed existing products that the
> defendant was required to explain why they were not subject to
> discovery.  Here, in our case, Amazon's position is that Adrea has
> had access to all of its products that exist that are pertinent to
> plaintiff's claims.

(D.I. 401 at 4.)

The Special Master, however, cited as support the portion of *BigBand* that pertains to

*released* products, and not to the portion where Judge Farnan set forth his rationale for

compelling production of *unreleased* product information.  (*Compare* D.I. 401 at 4 *with*

*BigBand*, 2010 U.S. Dist. LEXIS 72740, at *5.)  The Special Master's order did not explain how the relevant holding in *BigBand* can be distinguished here.

**ARGUMENT**

The Special Master's Order No. 8 denying Adrea's motion is subject to de novo review. Fed. R. Civ. P. 53(f)(3), (4) (the court must review *de novo* all objections to findings of fact or conclusions of law); (Order Appointing Special Master, D.I. 256.).

## I.   ADREA WAS ENTITLED TO TAKE DISCOVERY OF AMAZON'S FUTURE KINDLE MODELS

Federal Rule of Civil Procedure 26 governs the scope of discovery and permits a court to order broad discovery of "any matter relevant to the subject matter involved in the action," where such information is likely to lead to the discovery of admissible evidence and the party making the discovery request can establish "good cause" to support the request. Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is broadly construed." *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009) (citing *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999)); *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 460 (D. Del. 2008) (noting that Rule 26 provides liberal discovery of nonprivileged facts).

Here, Amazon does not dispute that it had and has documents describing future Kindle models, nor does it contend that these models will function differently from the previously-accused Kindles.  (*See* Amazon's Opp'n, D.I. 287 at 4, 10-11.)  Amazon must all but concede that its recently-released Kindles have been made or used domestically.  Amazon thus plainly had and has evidence that may reveal additional infringement, but refused to produce it based on speculation about how Amazon might change its future products prior to release, or how the products might impact Adrea's damages theory.

The question before the Court is simply whether Adrea was entitled to the requested discovery.  As discussed below, Adrea was entitled to discovery into Amazon's future Kindle models because (1) Adrea was entitled to explore whether these reasonably similar products also infringe Adrea's patents; (2) unreleased products are not immune from discovery; and (3) no law

- 6 -

supports Amazon's assertion that an infringement is not discoverable merely because it cannot be remedied by an injunction or would not result in significant money damages.

**A.    Adrea was Entitled to Explore During Fact Discovery Whether Amazon's Similar Future Products Also Infringe Adrea's Patents.**

Adrea was entitled to take discovery to determine the extent of Amazon's potential infringement.  District courts routinely permit discovery to determine the scope of infringement – including by products not already accused.  *See Ropak Corp. v. Plastican Inc.*, No 04-5422, 2006 WL 1005406, at * 2 (N.D. Ill. Apr. 17, 2006) (granting motion to compel discovery "to determine the scope of the alleged infringement"); *Andco Environmental Processes, Inc. v. Niagara Environmental Assoc., Inc.*, 1982 U.S. Dist. LEXIS 15467, 215 USPQ (BNA) 224, 226 n. 3 (W.D.N.Y. Apr. 2,1982) ("Plaintiff is not required to prove its case on the pleadings. Certainly, the fact that it has found three instances of potential infringement entitles it to determine whether other such instances exist"); *E.I. du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 24 F.R.D. 416, 426 (D. Del. 1959) ("It is obvious that the plaintiff is entitled to know which products the defendant or its licensees manufacture which may infringe").

The scope of permissible discovery clearly includes products "reasonably similar" to those expressly accused.  In *EpicRealm*, the court held that "the scope of discovery may include products and services (in this case, websites and systems) 'reasonably similar' to those accused in the [preliminary infringement contentions] . . . This finding best comports with the 'notice pleading and broad discovery regime created by the Federal Rules' and the 'right to develop new information in discovery.'" *EpicRealm Licensing, LLC v. Autoflex Leasing, Inc.*, Nos. 2:05-CV-163-DF-CMC and 2:05-CV-356-DF-CMC, 2007 U.S. Dist. LEXIS 68784 at *7, 10-12 (E.D. Tex. Aug. 27, 2007) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006)).  Numerous courts have reached the same conclusion.  *See, e.g., Honeywell Int'l, Inc. v. Acer America Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009) ("There is no brightline rule that discovery is permanently limited to the products specifically accused in a party's [preliminary infringement contentions]"; such a rule would be "inconsistent with the

broad discovery regime created by the Federal Rules and the notion that a party may be able to amend its [preliminary infringement contentions]"); *DR Sys. Inc. v. Fujifilm Med. Sys. USA, Inc.*, No. 06cv417 JLS (NLS), 2008 U.S. Dist. LEXIS 29485, at *13 (S.D. Cal. Apr. 10, 2008) ("Applying Rule 26, DR Systems' discovery should not be limited to only the products they expressly accused"). A plaintiff can obtain discovery on other "reasonably similar" products that may also infringe its patents.

Here, Adrea has accused every iteration of the Kindle device on which it has not been denied discovery, including the Kindle 1, Kindle 2, Kindle 3, and Kindle DX. ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ Notably, Amazon itself has never alleged that its future Kindles will function differently in a manner relevant to Adrea's infringement allegations.

At a minimum, Adrea was entitled to take discovery on forthcoming models of the Kindle to determine if they also infringe Adrea's patents, as such information is clearly relevant to Adrea's infringement claims and damages case. Amazon cannot escape inquiry into infringement by its upcoming Kindle models merely by asserting that—in its view—these models are subject to change or that Adrea's remedy will be negligible. *See Rohm and Haas Co. v. Brotech Corp.*, No. 90-109-JRR, 1990 U.S. Dist. LEXIS 20117 at *20 (D. Del. Sept. 14, 1990) (noting that "[a] defendant cannot simply claim noninfringement and limit discovery according to its view of the case").

### B. Unreleased Products Are Not Immune from Discovery.

Unreleased products are not immune from discovery. Under virtually identical circumstances, Judge Farnan of this District granted a patent infringement plaintiff's motion to compel production of source code "relating to [defendant's] future products." *BigBand*, 2010 U.S. Dist. LEXIS 72740, at *4-5. Defendant opposed because the products might "change

before they are released" and because plaintiff was purportedly "not entitled to any damages from the future products." *Id.* at *4. Judge Farnan flatly rejected defendant's arguments and granted the motion. *Id.* at *4-5. According to Judge Farnan, the issue was not whether future products might change or how they might impact damages, but simply whether the discovery was reasonably likely to lead to relevant evidence under Rule 26.

As the *BigBand* decision notes, infringement is not limited to selling and offering for sale, but includes making or using the patented invention as well. *BigBand*, 2010 U.S. Dist. LEXIS 72740 at *4-5 (quoting 35 U.S.C. § 271(a)). Such infringement can occur during the testing and development stage of a product and before its public release:

> The Court concludes that the source code of [defendant's] future products is discoverable because it is reasonably likely to lead to evidence relevant to [plaintiff's] infringement claims. *See* Fed. R. Civ. P. 26(b)(1) . . . Further, products which have not yet been released for sale to consumers may still be found to infringe. *See* 35 U.S.C. § 271(a) ("whoever without authority *makes*, *uses*, offers to sell, or sells any patented invention . . . infringes the patent") (emphasis added). Accordingly, the Court concludes that the source code of [defendant's] future products is discoverable.

*Id.* at *4-5 (some citations omitted).

Here, Amazon made identical arguments that products may "undergo substantial transformations prior to release" and that damages for future products would be "non-existent." (Opp'n at 11.) As in *BigBand*, these arguments are simply irrelevant to whether Adrea is entitled to the discovery it seeks. *See also Apple Inc. v. Samsung Elecs. Co.*, 2011 U.S. Dist. LEXIS 53233, at *2, 10-12 (N.D. Cal. May 18, 2011) (compelling patent infringement defendant to produce samples of "unreleased products").

### C.    There Is No Discovery Exception for "Trivial" Infringement, and Amazon's Infringement Would Not Be Trivial.

Faced with countervailing authority, Amazon claims that Adrea cannot have discovery into potential infringement by Amazon's future models because (1) Adrea is not seeking a permanent injunction in this case and (2) Adrea's money damages would be "negligible."

1.   ***BigBand* cannot be distinguished on the basis of the relief sought because the decision turns on the relevance of sought-after information, not the significance of available relief.**

BigBand is not distinguishable on the basis that the plaintiff there sought an injunction, as Amazon suggests. Judge Farnan's opinion in no way turns on the type of relief sought by the plaintiff and does not mention whether plaintiff BigBand was seeking an injunction. Rather, Judge Farnan adopted BigBand's meritorious position that infringing activities under 35 U.S.C. § 271, regardless of their alleged commercial significance, fall within the proper scope of discovery. (Compare Adrea's Supp. Br., attachment B, D.I. 370-1 at 7-8 with 2010 U.S. Dist. LEXIS 72740, at *4-5.)

Amazon creates this artificial distinction out of whole cloth and is unable to provide any authority that distinguishes the discovery allowed to a plaintiff who is seeking money damages versus the discovery allowed to a plaintiff seeking an injunction. As explained in BigBand, infringement is infringement—whether the infringing act is a commercial sale or an internal use. BigBand, 2010 U.S. Dist. LEXIS 72740 at *4-5.

No case stands for the proposition that an infringing act is not discoverable because the accused infringer deems the infringement to be "trivial" and the remedy available to patentee to be "negligible." And as discussed below, Adrea's remedy for any infringement by Amazon's future Kindles would be far from "negligible."

2.   **Adrea's remedy for any infringement by Amazon's future models would be significant.**

Amazon's argument that discovery should be denied because the impact on damages would be "negligible" (Opp'n at 11) is not only beside the point, it is flat-out false. If Amazon's future products are found to infringe, then Adrea will be entitled to an ongoing royalty based on sales of those products until the expiration of Adrea's patents. Had Adrea been able to obtain full discovery on Amazon's future Kindles, Adrea might now be heading to trial on one or more of Amazon's recently-released and highly-promising new products—which by industry estimates sold a combined 125,000 units in the first day they went on sale. By any estimate, damages arising from such sales would not be trivial. Indeed, Amazon's arguments—made in July and

August of this year—that any damages on its future products would be "speculative" and "negligible" were belied by the news that brand new Kindle products would be released in September. (Adrea's Supp. Br., attachment B, D.I. 370-1.)[2]

Now that Amazon has successfully concealed any infringement by its new Kindles while they were in presale development and testing, it claims that the "ship has sailed" on discovery. But the question is whether Adrea was entitled to the sought-after discovery during the fact discovery period when Amazon refused to produce it. Amazon's concealment efforts were not revealed until the very end of fact discovery. Adrea timely filed its motion to compel on January 31, 2011. The passage of time due to unrelated events does not excuse Amazon's unwarranted refusal to produce relevant discovery during the fact discovery period. That misconduct should be remedied now.

**3.     The two decisions Amazon belatedly cited do not support its position that uncommercialized products cannot be the subject of discovery.**

Although the Special Master sought supplemental briefing on the BigBand decision in his instructions at the hearing (Hr'g Tr. at 86:1-14, Zhang Decl. Ex. 1.) ███████████████ ███████████████████████████████████████████████ Amazon cited two other cases in its supplemental brief for the proposition that uncommercialized products are immune from discovery. (Amazon's Supp. Br., D.I. 369 at 2-3.) But these belatedly-cited cases are unconvincing.

The Cisco hearing transcript is readily distinguishable because the plaintiff there failed to investigate the new product during fact discovery and did not disclose its infringement allegation until it served expert reports. (Amazon's Supp. Br., D.I. 369, Ex. 3 at 126:13-19 ("During fact discovery, they never accused this [new] functionality" "never sought discovery on it," "it's not

---

[2] Moreover, the existence of infringing future products will have a significant impact on the reasonable royalty calculation. For example, factors in calculating a reasonable royalty include "[t]he extent to which the infringer has made use of the invention[] and . . . the value of that use." *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Plainly, if Amazon will continue to use the patented invention in yet another generation of Kindles and cannot design around the patents, the extent of its use of the patented technology is greater and it would be willing to pay more. Amazon's ongoing infringement also shows that it cannot economically design around the patents.

- 11 -

in their interrogatory answers anywhere," and "[t]he first time [defendant] learned about it, [that plaintiff was] accusing this, was in their expert reports.").) Judge Robinson's decision clearly takes this fact into account. (Id. at 173:20-174:3 ("I don't believe it's appropriate for any product that hasn't been vetted through the discovery on both sides to be included, so it will not be.").) In contrast, Adrea specifically requested discovery on Amazon's future Kindle models during the fact discovery period and included future models in its infringement contentions served before the close of fact discovery.[3] (Adrea, LLC's Third Supp. Resps. and Objections to Defendant's Interrogs. No. 1 and 2 at 5, dated Jan. 27, 2011 attached to Zhang Decl. as Ex. 4.)

In the single-sentence Seagate slip opinion, it is entirely unclear what showing the plaintiff had made as to the relationship between the "4.0 gig" product and already-accused products. On such a limited record, it is not possible for Amazon to claim that this single sentence supports the view that any uncommercialized product, even ones that are reasonably similar to allegedly infringing products, cannot be the subject of discovery. As set forth in the well-reasoned decision in BigBand, information relevant to infringement under any prong of 35 U.S.C. 271 is discoverable. BigBand, 2010 U.S. Dist. LEXIS 72740 at *4-5.

> **4.    Adrea should not be force to bring a separate lawsuit when it should have been able to obtain discovery in this case about Amazon's future Kindles and to assert all its claims here.**

Finally, it is inappropriate for Amazon to suggest that Adrea should simply file a new lawsuit to capture Amazon's future Kindle models. As shown in BigBand, a case relating to current commercial products can readily encompass additional future models of the same type that the defendant has made or used. Moreover, Adrea should not have to bear the burden of filing another expensive lawsuit to adjudicate its claims against the recently-released Kindles— not when it was entitled to discovery on those new models in this case and could have accused them with specificity in this case but for Amazon's unwarranted refusal to produce relevant discovery.

_____

[3] While noting that further specificity was not possible due to Amazon's refusal to produce discovery.

- 12 -

## II.    THE BURDEN ON AMAZON TO PRODUCE ADDITIONAL DOCUMENTS WOULD BE MINIMAL

Amazon's contention that the additional document discovery would be burdensome (Amazon's Opp'n, D.I. 287 at 11-12) is contradicted by Amazon's own statements.  In reality, the burden resulting from a supplemental production would be minimal.

First, with respect to the redacted documents, all Amazon needs to do is remove the redactions and produce the documents.  This could be accomplished with, essentially, the push of a button.[4]  Second, with respect to the additional keyword searches, Adrea is not asking for Amazon to gather more documents.  It is simply asking Amazon to run the keywords against the documents it already has.  ███████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████  Again, Amazon could run the keyword searches and produce these documents with little more than the push of a button.[5]

In any event, Amazon's complaints about burden ring hollow because Amazon brought any burden upon itself.  Had Amazon complied with Adrea's document requests from the start, Amazon could have produced the materials at issue in the normal course of discovery.

## III.   THE SPECIAL MASTER'S ORDER SANCTIONS AMAZON'S CONCEALMENT OF RELEVANT DISCOVERY

The Special Master's Order states that the "essence" of the BigBand decision resides in a portion located on page 6 of the opinion (under the heading "The Production of Source Code:

---

[4] Given Adrea's entitlement to information about Amazon's future products as set forth above, Amazon should be compelled to remove the redactions.  Moreover, Amazon must remove the redactions because they are also improper regardless of the relevance of the redacted material.  Courts of this District have held that unilateral redaction of purportedly "irrelevant" or secret information from otherwise responsive documents is improper — particularly where, as here, a protective order is in place.  *See Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 2004 U.S. Dist. LEXIS 670, at *4-10 (D. Del. Jan. 13, 2004) (denying motion for order permitting redaction of purported trade secrets where movant failed to show "particularized injury" would result from disclosure); *Dow Chem. Can., Inc. v. HRD Corp.*, 2009 U.S. Dist. LEXIS 108794, at *2-4 (D. Del. Aug. 27, 2009) (noting that under *Medtronic*, party would not be permitted to redact material it deemed "irrelevant").

[5] ███████████████████████████████████████████████████

Commercialized Products) that deals with the further production of source code relating to already-released versions of the "ICE Broadcast system." (D.I. 401 at 3-4); BigBand, 2010 U.S. Dist. LEXIS 72740 at *6. The Order does not explain how the court's relevant holding in BigBand, that "the source code of [defendant's] future products is discoverable," is distinguishable in this case.

The Order is subject to de novo review as to each conclusion of fact or law. In particular, Adrea objects to the Order because it misreads or misapplies the law concerning the permissibility of discovery into uncommercialized products. To the extent the Special Master's Order is driven by the alleged distinction raised by Amazon—that a plaintiff who is not seeking an injunction cannot obtain discovery on uncommercialized products (Hr'g Tr. at 84:12-85:15, Zhang Decl. Ex. 1.)—Adrea objects to such a distinction as unsupported by law. To the extent the Order is based on Amazon's argument that Adrea's damages from future models will be "negligible," Adrea objects to this finding of fact. Adrea further objects to the Order because it is contrary to law concerning the permissibility of discovery into other of defendant's products that are reasonably similar to already-accused products.

## CONCLUSION

The Special Master's Order condones Amazon's concealment of evidence that will likely reveal additional infringements by forthcoming (and now released) Kindle models. The Order was based on erroneous findings of law and fact relating to Amazon's obligation to provide discovery on future models of already-accused Kindle devices. Adrea respectfully requests that the Court sustain its objections to the Special Master's Order and grant Adrea's Motion to Compel in its entirety.[6]

---

[6] Given the contradictions and lack of clarity regarding its use of keywords in email filtering, Amazon should be required to make another 30(b)(6) witness on document collection and production available so that Adrea may question an Amazon representative, under oath, as to what exactly occurred regarding email searches and filtering, and when such activities took place. Only then will the multiple, conflicting representations of Amazon's counsel be rendered lucid.

YOUNG CONAWAY STARGATT &
   TAYLOR, LLP

OF COUNSEL:
Michael A. Jacobs
Richard S.J. Hung
Deok Keun Matthew Ahn
Patrick J. Zhang
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
(415) 268-7000

Dated:  October 6, 2011

/s/ Jeffrey T. Castellano
Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jcastellano@ycst.com

*Attorneys for Adrea, LLC*

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, hereby certify that on October 13, 2011, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>       Richard L. Horwitz
>       David E. Moore
>       Potter, Anderson & Corroon
>       6th Floor, Hercules Plaza
>       1313 N. Market Street
>       Wilmington, DE 19801
>       rhorwitz@potteranderson.com
>       dmoore@potteranderson.com

I further certify that on October 13, 2011, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

### BY E-MAIL:

>       Josh A. Krevitt
>       Y. Ernest Hsin
>       Gibson, Dunn & Crutcher LLP
>       200 Park Avenue
>       New York, NY 10166
>       jkrevitt@gibsondunn.com
>       ehsin@gibsondunn.com
>
>       Brooke L. Myers
>       Jacon C. Lo
>       Jennifer J. Rho
>       Gibson, Dunn & Crutcher LLP
>       333 South Grand Avenue
>       Los Angeles, CA 90071
>       bmyers@gibsondunn.com
>       jlo@gibsondunn.com
>       jrho@gibsondunn.com

Stuart M. Rosenberg
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
srosenberg@gibsondunn.com

Mark Reiter
Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201
mreiter@gibsondunn.com

William F. Cronin
Corr Cronin Michelson Baumgardner & Preece LLP
1001 Fourth Avenue
Suite 3900
Seattle, WA 98154
wcronin@corrcronin.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jeffrey T. Castellano*
_____
Elena C. Norman (No. 4780)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, Delaware 19801
(302)-571-6600
jcastellano@ycst.com

*Attorneys for Adrea, LLC, Discovery Communications, Inc., Discovery Communications, LLC, and The Discovery Channel Store, Inc.*

2